Adrian M. Pruetz (Bar No. 118215)
apruetz@glaserweil.com
Erica Van Loon (Bar No. 227712)
evanloon@glaserweil.com
Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
10250 Constellation Blvd. 19th Floor
Los Angeles, CA 90067
Telephone: (310) 282-6250
Facsimile: (310) 785-3550

Holmes J. Hawkins III (Ga. Bar No. 338681) (*Pro Hac Vice*)
hhawkins@kslaw.com
Thomas C. Lundin Jr. (Ga. Bar No. 461141) (*Pro Hac Vice*)
tlundin@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5134

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

Attorneys for Defendant and Counterclaim Plaintiff
EASYLINK SERVICES INTERNATIONAL CORPORATION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| j2 Global, Inc. and Advanced Messaging Technologies, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> EasyLink Services International Corporation, <br><br> Defendant. | Case No.  2:11-CV-04239 DDP (AJWx) <br><br> **DEFENDANT'S ANSWER TO PLAINTIFFS j2 GLOBAL, INC. AND ADVANCED MESSAGING TECHNOLOGIES, INC.'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **[DEMAND FOR JURY TRIAL]** |

763358.1

DEFENDANT EASYLINK SERVICES INTERNATIONAL CORPORATION ("EasyLink"), in accordance with Rules 8 and 12 of the Federal Rules of Civil Procedure, and by and through its undersigned counsel, hereby makes and files this Answer to the First Amended Complaint For Patent Infringement (the "Complaint") filed by Plaintiffs j2 GLOBAL, INC. ("j2") and ADVANCED MESSAGING TECHNOLOGIES, INC. ("AMT") (collectively, "Plaintiffs"). EasyLink denies each and every allegation and characterization set forth in the Complaint unless expressly admitted herein.  EasyLink responds to each numbered paragraph of the Complaint as follows:

## I.

## THE PARTIES

1. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Complaint and, on that basis, denies said allegations.

2. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 of the Complaint and, on that basis, denies said allegations.

3. EasyLink admits that it is a corporation organized under the laws of the state of Delaware; that its corporate headquarters are located at 6025 The Corners Parkway, Suite 100, Norcross, Georgia 30092; and that it offers, among other things, messaging services to users in this judicial district.  EasyLink is without knowledge or information concerning Plaintiff's use and interpretation of certain terms in the remaining allegations of Paragraph 3 of the Complaint sufficient to form a basis as to the truth of said allegations and, on that basis, denies said allegations.

## II.

## JURISDICTION AND VENUE

4. EasyLink admits that Plaintiffs' Complaint purports to set forth a cause of action for patent infringement arising under the patent laws of the United States and that, accordingly, this Court has jurisdiction over the subject matter of the alleged cause of action; and denies that Plaintiff has a valid cause of action against EasyLink.

5. EasyLink admits that this Court has personal jurisdiction over EasyLink; denies that it engages in activities that result in infringement of any patent rights alleged to be owned by Plaintiffs in the Complaint; denies any allegations not expressly admitted in Paragraph 3 hereof that are purportedly incorporated by reference to Paragraph 3 of the Complaint; and is without knowledge or information concerning Plaintiffs' use and interpretation of certain terms in the remaining allegations of Paragraph 3 of the Complaint sufficient to form a basis as to the truth of said allegations and, on that basis, denies said allegations.

6. EasyLink admits that venue in this judicial district is proper under 28 U.S.C. § 1391(c).  EasyLink denies that this district is the proper forum for this action, and reserves the right to file a motion to transfer pursuant to 28 U.S.C. § 1404.

## III.

## CAUSES OF ACTION

**A.   Infringement of U.S. Patent No. 6,350,066**

7. EasyLink repeats, realleges, and incorporates by reference its responses to the allegations of paragraphs 1 through 6 above, as if fully set forth herein.

8. EasyLink admits that what appears to be a copy of United States Patent No. 6,350,066 ("the '066 Patent") is attached as Exhibit A to the Complaint; admits that what appears to be the front page of the '066 Patent indicates that the '066

Patent is entitled "Systems and Methods for Storing, Delivering, and Managing Messages," was issued on February 26, 2002, and identifies Charles R. Bobo, II as the inventor; and admits that Exhibit A of the Complaint contains what appears to be an Ex Parte Reexamination Certificate, which indicates that said certificate was issued on May 5, 2009.  EasyLink is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 8 and, on that basis, denies said allegations.

9. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint and, on that basis, denies said allegations.

10. EasyLink admits that, since October 21, 2010, it has marketed and sold a service named Fax2Mail; denies that EasyLink has committed any acts of patent infringement, whether direct, indirect, or contributory; and denies the remaining allegations of Paragraph 10 of the Complaint.

11. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint and, on that basis, denies said allegations.

12. EasyLink denies the allegations of Paragraph 12 of the Complaint.

13. EasyLink denies the allegations of Paragraph 13 of the Complaint.

14. EasyLink admits having received notice of the '066 Patent and denies the remaining allegations of Paragraph 14 of the Complaint.

**B.    Infringement of U.S. Patent No. 6,208,638**

15. EasyLink repeats, realleges, and incorporates by reference its responses to the allegations of paragraphs 1 through 14 above, as if fully set forth herein.

16. EasyLink admits that what appears to be a copy of United States Patent No. 6,208,638 ("the '638 Patent") is attached as Exhibit B to the Complaint; admits that what appears to be the front page of the '638 Patent indicates that the '638 Patent is entitled "Method and Apparatus for Transmission and Retrieval of

- 3 -

Facsimile and Audio Messages Over a Circuit or Packet Switched Network," was issued on March 27, 2001, and identifies Jack Rieley and Jaye Muller as the inventors; and admits that Exhibit B to the Complaint contains what appears to be an Ex Parte Reexamination Certificate, which indicates that said certificate was issued on December 9, 2008.  EasyLink is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16 and, on that basis, denies said allegations.

17. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and, on that basis, denies said allegations.

18. EasyLink admits that, since October 21, 2010, it has marketed and sold a service named Fax2Mail; denies that EasyLink has committed any acts of patent infringement, whether direct, indirect, or contributory; and denies the remaining allegations of Paragraph 18 of the Complaint.

19. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of the Complaint and, on that basis, denies said allegations.

20. EasyLink denies the allegations of Paragraph 20 of the Complaint.

21. EasyLink denies the allegations of Paragraph 21 of the Complaint.

22. EasyLink admits having received notice of the '638 Patent and denies the remaining allegations of Paragraph 22 of the Complaint.

**C.** **Infringement of U.S. Patent No. 6,597,688**

23. EasyLink repeats, realleges, and incorporates by reference its responses to the allegations of paragraphs 1 through 22 above, as if fully set forth herein.

24. EasyLink admits that what appears to be a copy of United States Patent No. 6,597,688 ("the '688 Patent") is attached as Exhibit C to the Complaint; admits that what appears to be the front page of the '688 Patent indicates that the '688 Patent is entitled "Scalable Architecture for Transmission of Messages over a

- 4 -

Network," was issued on July 22, 2003, and identifies Anand Narasimhan, Yaacov Shemesh and Amit Kumar as the inventors; and admits that Exhibit C to the Complaint contains what appears to be an Ex Parte Reexamination Certificate, which indicates that said certificate was issued on March 11, 2008. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24 and, on that basis, denies said allegations.

25. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint and, on that basis, denies said allegations.

26. EasyLink admits that, since October 21, 2010, it has marketed and sold a service named Fax2Mail; denies that EasyLink has committed any acts of patent infringement, whether direct, indirect, or contributory; and denies the remaining allegations of Paragraph 26 of the Complaint.

27. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27 of the Complaint and, on that basis, denies said allegations.

28. EasyLink denies the allegations of Paragraph 28 of the Complaint.

29. EasyLink denies the allegations of Paragraph 29 of the Complaint.

30. EasyLink admits having received notice of the '688 Patent and denies the remaining allegations of Paragraph 30 of the Complaint.

**D.    Infringement of U.S. Patent No. 7,020,132**

31. EasyLink repeats, realleges, and incorporates by reference its responses to the allegations of paragraphs 1 through 30 above, as if fully set forth herein.

32. EasyLink admits that what appears to be a copy of United States Patent No. 7,020,132 ("the '132 Patent") is attached as Exhibit D to the Complaint; admits that what appears to be the front page of the '132 Patent indicates that the '132 Patent is entitled "Scalable Architecture for Transmission of Messages over a Network," was issued on March 28, 2006, and identifies Anand Narasimhan,

Yaacov Shemesh and Amit Kumar as the inventors. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 32 and, on that basis, denies said allegations.

33. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and, on that basis, denies said allegations.

34. EasyLink admits that, since October 21, 2010, it has marketed and sold a service named Fax2Mail; denies that EasyLink has committed any acts of patent infringement, whether direct, indirect, or contributory; and denies the remaining allegations of Paragraph 34 of the Complaint.

35. EasyLink is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35 of the Complaint and, on that basis, denies said allegations.

36. EasyLink denies the allegations of Paragraph 36 of the Complaint.

37. EasyLink denies the allegations of Paragraph 37 of the Complaint.

38. EasyLink admits having received notice of the '132 Patent and denies the remaining allegations of Paragraph 38 of the Complaint.

## IV.
## PRAYER FOR RELIEF

EasyLink denies the averments that underlie Plaintiffs' Prayer For Relief; denies that Plaintiffs are entitled to any of the forms of relief set forth in Plaintiffs' Prayer For Relief, or any relief whatsoever; and requests that the Court deny any relief to Plaintiffs and enter judgment in favor of EasyLink.

## V.

## DEMAND FOR JURY TRIAL

EasyLink denies that Plaintiffs' are entitled to a trial by jury except as permitted by law.

## VI.

## DEFENSES

Without assuming any burden that it would not otherwise have, Defendant asserts the following defenses:

## FIRST DEFENSE

The Complaint fails to state a claim against EasyLink upon which relief can be granted.

## SECOND DEFENSE

EasyLink has not directly infringed, contributorily infringed, or induced the infringement of any valid claim of the '066 Patent, either literally or under the doctrine of equivalents.

## THIRD DEFENSE

EasyLink has not directly infringed, contributorily infringed, or induced the infringement of any valid claim of the '638 Patent, either literally or under the doctrine of equivalents.

## FOURTH DEFENSE

EasyLink has not directly infringed, contributorily infringed, or induced the infringement of any valid claim of the '688 Patent, either literally or under the doctrine of equivalents.

**FIFTH DEFENSE**

EasyLink has not directly infringed, contributorily infringed, or induced the infringement of any valid claim of the '132 Patent, either literally or under the doctrine of equivalents.

**SIXTH DEFENSE**

Upon information or belief, the '066 Patent is invalid on the grounds that the purported inventions attempted to be patented therein fail to meet the conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103, and/or 112.

**SEVENTH DEFENSE**

Upon information or belief, the '638 Patent is invalid on the grounds that the purported inventions attempted to be patented therein fail to meet the conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103, and/or 112.

**EIGHTH DEFENSE**

Upon information or belief, the '688 Patent is invalid on the grounds that the purported inventions attempted to be patented therein fail to meet the conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103, and/or 112.

**NINTH DEFENSE**

Upon information or belief, the '132 Patent is invalid on the grounds that the purported inventions attempted to be patented therein fail to meet the conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103, and/or 112.

**TENTH DEFENSE**

Upon information or belief, the '066 Patent is unenforceable on the grounds of inequitable conduct before the United States Patent and Trademark Office ("PTO"). During prosecution of the application that matured into the '066 Patent, material information that the alleged invention recited in one or more claims of the '066 Patent was known or used by others in the U.S. was deliberately withheld by the applicant with the specific intent of deceiving the PTO. Further, the named inventor failed to disclose to the PTO that he himself did not invent the subject

- 8 -

1  matter included in one or more claims of the '066 Patent. Still further, the named
2  inventor failed to disclose to the PTO that before the named inventor's alleged
3  invention of the subject matter included in one or more claims of the '066 Patent,
4  the invention was made in U.S. by another inventor who had not abandoned,
5  suppressed, or concealed it.
6  More particularly, upon information or belief, Ms. Phyllis Huster, who is not
7  identified as an inventor on the '066 Patent, developed methods and systems related
8  to web-based fax technology prior to the critical date for the '066 Patent, and had
9  information about these methods and systems been disclosed to the examiner of the
10 application that matured into the '066 Patent, the examiner would not have allowed
11 one or more claims ultimately allowed in the application that matured into the '066
12 Patent.
13 The '066 Patent matured from U.S. patent application No. 09/186,595 (the
14 "'595 Application"). The '066 Patent purports that the '595 Application is a
15 continuation of U.S. patent application No. 08/944,741 (the "'741 Application"),
16 which was filed October 6, 1997. The '741 Application purports to be a
17 continuation-in-part of U.S. patent application No. 08/431,716 (the "'716
18 Application"), which was filed on April 28, 1995. Accordingly, the earliest possible
19 priority date for the '066 Patent is April 28, 1995.
20 Upon information or belief, no later than July 1994, Ms. Huster developed a
21 distributed database architecture system with a web display and data interfaces with
22 a variety of devices, including a computer, a mobile computing device, and a fax
23 machine. No later than August 1994, Ms. Huster developed a fax-over-IP system
24 for the Emory University police department. The named inventor of the '066 Patent
25 was aware of Ms. Huster's concepts of web-based fax viewing at least as early as
26 November 22, 1994.
27 Further, upon information or belief, Ms. Huster collaborated with the named
28 inventor of the '066 Patent in a commercial venture named NetOffice, Inc., where

- 9 -

the company commercialized systems and methods comparable to those systems and methods first developed by Ms. Huster. Ms. Huster met with Charles Brewer, an executive of Mindspring, in December 1994 and sought advice about patent attorneys that knew fax technology in connection with her work at NetOffice, Inc. Ms. Huster became a shareholder in NetOffice, Inc. on January 2, 1995.

Upon information and belief, Ms. Huster alleges that the named inventor of the '066 Patent promised to include her on the patent. Ms. Huster, however, is not a named inventor on the '066 Patent. The applicant of the '066 Patent declared that he was the sole inventor of the subject matter claimed in the '066 Patent. During the prosecution of the '595 Application, the '741 Application, and the '595 Application, the applicant did not inform the PTO of Ms. Huster's contributions to the conception of the subject matter claimed in the '066 Patent. During the prosecution of the '595 Application, the '741 Application, and the '595 Application, the applicant did not inform the PTO of Ms. Huster's previously-developed systems and methods regarding web-based fax technology.

Further, because upon information and belief at the time of the filing of the application that lead to the '066 Patent the applicant knew of the foregoing facts, knew that they were material, and made a deliberate decision to withhold them, the specific intent to deceive is the single most reasonable inference able to be drawn from the evidence. Accordingly, the '066 Patent is unenforceable for inequitable conduct.

EasyLink's investigation of the foregoing facts continues and may be supported by documents and testimony.

## ELEVENTH DEFENSE

Upon information or belief, the '638 Patent is unenforceable on the grounds of inequitable conduct before the PTO. During prosecution of the application that lead to the '638 Patent, material information regarding the sale and/or use of one or

more fax-to-email products was deliberately withheld by the applicants with the specific intent of deceiving PTO.

More particularly, products known as JFAX fax-to-email and JFAX Personal Telecom were on sale and/or used publicly by j2's precedessor(s) and were used by others in this country more than one year before the filing date of the application that lead to the '638 Patent, rendering the asserted claims of the '638 Patent invalid under 35 U.S.C. §§ 102 and/or 103.  Among other supporting facts, one of the founders of j2 (then known as JFAX) and one of the named co-inventors of the '638 Patent, Mr. Jack Rieley, contacted Mr. Dave Farber to request that Mr. Farber test and publicize, and provided Mr. Farber a working copy of, a JFAX fax-to-email product, more than one year before the filing of the '638 Application.  Mr. Farber began using the JFAX fax-to-email product more than one year before the filing of the '638 Application.  Mr. Farber was not under a confidentiality obligation at any time.  In addition, Mr. Kevin Savetz also was made aware of, and began using, a JFAX fax-to-email product more than one year before the filing date of the '638 Application.  Mr. Savetz was not under a confidentiality obligation at any time.  In addition, Mr. Rieley also personally publicized the availability of the JFAX fax-to-email product extensively via postings in Internet newsgroups, "usenet" user groups, and on bulletin boards more than one year before the filing date of the '638 Patent.

j2's website from 1996 shows offers for sale prior to the critical date of the '638 Patent, and in sworn statements to the PTO in at least one trademark application, filed February 1, 1996, the named inventor of the '638 Patent and officer of j2 swore to actual use of the mark JFAX in commerce in the United States in connection with both fax-to-email services and email-to-fax services as early as July 19, 1995.

Further, j2 obtained U.S. Copyright Registrations for the computer programs comprising the JFAX Communicator, JFAX Communicator for Windows, and JFAX Personal Telecom products and swore to a dates of publication that were

- 11 -

more than one year before the filing of the '638 Application.  More particularly, j2 obtained U.S. Copyright Registration No. TX0004354397 dated July 1, 1996, for the computer program "JFAX Communicator : JFAX Server," authored by Greg James, asserting a date of publication of January 25, 1996.  Greg James is the person who wrote the code for the initial JFAX fax-to-email product.  j2 obtained U.S. Copyright Registration No. TX0004347682 dated July 1, 1996, for the computer program "JFAX Communication for Windows," authored by Richard Bennett, asserting a date of publication of January 1, 1996.  Richard Bennett was an early employee or contractor of JFAX.  The 1976 Copyright Act defines publication as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  The offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display constitutes publication." 17 U.S.C. § 101.  Accordingly, j2 asserted in its filings with the U.S. Copyright Office that at least the JFAX Communicator products were used more than one year before the filing of the '638 Application.

      Neither any of the foregoing facts, nor the underlying JFAX products, were disclosed to the PTO during prosecution of the '638 Patent.  The fact that JFAX offered at least one fax-to-email product more than one year before the filing date of the application that lead to the '638 Patent, and facts about such prior art JFAX products, constitute material information or references that upon information and belief were deliberately withheld by the applicants with the specific intent of deceiving PTO.  Applying the preponderance of the evidence standard and giving claims their broadest reasonable construction, the PTO would not have allowed one or more claims ultimately allowed if it had been aware of the undisclosed facts.  Further, both because at the time of the filing of the application that lead to the '638 Patent, JFAX was a relatively small company and because the founders were still actively involved, among other reasons, the '638 Patent applicant knew of the foregoing facts, knew that they were material, and made a deliberate decision to

- 12 -

1  withhold them, such that the specific intent to deceive is the single most reasonable
2  inference able to be drawn from the evidence.  Accordingly, the '638 Patent is
3  unenforceable for inequitable conduct.
4       EasyLink's investigation of the JFAX, JFAX Communicator, and JFAX
5  Personal Telecom Fax/Send products continues and may be supported by documents
6  and testimony.

### TWELFTH DEFENSE

8       Upon information or belief, the '688 Patent is unenforceable on the grounds
9  of inequitable conduct before the PTO.  During prosecution of the application that
10  lead to the '688 Patent, material information regarding the sale and/or use of one or
11  more email-to-fax products was deliberately withheld by the applicants with the
12  specific intent of deceiving PTO.
13       More particularly, products known as JFAX email-to-fax and JFAX Personal
14  Telecom Fax/Send were on sale and/or used publicly by j2's precedessor(s) and
15  were used by others in this country more than one year before the filing date of the
16  application that lead to the '688 Patent, rendering the asserted claims of the '688
17  Patent invalid under 35 U.S.C. §§ 102 and/or 103.  Indeed, j2's website from 1996
18  shows offers for sale prior to the critical date of the '688 Patent, and in sworn
19  statements to the PTO in at least one trademark application, filed February 1, 1996,
20  an officer of j2 swore to actual use of the mark JFAX in commerce in the United
21  States in connection with both fax-to-email services and email-to-fax services as
22  early as July 19, 1995.  In addition, multiple documents confirm that JFAX offered
23  an email-to-fax product, JFAX Send, more than one year before the filing of the
24  application that lead to the '688 Patent, including without limitation company
25  presentations, the jfax.net website, and a press release.
26       Further, j2 obtained U.S. Copyright Registrations for the computer programs
27  comprising the JFAX Send product and swore to a dates of publication that were
28  more than one year before the filing of the application that lead to the '688 Patent.

More particularly, j2 obtained U.S. Copyright Registration No. TX0004450197 dated February 21, 1997, for the computer program "JFAX Send/server," authored by "software: Greg James," "updating: JFAX Communications, Inc.," asserting a date of publication of December 30, 1996. Notably, Greg James is the person who wrote the code for the initial JFAX fax-to-email product, thus the JFAX Send product was merely an "update" of that source code. The 1976 Copyright Act defines publication as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display constitutes publication." 17 U.S.C. § 101. Accordingly, j2 asserted in its filings with the U.S. Copyright Office that at least the JFAX Send product was used more than one year before the filing of the application that lead to the '688 Patent.

Neither any of the foregoing facts, nor the underlying JFAX products, were disclosed to the PTO during prosecution of the '688 Patent. The fact that JFAX offered both fax-to-email and email-to-fax products more than one year before the filing date of the application that lead to the '688 Patent, and facts about such prior art JFAX products, constitute material information or references that upon information and belief were deliberately withheld by the applicants with the specific intent of deceiving the PTO. Applying the preponderance of the evidence standard and giving claims their broadest reasonable construction, the PTO would not have allowed one or more claims ultimately allowed if it had been aware of the undisclosed facts. Further, both because at the time of the filing of the application that lead to the '688 Patent, JFAX was a relatively small company and because the founders were still actively involved, among other reasons, the '688 Patent applicant knew of the foregoing facts, knew that they were material, and made a deliberate decision to withhold them, such that the specific intent to deceive is the single most

- 14 -

1  reasonable inference able to be drawn from the evidence.  Accordingly, the '688
2  Patent is unenforceable for inequitable conduct.
3      EasyLink's investigation of the JFAX, JFAX Communicator, and JFAX
4  Personal Telecom Fax/Send products continues and may be supported by documents
5  and testimony.

## THIRTEENTH DEFENSE

7      Upon information or belief, the '132 Patent is unenforceable on the grounds
8  of inequitable conduct before the PTO.  During prosecution of the application that
9  lead to the '132 Patent, material information regarding the sale and/or use of one or
10 more email-to-fax products was deliberately withheld by the applicants with the
11 specific intent of deceiving PTO.
12     More particularly, products known as JFAX email-to-fax and JFAX Personal
13 Telecom Fax/Send were on sale and/or used publicly by j2's precedessor(s) and
14 were used by others in this country more than one year before the filing date of the
15 application that lead to the '132 Patent, rendering the asserted claims of the '132
16 Patent invalid under 35 U.S.C. § 102.  Indeed, j2's website from 1996 shows offers
17 for sale prior to the critical date of the '132 Patent, and in sworn statements to the
18 PTO in at least one trademark application, filed February 1, 1996, an officer of j2
19 swore to actual use of the mark JFAX in commerce in the United States in
20 connection with both fax-to-email services and email-to-fax services as early as July
21 19, 1995.  In addition, multiple documents confirm that JFAX offered an email-to-
22 fax product, JFAX Send, more than one year before the filing of the application that
23 lead to the '132 Patent, including company presentations, the jfax.net website, and a
24 press release.
25     Further, j2 obtained U.S. Copyright Registrations for the computer programs
26 comprising the JFAX Send product and swore to a dates of publication that were
27 more than one year before the filing of the application that lead to the '132 Patent.
28 More particularly, j2 obtained U.S. Copyright Registration No. TX0004450197

- 15 -

1. dated February 21, 1997, for the computer program "JFAX Send/server," authored
2. by "software: Greg James," "updating: JFAX Communications, Inc.," asserting a
3. date of publication of December 30, 1996. Notably, Greg James is the person who
4. wrote the code for the initial JFAX fax-to-email product, thus the JFAX Send
5. product was merely an "update" of that source code. The 1976 Copyright Act
6. defines publication as "the distribution of copies . . . of a work to the public by sale
7. or other transfer of ownership, or by rental, lease, or lending. The offering to
8. distribute copies . . . to a group of persons for purposes of further distribution, public
9. performance, or public display constitutes publication." 17 U.S.C. § 101.
10. Accordingly, j2 asserted in its filings with the U.S. Copyright Office that at least the
11. JFAX Send product was used more than one year before the filing of the application
12. that lead to the '132 Patent.
13.      Neither any of the foregoing facts, nor the underlying JFAX products, were
14. disclosed to the PTO during prosecution of the '132 Patent. The fact that JFAX
15. offered both fax-to-email and email-to-fax products more than one year before the
16. filing date of the application that lead to the '132 Patent, and facts about such prior
17. art JFAX products, constitute material information or references that upon
18. information and belief were deliberately withheld by the applicants with the specific
19. intent of deceiving PTO. Applying the preponderance of the evidence standard and
20. giving claims their broadest reasonable construction, the PTO would not have
21. allowed one or more claims ultimately allowed if it had been aware of the
22. undisclosed facts. Further, both because at the time of the filing of the application
23. that lead to the '132 Patent, JFAX was a relatively small company and because the
24. founders were still actively involved, among other reasons, the '132 Patent applicant
25. knew of the foregoing facts, knew that they were material, and made a deliberate
26. decision to withhold them, such that the specific intent to deceive is the single most
27. reasonable inference able to be drawn from the evidence. Accordingly, the '132
28. Patent is unenforceable for inequitable conduct.

EasyLink's investigation of the JFAX, JFAX Communicator, and JFAX Personal Telecom Fax/Send products continues and may be supported by documents and testimony.

### FOURTEENTH DEFENSE

Upon information or belief, Plaintiffs' claims are barred by the doctrines of latches, waiver, estoppel, acquiescence, unclean hands, and/or license.

### FIFTEENTH DEFENSE

Plaintiffs' claims for injunctive relief should be dismissed because Plaintiffs can obtain an adequate remedy at law.

### SIXTEENTH DEFENSE

Plaintiffs' claims under the '066 Patent, '638 Patent, and '688 Patent are barred, in whole or in part, under the doctrine of intervening rights.

### SEVENTEENTH DEFENSE

EasyLink hereby gives notice that it intends to rely upon any other defense that may become available or appear during the proceedings in this case and hereby reserves its right to amend its Answer to assert any such defense.

EasyLink denies each and every allegation of Plaintiffs' Complaint not expressly admitted or otherwise specifically responded to above. EasyLink further denies that Plaintiffs are entitled to any relief whatsoever against EasyLink.

### PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiffs' Complaint, as set forth above, EasyLink respectfully prays that:

    A.    Plaintiffs take nothing by way of their Complaint;

    B.    Plaintiffs' Complaint be dismissed with prejudice;

    C.    EasyLink be awarded its costs and expenses, including attorneys' fees, as permitted by applicable law; and

1  D.  EasyLink be awarded such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

EasyLink demands a trial by jury on all issues so triable as a matter of right and law.

Respectfully submitted, this 26th day of April, 2012.

    /s/ Adrian M. Pruetz
Holmes J. Hawkins III (Ga. Bar No. 338681)
(Pro Hac Vice) hhawkins@kslaw.com
Thomas C. Lundin Jr. (Ga. Bar No. 461141)
(Pro Hac Vice) tlundin@kslaw.com
Charles A. Pannell (Ga. Bar. No. 141535)
(Pro Hac Vice) cpannell@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5134

Adrian M. Pruetz (Bar No. 118215)
apruetz@glaserweil.com
Erica Van Loon (Bar No. 227712)
evanloon@glaserweil.com
Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
10250 Constellation Blvd. 19th Floor
Los Angeles, CA 90067
Telephone: (310) 282-6250
Facsimile: (310) 785-3550

Attorneys for Defendant and Counterclaim Plaintiff EASYLINK SERVICES INTERNATIONAL CORPORATION