Adrian M. Pruetz (Bar No. 118215)
apruetz@glaserweil.com
Erica Van Loon (Bar No. 227712)
evanloon@glaserweil.com
Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
10250 Constellation Blvd. 19th Floor
Los Angeles, CA 90067
Telephone: (310) 282-6250
Facsimile: (310) 785-3550

Holmes J. Hawkins III (Ga. Bar No. 338681) (*Pro Hac Vice*)
hhawkins@kslaw.com
Thomas C. Lundin Jr. (Ga. Bar No. 461141) (*Pro Hac Vice*)
tlundin@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5134

Attorneys for Defendant and Counterclaim Plaintiff
EASYLINK SERVICES INTERNATIONAL CORPORATION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| j2 Global, Inc. and Advanced Messaging Technologies, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> EasyLink Services International Corporation, <br><br> Defendant. | Case No.  2:11-CV-04239 DDP (AJWx) <br><br> OPENING CLAIM CONSTRUCTION BRIEF OF DEFENDANT EASYLINK SERVICES INTERNATIONAL CORPORATION <br><br> Date:  September 28, 2012 <br> Time:  10:00 a.m. <br> Courtroom:  Hon. Dean D. Pregerson |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iii

INTRODUCTION ......................................................................... 1

STATEMENT OF FACTS .............................................................. 3

    I.      PRODECURAL BACKGROUND ............................................. 3

    II.     FACTUAL BACKGROUND OF THE '066 BOBO PATENT ................. 3

ARGUMENT AND CITATION OF AUTHORITIES ................................ 4

    I.      LEGAL STANDARD FOR CONSTRUING CLAIMS ............................ 4

    II.     THE COURT SHOULD CONSIDER EASYLINK'S NEW
         ARGUMENTS  AND EVIDENCE, AND SHOULD CLARIFY ITS
         PRIOR CONSTRUCTIONS. ..................................................... 6

    III.    THE "USER-SPECIFIC MESSAGE STORAGE AREA" TERMS
         REQUIRE AN AREA OF THE STORAGE MEDIUM THAT IS
         ASSOCIATED WITH A SINGLE SPECIFIC USER. ........................... 9

         A.    The Prior Construction Is Ambiguous And  Fails To Resolve The
             Parties' Dispute. ......................................................... 10

         B.    The Claims And Prosecution History Of Subsequent Bobo Family
             Patents Confirm That The Message Storage Area Is User-Specific. 12

         C.    The Claim Language Establishes That The User-Specific  Storage
             Area Is Specific To A Single User. ................................... 14

             1.    The Plain Language Of Asserted Claim Itself Establishes
                  That The Message Storage Area Is Specific To A Single
                  User. ................................................................. 14

             2.    The Language Of Several Unasserted Claims Confirms That
                  The Message Storage Area Is Specific To A Single User. .... 16

         D.    The Specification Shows That The Message Storage Area Is
             Specific To A Single User. .............................................. 17

DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

E.    The Prosecution History Shows That j2 Amended Its Claims To Expressly Require A Message Storage Area That Is Specific To A Single User. ........................................................................................19

CONCLUSION ........................................................................................22

DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF AUTHORITIES

<u>Cases</u>

*Accentra Inc. v. Staples, Inc.*,
    No. CV 07-5862 ABC (RZx), 2011 WL 7563039 (C.D. Cal. Dec. 19, 2011)....... 7

*ACTV, Inc. v. Walt Disney Co.*,
    346 F.3d 1082 (Fed. Cir. 2003) ........................................................................ 15

*Adv. Cardio. Sys., Inc. v. Medtronic, Inc.*,
    265 F.3d 1294 (Fed. Cir. 2001) ........................................................................ 13

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
    268 F.3d 1352 (Fed. Cir. 2001) .......................................................................... 6

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
    423 F.3d 1296 (Fed. Cir. 2005) ...................................................................... 5, 6

*C.R. Bard, Inc. v. U.S. Surg. Corp.*,
    388 F.3d 858 (Fed. Cir. 2004) ............................................................................ 4

*Calif. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
    No. 01-cv-09871 RGK (RCX), 2003 WL 25761597 (C.D. Cal. Dec. 2, 2003)..... 8

*Catch Curve, Inc. v. Protus IP Sols., Inc.*,
    No. CV 06-2574 DDP (AJWx), 2007 WL 5688767 (C.D. Cal. May 11, 2007).... 6

*Chimie v. PPG Indus., Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005) .......................................................................... 5

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008) .......................................................................... 5

*Edwards Lifesciences LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009) ....................................................................... 8, 9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    535 U.S. 722 (2002)........................................................................................ 6, 20

*In re Lew*,
    257 Fed. Appx. 281 (Fed. Cir. 2007) ............................................................... 20

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
    302 F.3d 1352 (Fed. Cir. 2002) .......................................................................... 7

*Jang v. Boston Scientific Corp.*,
    532 F.3d 1330 (Fed. Cir. 2008) ............................................................ 9

*Jonsson v. Stanley Works*,
    903 F.2d 812 (Fed. Cir. 1990) ........................................................... 13

*KX Indus., L.P. v. PUR Water Purif. Prods., Inc.*,
    108 F. Supp. 2d 380 (D. Del. 2000) ................................................... 7

*Markman v. Westview Instrs., Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ............................................................. 5

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) ................................................... 13, 14

*Nystrom v. Trex Co.*,
    424 F.3d 1136 (Fed. Cir. 2005) ......................................................... 5

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ....................................................... 13

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................. passim

*Phoenix Sols., Inc. v. West Interactive Corp.*,
    No. CV09-8156 MRP (SS), 2010 WL 6032841 (C.D. Cal. Aug. 25, 2010) .......... 7

*Powell v. Home Depot U.S.A., Inc.*,
    663 F.3d 1221 (Fed. Cir. 2011) ......................................................... 7

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*,
    599 F.3d 1308 (Fed. Cir. 2010) ...................................................... 8, 9

*Rambus Inc. v. Hynix Semicond. Inc.*,
    569 F. Supp. 2d 946 (N.D. Cal. 2008) ............................................... 6

*Retractable Techs., Inc. v. Becton, Dickinson and Co.*,
    653 F.3d 1296 (Fed. Cir. 2011) ....................................................... 17

*Schindler Elevator Corp. v. Otis Elevator Co.*,
    593 F.3d 1275 (Fed. Cir. 2010) ....................................................... 20

*Sears Petrol. & Transport Corp. v. Archer Daniels Midland Co.*,
    No. 5:03-cv-1120, 2007 WL 2156251 (N.D.N.Y. July 24, 2007) ...................... 7

DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ............................................................... 5

*Texas Instrs., Inc. v. Linear Techns. Corp.*,
   182 F. Supp. 2d 580 (E.D. Tex. 2002) ..................................................... 7

*TIP Sys., LLC v. Phillips & Brooks/Gladwyn, Inc.*,
   529 F.3d 1364 (Fed. Cir. 2008) ............................................................. 20

*Townshend Intell. Prop., L.L.C v. Broadcom Corp.*,
   No. C06-05118 JF (RS), 2008 WL 171039 (N.D. Cal. Jan.18, 2008) .......... 7, 8, 9

*TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.*,
   264 F.3d 1111 (Fed. Cir. 2001) ............................................................. 20

*ZapMedia Svcs., Inc. v. Apple Inc.*,
   No. 2011–1546, 2012 WL 1416265 (Fed. Cir. Apr. 25, 2012) ........................... 20

Statutes

35 U.S.C. § 132 ....................................................................................... 20, 21

35 U.S.C. § 305 ....................................................................................... 20, 21

Other Authorities

M.P.E.P. § 2250 ........................................................................................... 21

DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

1    Defendant EasyLink Services International Corporation ("EasyLink"), in

2    accordance with the Court's Order issued August 8, 2012 (D.I. 56), hereby submits this

3    brief in support of its proposed interpretation of the claim terms of U.S. Patent No.

4    6,350,066 ("the '066 Bobo patent") (Exhibit A).[1]  The parties' Amended Joint Claim

5    Construction And Prehearing Statement sets forth the disputed term as well as the

6    parties' agreed-upon terms.  *See* Exhibit B.

7                                <u>INTRODUCTION</u>

8           This is the second patent infringement action that plaintiff j2 Global, Inc. ("j2")

9    has filed against EasyLink.  In this action, j2 and plaintiff Advanced Messaging

10   Technologies, Inc. ("AMT") assert the '066 Bobo patent, as well as three patents

11   asserted against EasyLink in the first-filed action.[2]  Because the '066 Bobo patent was

12   not asserted against EasyLink in the first-filed action, the *Markman* hearing in this

13   action will address disputed terms of the '066 patent.  And although the Court has

14   previously construed some of the '066 Bobo patent terms,[3] it is appropriate for the

15   Court to clarify or modify its previously-issued construction  because the Court has not

16   heard and considered important evidence, or arguments that EasyLink presents,

17   concerning the scope of the claims.

18          The key disputed term in this action is "a user-specific message storage area of

19   the storage medium associated with the intended recipient[.]"  The Court construed a

20   portion of this phrase ("user-specific message storage area") in the Captaris Action.

21   But the Court's previous construction is ambiguous -- which will lead to disputes at

22

23   [1]  All references to exhibits refer to exhibits attached to the Declaration of Thomas C. Lundin Jr. In

24   Support Of Opening Claim Construction Brief Of Defendant EasyLink Services International
     Corporation ("Lundin Decl."), filed concurrently herewith.

25   [2]  The three patents asserted in both actions are U.S. Patent Nos. 6,208,638; 6,597,688; and 7,020,132

26   (the "non-Bobo patents").  In the first-filed action, EasyLink participated in the *Markman* briefing and
     hearing with respect to the non-Bobo patents, and thus does not seek in this action to have the Court

27   construe terms in the non-Bobo patents.
     [3]  The Court construed certain terms of the '066 Bobo patent in the action *j2 Global Communications,*

28   *Inc. v. Captaris, Inc.*, Case No. CV09-04150 DDP (AJWx) (the "Captaris Action").

---

1

1   summary judgment and trial concerning the meaning of the Court's construction -- and,

2   depending on how it is read, conflicts with the plain meaning of the claim language and

3   the intrinsic record.  And although the Court can revise a construction as late as the end

4   of trial, it should clarify the prior construction now, narrowing the issues for trial.

5           The crux of the parties' dispute is whether the "user-specific message storage

6   area of the storage medium associated with the intended recipient" must be an area of

7   the storage medium that is "user-specific" and "associated with the intended

8   recipient" -- that is, whether it contains messages for a *single specific user* or may

9   contain messages for *any and all users* comingled together.  The latter interpretation is

10  not supported by any of the evidence that the Court should consider under controlling

11  Federal Circuit law -- not the claim language, not the specification or prosecution

12  history, not the intrinsic record of other Bobo patents sharing the same specification as

13  the '066 Bobo patent, and not the extrinsic evidence.  Yet j2 will argue that the Court's

14  construction in the Captaris Action allows for the latter, improper interpretation.

15          To be clear, the parties' dispute is not about whether the "user-specific message

16  storage area" is a physical or logical area of the storage medium.  As EasyLink's

17  proposed construction makes plain, the "user specific message storage area of the

18  storage medium associated with the intended recipient" can be either a physical or

19  logical area.  Instead, what matters is that the message storage area is "user-specific"

20  and "associated with the intended recipient" because it stores only the messages for a

21  single specific user.  Yet the reasoning underlying the Court's prior construction

22  focused entirely on a physical/logical dichotomy.  As a result, the prior construction

23  does not address whether messages are stored in an area that is "user-specific" and

24  "associated with the intended recipient."

25          As explained below, the intrinsic evidence make plain that the phrases "user-

26  specific" and "associated with the intended recipient" modify the phrase "message

27  storage area of the storage medium."  In the Captaris Action, j2 asserted that the phrase

28  "user-specific" modified the term "message," but this argument is flatly refuted by the

Defendant's Opening Claim Construction Brief

1  claim language, specification, and prosecution history.  Moreover, evidence that was

2  not before this Court in the previous *Markman* -- namely, claims of subsequently issued

3  patents that share the same specification as the '066 Bobo patent and statements that j2

4  made to the Patent Office during prosecution of those patents -- conclusively show that

5  "user-specific message storage area" means an area that is specific to a single user.

6  Accordingly, EasyLink respectfully requests that the Court clarify its prior construction

7  by adopting EasyLink's proposed construction.

8                        STATEMENT OF FACTS

9  I.    PRODECURAL BACKGROUND

10         On December 11, 2009 plaintiff j2 filed its First Amended Complaint in *j2*

11  *Global Comm'ns, Inc. v. EasyLink Svcs. Int'l Corp.*, Case No. CV09-04189 DDP

12  (AJWx) (the "4189 Action") asserting the non-Bobo patents against EasyLink.  The

13  4189 Action was placed on the same pretrial schedule as the Captaris Action and other

14  actions.  The Court held a Markman hearing on October 15, 2010, and the Court issued

15  a Claim Construction Order on March 7, 2011, with respect to the '066 Bobo patent and

16  one of the non-Bobo patents.  *See* Exhibit C.

17         On February 25, 2011, j2 moved for leave to file a second amended complaint in

18  the 4189 Action to assert the '066 Bobo patent against a newly-accused system that

19  EasyLink acquired in October 2010 and add AMT as a plaintiff.  On April 21, 2011, the

20  Court issued an Order denying the motion because, among other grounds, EasyLink did

21  not participate in any of the *Markman* proceedings concerning the '066 Bobo patent.

22  Ex. D at 3-4.  On May 17, 2011, plaintiffs filed this action asserting the '066 Bobo and

23  non-Bobo patents against the newly-accused EasyLink system.

24  II.   FACTUAL BACKGROUND OF THE '066 BOBO PATENT

25         The '066 Bobo patent is one of a family of related patents, all identifying Charles

26  Bobo as the named inventor, all claiming priority to the same original application, and

27  all sharing the same specification (the "Bobo Family").  The '066 Bobo patent

28  originally issued to Charles R. Bobo, II on February 22, 2002, from an application filed

November 5, 1998 ("the '066 Bobo Application").  The '066 Bobo Application was a continuation of an application, which itself was a continuation-in-part of an earlier application that issued as U.S. Pat. No. 5,675,507 ("the '507 Bobo patent").  Since the '066 Bobo patent issued, six patents in the Bobo Family have issued that also claim priority to the '507 Bobo patent and, thus, share the same specification as the '066 Bobo patent.  Four have issued since this Court construed the '066 Bobo patent claims:

- U.S. Pat. No. 7,836,141 ("the '141 Bobo patent"), issued November 16, 2010 (Exhibit D);

- U.S. Pat. No. 7,895,306 ("the '306 Bobo patent") issued February 22, 2011 (Exhibit E);

- U.S. Pat. No. 7,895,313 ("the '313 Bobo patent"), issued February 22, 2011 (Exhibit F); and

- U.S. Pat. No. 7,934,148 ("the '148 Bobo patent"), issued April 26, 2011 (Exhibit G).

The '066 Bobo Patent was the subject of an *ex parte* reexamination proceeding filed May 11, 2005 ("the Reexamination"), that spanned four years and generated an extensive prosecution file history.  *See* Exhibit H.  During the Reexamination, the Examiner repeatedly rejected all of the claims of the originally-issued '066 Bobo patent.  *See, e.g.*, Exhibit I.  As a result, j2 submitted 140 new claims to overcome the Examiner's rejections.  *See id.*  When a Reexamination Certificate issued on May 5, 2009, all thirty-five originally-issued claims had been replaced by twenty-two new, narrower claims.  *See* Ex. A, *Ex Parte* Reexamination Certificate.

<u>ARGUMENT AND CITATION OF AUTHORITIES</u>

I.   <u>LEGAL STANDARD FOR CONSTRUING CLAIMS</u>

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).  In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope.  *See id.; C.R. Bard, Inc. v. U.S. Surg. Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004).  This intrinsic

1    evidence includes the claims themselves, the specification, and the prosecution history.

2    *See Phillips*, 415 F.3d at 1314.

3         "It is elementary that claim construction begins with, and remains focused on, the

4    language of the claims."  *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d

5    1296, 1302 (Fed. Cir. 2005).  The claims themselves provide substantial guidance in

6    determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  Claims,

7    however, "must be read in view of the specification, of which they are a part."  *Id.* at

8    1315 (quoting *Markman v. Westview Instrs., Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).

9    "The specification is always highly relevant to the claim construction analysis. Usually,

10   it is dispositive; it is the single best guide to the meaning of a disputed term."  *Id.*;

11   *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  The

12   patentee is not entitled to a claim construction divorced from the context of the written

13   description and prosecution history.  *Nystrom v. Trex Co.*, 424 F.3d 1136, 1144-45

14   (Fed. Cir. 2005).

15        Accordingly, a court "should also consider the patent's prosecution history, if it

16   is in evidence."  *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980).  The

17   prosecution history demonstrates "how the inventor understood the invention and

18   whether the inventor limited the invention in the course of prosecution, making the

19   claim scope narrower than it would otherwise be."  *Id.*; *see also Computer Docking

20   Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) (patentee may limit a

21   claim term during prosecution "by clearly characterizing the invention in a way to try to

22   overcome rejections based on prior art"); *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371,

23   1384 (Fed. Cir. 2005) (courts should ensure "that claims are not construed one way in

24   order to obtain their allowance and in a different way against accused infringers").

25   Further, it is well-established that a narrowing amendment made in a reexamination

26   proceeding gives rise to a presumption that the patentee has surrendered all subject

27   matter between the original claim limitation and the amended claim limitation.  *See,*

28

1   *e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 728

2   (2002); *Biagro*, 423 F.3d at 1305.

3        Court also may rely on extrinsic evidence such as technical dictionaries in

4   construing claims. *Phillips*, 415 F.3d at 1318. The Federal Circuit has "especially

5   noted the help that technical dictionaries may provide to a court 'to better understand

6   the underlying technology' and the way in which one of skill in the art might use the

7   claim terms." *Id.* "Because dictionaries, and especially technical dictionaries, endeavor

8   to collect the accepted meanings of terms used in various fields of science and

9   technology, those resources have been properly recognized as among the many tools

10  that can assist the court in determining the meaning of particular terminology to those

11  of skill in the art of the invention." *Id.*

12  **II.   THE COURT SHOULD CONSIDER EASYLINK'S NEW ARGUMENTS**

13       **AND EVIDENCE, AND SHOULD CLARIFY ITS PRIOR CONSTRUCTIONS.**

14       This Court has ruled, and j2 has admitted, that the Court's claim construction

15  order in the Captaris Action is not binding in this action under the issue preclusion

16  doctrine. *See* Ex. D at 3-4 (this Court ruling that "where the court has held a Markman

17  hearing, each party must be afforded a full and fair opportunity to participate") (citing

18  *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir.

19  2001); *Catch Curve, Inc. v. Protus IP Sols., Inc.*, No. CV 06-2574 DDP (AJWx), 2007

20  WL 5688767, *1 n.2 (C.D. Cal. May 11, 2007)); Ex. B at 2 ("j2 agrees that, as far as the

21  '066 Patent is concerned, the Court's claim construction order in DI-168 is not formally

22  binding on EasyLink."). j2 apparently argues, however, that the construction in the

23  Captaris Action, while not "formally binding," should have a *stare decisis*-type effect in

24  this action. Ex. B. at 2.

25       Courts in this Circuit have rejected the application of *stare decisis* to prior claim

26  construction rulings. *See, e.g., Rambus Inc. v. Hynix Semicond. Inc.*, 569 F. Supp. 2d

27  946, 965-66 (N.D. Cal. 2008) (refusing to apply *stare decisis* to its own claim

28  construction ruling in a prior case) (citing, *e.g., Townshend Intell. Prop., L.L.C v.*

*Broadcom Corp.*, No. C06-05118 JF (RS), 2008 WL 171039, at *2-3 (N.D. Cal. Jan.18, 2008) (modifying prior claim construction in response to new party's argument that the prior construction remained ambiguous)); *see also Sears Petrol. & Transport Corp. v. Archer Daniels Midland Co.*, No. 5:03-cv-1120, 2007 WL 2156251, at *12 (N.D.N.Y. July 24, 2007) (considering arguments that had not been presented in prior claim construction proceeding); *KX Indus., L.P. v. PUR Water Purif. Prods., Inc.*, 108 F. Supp. 2d 380, 387 (D. Del. 2000) (ruling that the court would defer to its prior claim construction, but only "to the extent the parties do not raise new arguments"); *Texas Instrs., Inc. v. Linear Techns. Corp.*, 182 F. Supp. 2d 580, 589-90 (E.D. Tex. 2002) (stating that refusing to consider a new party's claim construction arguments may raise due process concerns).  In each instance, the court reasoned that courts should consider new arguments or evidence not considered in the prior claim construction ruling.  *See, e.g., Townshend*, 2008 WL 171039, at *2-3; *Sears Petrol.*, 2007 WL 2156251, at *12; *KX Indus.*, 108 F. Supp. 2d at 387.  That is precisely the circumstance here.

Further, the Federal Circuit has held that a district court has discretion to revise its claim constructions during a litigation as its understanding of the technology and issues evolves:

> District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.  This is particularly true where issues involved are complex, either due to the nature of the technology or because the meaning of the claims is unclear from the intrinsic evidence.

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002); *see also, e.g., Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1229-30 (Fed. Cir. 2011) (affirming judgment where district court first construed a term to be means-plus-function limitation, but before trial modified its ruling and construed the term to be an ordinary claim limitation); *Accentra Inc. v. Staples, Inc.*, No. CV 07-5862 ABC (RZx), 2011 WL 7563039, at *3 (C.D. Cal. Dec. 19, 2011) .

1      In *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315-

2 16 (Fed. Cir. 2010), the Federal Circuit affirmed the district court's revision of its

3 construction at trial because the defendant's cross-examination "revealed a dispute over

4 the trial court's definition of [a term]. . . . a trial judge may learn more about the

5 technology during the trial that necessitates some clarification of claim terms before the

6 jury deliberates." *Pressure Prods.*, 599 F.3d at 1315-16; *see also Edwards Lifesciences*

7 *LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009) (revising construction to

8 address parties' dispute over term "malleable" contained in initial construction);

9 *Townshend*, 2008 WL 171039, at *2-3 (modifying claim construction in response to

10 new party's argument that prior construction was ambiguous); *Verizon Calif. Inc. v.*

11 *Ronald A. Katz Tech. Licensing, L.P.*, No. 01-cv-09871 RGK (RCX), 2003 WL

12 25761597, at *40 (C.D. Cal. Dec. 2, 2003) (modifying construction where summary

13 judgment briefs showed that initial construction did not resolve dispute).

14      Similarly, this Court's construction of "user-specific message storage area" -- "an

15 area within a storage medium that stores messages for a recipient in a manner that

16 identifies the message uniquely to the recipient" -- is ambiguous with respect to the

17 issue disputed by the parties and will engender dispute through trial.  Specifically,

18 although the construction includes the phrases "messages for a recipient" and "in a

19 manner that identifies the message uniquely to the recipient," it remains unclear

20 whether the construction requires an area that stores messages for a *specific* recipient or

21 for *every* recipient.[4]  This is the crux of the parties' dispute, and that dispute is not

22 resolved by the prior construction.  Accordingly, this Court should clarify the existing

---

[4]  Notably, despite this Court having provided a prior construction, Unified Messaging Solutions, LLC ("UMS") -- which is plaintiffs' affiliate and the exclusive licensee of the Bobo Family patents -- has proposed a completely different construction for "user-specific message storage area" in currently pending litigation in another court.  *See* Exhibits J, K.  Specifically, UMS proposed that this term be construed as a "logical or physical storage area within a storage medium for storing a specific user's messages."  Ex. K at 16.  At a minimum, UMS's decision not to rely on the Court's construction in the Captaris Action shows that the Court's construction is ambiguous with respect to the disputed issue.

construction, which does not provide the jury sufficient guidance for determining infringement.  *See Pressure Prods.*, 599 F.3d at 1315-16; *Edwards*, 582 F.3d at 1334; *Townshend*, 2008 WL 171039, at *2-3; *see also Jang v. Boston Scientific Corp.*, 532 F.3d 1330, 1337 (Fed. Cir. 2008) ("a better understanding of the context of the claim construction as a case proceeds through an infringement determination can appropriately lead a district court to change its initial claim construction").

III.    THE "USER-SPECIFIC MESSAGE STORAGE AREA" TERMS[5] REQUIRE AN AREA OF THE STORAGE MEDIUM THAT IS <u>ASSOCIATED WITH A SINGLE SPECIFIC USER.</u>

The disputed term appears in independent claims 36 and 43 of the '066 Bobo patent, as amended in Reexamination.

| Term | EasyLink's Construction | j2's Construction |
|---|---|---|
| a user-specific message storage area of the storage medium associated with the intended recipient | an area of a storage medium, which area may be logical or physical, that is associated with a specific user of the message storage system, namely, the intended recipient | an area within a storage medium that stores messages for a recipient in a manner that identifies the message uniquely to the recipient |

Several things are immediately clear from the parties' proposed constructions:

- The parties agree that the element being defined is "an *area*" within or "of a storage medium."  j2's proposed construction acknowledges that this area is for "stor[ing] messages" and thus that it is a "*message storage area*." About this, there is no dispute.

---

[5] In this brief, EasyLink collectively refers to the following five claim phrases as the "user-specific message storage area terms": (1) "a user-specific message storage area of the storage medium associated with the intended recipient"; (2) "access to a user-specific message storage area"; (3) "indicative of a request by the intended recipient to gain access to a user-specific message storage area"; (4) "the message signal is stored in the user-specific message storage area"; and (5) "links to respective messages in the user-specific message storage area[.]"  As noted in the parties' Amended Joint Claim Construction Statement, phrases Nos. 2-5 are disputed only in that they incorporate the phrase "user-specific message storage area," which is being construed independently.

DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

- The parties' dispute is **not** about whether the area of the storage medium is a physical or logical area. EasyLink's proposed construction makes plain that it may be either.

- The dispute is about whether the "user-specific message storage area" stores messages for a **single specific** user of the message storage system -- as the claim language states, is "associated with the intended recipient" -- or can store messages for **any and all** users, as j2 intends to argue.

j2's proposed construction adopts the prior construction in the Captaris Action. But the Court's reasoning underlying that prior construction turned on a perceived issue concerning physical versus logical storage that is not at issue here. *See* Ex. C at 15. Further, the Court's prior construction fails to resolve the real issue in dispute: whether the "user-specific message storage area" stores messages only for a *single specific* user, and not *every* user. Thus, a more clear construction is appropriate. And as explained below EasyLink's construction is unambiguously confirmed by all the evidence, including evidence that the Court did not have the opportunity to consider previously.

A.   The Prior Construction Is Ambiguous And
      Fails To Resolve The Parties' Dispute.

The prior construction requires clarification because the Court's reasoning focused on a physical/logical distinction that is not at issue and does not address the specific user/all users distinction. Moreover, the reasoning and intrinsic evidence cited in the Court's Order supports the understanding that the message storage area must "**remain[] user-specific**" and store only "**files for a single user**." Ex. B at 15 (emphasis added). Nevertheless, j2 interprets the prior construction to not require that the storage area "remain user-specific," resulting in the need for clarification.

In its prior claim construction Order, the Court identified only one distinction that it perceived between the constructions proposed by Captaris and j2 -- that of physical versus logical storage areas. The Court stated that "Captaris's proposed definition includes the word 'portion' in a way that might be misunderstood to refer to a physical portion of the storage medium." *Id.* After explaining its reasoning, the Court adopted j2's construction solely because it found "no support in the Patent for imposing the limit

10

1 Captaris suggests, *i.e.*, defining a storage area as a <u>physical</u> area." *Id.* (emphasis in

2 original).  Thus, the Court adopted j2's construction only because the Court believed

3 that j2's construction allowed for the storage of data "organized into logical and not

4 physical areas." *Id.*

5      The discussion of physical versus logical storage areas also dominated the oral

6 argument at the *Markman* hearing.  *See* Transcript of Markman Hearing, October 15,

7 2010 (Exhibit L) at 52-57, 63-64, 66-67.  For example, j2's counsel opened the

8 discussion of this term by stating:

9         a substantial part of this I think is the question between *physical versus logical

10 storage* . . . . We're dealing with -- random access storage and physical
        storage with isolated physical locations is not how that works.

11            The patent here discloses that *the storage need not be physically

12 segregated*. It states that -- expressly that ***all messages for one user need not
        be in the same place***.  Column 12, 32 to 38, ***files for a single user can be

13 stored in different directories.***

14 *Id.* at 52 (emphasis added).  Thus, the dispute was framed as one of physical versus

15 logical storage areas, but whether the "user-specific message storage area" is a physical

16 or logical area is **not** the disputed issue in this action.  Instead, the actual issue is

17 whether the "user-specific message storage area" stores messages for a single specific

18 user, and only that user -- and the evidence relied on by j2's counsel at the *Markman*

19 hearing and cited in the Court's Order proves that to be the case.

20      As shown above, j2's own counsel argued that "all messages ***for one user*** need

21 not be in the same place." *Id.*  As support, j2's counsel cited language from the

22 specification stating that "files ***for a single user*** can be stored in different directories."

23 *Id.*  It is clear, however, that the patent claim is focused on storage of messages for "one

24 user" or "a single user" and not messages for all users comingled together.  Thus, while

25 messages for a specific user need not be stored in one place, messages for a specific

26 user are stored separately from messages for other users.  *Id.*

27      Second, the Court's Order expressly adopted this concept, stating that "a logical

28 area may extend over multiple 'portions' of the storage medium, ***while still remaining***

11

1    *'user-specific.'*"  Ex. B at 15 (emphasis added).  The Court's reasoning plainly takes as

2    an established underlying principle that the storage area, while perhaps logical, must

3    "*remain[] 'user-specific'*" -- that is, specific to a single user.  And the language from

4    the specification cited by the Court again supports this conclusion.  The Court stated:

5    "[t]he memory . . . may be organized in other ways with the files *for a single user* being

6    stored in different directories."  *Id.* (emphasis added, original emphasis omitted) (citing

7    patent specification at 12:32-39).  Thus, the Court's construction provides that the

8    "user-specific message storage area" can be organized into logical areas.  But the

9    Court's Order also acknowledges that such logical areas must "remain[] 'user-specific'"

10   and store files only "for a single user."  *Id.*

11          Nevertheless, j2 intends to argue that the "user-specific message storage area of

12   the storage medium associated with the intended recipient" need not be "user-specific."

13   This interpretation ignores the Court's Order, is not supported by plain and ordinary

14   meaning of the claim language, the specification, or the prosecution history.  j2's

15   interpretation also directly conflicts with the claims of, and j2's own statements to the

16   Patent Office during prosecution of, subsequent Bobo Family patents that, notably, this

17   Court did not have the opportunity to consider at the previous *Markman* hearing. j2's

18   tortured interpretation and its conflicting positions before the Patent Office and this

19   Court requires the Court to clarify its construction and erase any ambiguity by adopting

20   EasyLink's proposed construction.

      **B.**    **The Claims And Prosecution History Of Subsequent Bobo Family**
                  **Patents Confirm That The Message Storage Area Is User-Specific.**

23          During the previous *Markman* hearing this Court did not have the opportunity to

24   consider the claims and prosecution histories of subsequently issued Bobo Family

25   patents, which expressly refute the positions that j2 has taken in this litigation.  Well-

26   established law provides that courts should consider the claims of and statements made

27   during prosecution of previously and subsequently granted patents when construing a

28   common term in a patent of the same family sharing a common specification.  *See, e.g.,*

1  *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1348-51 (Fed. Cir. 2004)

2  (citing *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990)); *Omega Eng'g,*

3  *Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("We presume, unless

4  otherwise compelled, that the same claim term in the same patent or related patents

5  carries the same construed meaning."); *Adv. Cardio. Sys., Inc. v. Medtronic, Inc.*, 265

6  F.3d 1294, 1305 (Fed. Cir. 2001) ("The prosecution history of a related patent can be

7  relevant if, for example, it addresses a limitation in common with the patent in suit.").

8  Here, the claims of at least the '141 Bobo patent and the '148 Bobo patent, and j2's

9  statements to the Patent Office during prosecution of the '141 Bobo patent, confirm that

10  it is the storage area -- and not the message -- that is user-specific.

11   Just like the '066 Bobo patent, the '141 Bobo patent and '148 Bobo patent claims

12  recite a "user-specific message storage area."  The '141 Bobo patent claims then

13  expressly state: "wherein access to the user-specific message storage area is ***restricted***

14  ***to the user*** or others authorized by the user[.]"  *Id.* at 26:64-68.  The fact that the '141

15  Bobo patent restricts access to the user-specific message storage area to "the user or

16  others authorized by the user" establishes that "user-specific message storage area" as

17  used in the '066 Bobo patent means an area of a storage medium that is specific to a

18  single user.  It also shows that "a user-specific message storage area" cannot be

19  construed to allow storage of *all* messages for *all* users in one undifferentiated area --

20  because such an area would not be "restricted to the user."

21   Similarly, the '148 Bobo patent claims a method for delivering a "mark-up

22  language file" to a user's computer including the step of

23    generating the mark-up language file to include a sequence of mark-up
24    language instructions that cause an application program executing on the
     user's computer to generate a user interface that <u>provides a link to a message</u>
25    <u>stored in a user-specific message storage area</u> accessible by the network
     server, <u>and that further provides information personal to the user</u>;
26
27  Ex. G, claims 1, 90.  The fact that the '148 Bobo patent claims a user interface that

28  simultaneously provides "information ***personal to the user***" and links to messages (***not***

---

13

"user-specific messages") stored in the user-specific message storage area shows that the user-specific message storage area is specific to a single user -- because links to all messages of all users on the system would not be information "personal to the user."

Further, in prosecuting the '141 Bobo patent, j2 argued to the Patent Office that "user-specific" modifies "message storage area." First, in responding to an Office Action rejecting the claims, j2 placed a comma between "user-specific" and "message storage area" to emphasize that the message storage area is "user-specific":

> Specifically, independent claims 1 and 32 recite, among other things, reception of a message for delivery to a user, "wherein the message is addressed to the user." These claims further require "storing the message in a user-specific message storage area associated with the network server, ***wherein access to the user-specific, message storage area is restricted to the user*** . . . ."

Exhibit M at 3. Moreover, j2 expressly stated that "the pending claims require that a message, itself, is stored in ***a user-specific storage area***." *Id.* at 5 (emphasis added). Notably, in this passage, j2 states that a "message" (**<u>not</u>** "user-specific message") is stored in a "user-specific storage area" (**<u>not</u>** "user-specific message storage area"). j2's omission of the word "message" from "user-specific storage area" conclusively shows that "user-specific" modifies "messages storage area" and not "message." The term "user-specific message storage area" as used in the '066 Bobo patent must be construed the same way. *See Microsoft Corp.*, 337 F.3d at 1348-51.

## C. The Claim Language Establishes That The User-Specific Storage Area Is Specific To A Single User.

### 1. The Plain Language Of Asserted Claim Itself Establishes That The Message Storage Area Is Specific To A Single User.

Courts generally give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-13. The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Id.* at 1314. Here, the plain meaning of the claim language itself supports EasyLink's proposed

14

1  construction and directly contradicts any argument that the "user-specific message

2  storage area of the storage medium associated with the intended recipient" stores all

3  messages for all users comingled together.

4       The actual claim term to be construed is not simply "user-specific message

5  storage area," but the full phrase "user-specific message storage area of the storage

6  medium associated with the intended recipient." Ex. B at 7. As noted above, the

7  parties agree that the element being defined is an *area* of a storage medium, and j2's

8  proposed construction acknowledges that this area is for "stor[ing] messages," *i.e.*, it is

9  a "*message storage area*." *Id.* Thus, the dispute concerns the characteristics of that

10 "message storage area." The language of the entire disputed claim term

11 straightforwardly explains those characteristics by modifying "message storage area."

12 *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context

13 of the surrounding words of the claim also must be considered in determining the

14 ordinary and customary meaning of those terms").

15       First, because the claim refers to a "message storage area *of the storage medium*,"

16 the message storage area must therefore be a <u>subset</u> of the entire storage medium.

17 Thus, "a user-specific message storage area of the storage medium associated with the

18 intended recipient" cannot refer to the entirety of a storage medium (whether that be a

19 hard disk drive or random access memory) where *all* user messages are stored. Because

20 j2's proposed construction acknowledges that the message storage area is "within a

21 storage medium," there is no dispute about this fact.

22       Second, the "message storage area" also must be "user-specific" and "associated

23 with the intended recipient." Both "user-specific" and "associated with the intended

24 recipient" modify "message storage area of the storage medium." Although j2 argued

25 at the *Markman* hearing in the Captaris Action that "user-specific" modifies "message,"

26 and not "message storage area," *see* Ex. E at 68 ("by the way, that means not user-

27 specific message storage area but user-specific 'message' storage area"), the claim

28 language itself flatly refutes this argument. As an initial matter, j2's argument

completely ignores the phrase "associated with the intended recipient."  That phrase plainly modifies "message storage area of the storage medium" and not "message" -- otherwise the claim would read "user-specific message associated with the intended recipient storage area of the storage medium," which would be nonsensical.  Further, the use of the singular phrase "*the* intended recipient" and not "intended recipients" makes plain that each "message storage area" is specific to a single user.  In addition, the term "message" appears multiple times in the same claim without the phrase "user-specific."  *See, e.g.*, Ex. A at limitation [m] ("links to respective messages stored in the user-specific message storage area"). Indeed, the **only** appearance of the modifier "user-specific" in **any** of the claims precedes the phrase "message storage area," and **every** appearance of the phrase "message storage area" is preceded by the modifier "user-specific."  *See* Ex. A, claims 36, 41, 42, 43, 48, 49, 50.

2.     The Language Of Several Unasserted Claims Confirms That The Message Storage Area Is Specific To A Single User.

The Federal Circuit has explained that "[o]ther claims of the patent in question, both asserted and unasserted, can often illuminate the meaning of the same term in other claims." *Phillips*, 415 F.3d at 1314.  Here, a review of the other dependant and independent claims where the term "user-specific message storage area" appears confirms that "user-specific message storage area" stores messages for only a single specific user.

For example, claims 41 and 42 (which depend from claim 36), and claims 48 and 49 (which depend from claim 43), would make no sense if the "user-specific message storage area" did not store messages for a single specific user.  Claims 41 and 48 require the a claimed "user interface" to show "an indication of the *total number of messages* stored in the user-specific message storage area."  Ex. A.  Claims 42 and 49 require the user interface to provide "an indication of the *total number of new messages* stored in the user-specific message storage area, and an indication of the *total number*

*of saved messages* stored in the user-specific message storage area."[6] *Id.* If a "user-specific message storage area" could contain the messages of *all* users, then these claims illogically would require each individual user's interface to indicate the total number of messages, new messages, and saved messages for *all other users* of the message delivery system.

Similarly, independent claim 50 requires that the claimed "mailbox user interface" include "a listing of the messages in the user-specific message storage area[.]" *Id.* But if a "user-specific message storage area" could contain messages for all users, claim 50 would require a single user's mailbox to include the messages for *all other* users of the entire message delivery system. Again, this result would be illogical because it would create a scenario where each individual user has access to all of the messages stored in the entire system, regardless of who was the intended recipient.

Accordingly, j2's proposed interpretation would defeat the patent's purpose of allowing "the intended recipient" to retrieve only his or her messages. Thus, the only appropriate reading of claims 41-42, 48-49, and 50 is that the "user interface" or "mailbox user interface" lists messages in a "user-specific message storage area" that is *specific to only a single user*.

D.    The Specification Supports EasyLink's Proposed Construction.

"The best source for understanding a technical term is the specification from which it arose[.]" *Phillips*, 415 F.3d at 1315; *see also Retractable Techs., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (requiring construction to "tether the claims to what the specifications indicate the inventor actually invented"). Here, the specification -- even before j2 further limited the claims during Reexamination -- supports EasyLink's construction and refutes the broad

---

[6] Notably, claims 41 and 48 ***do not*** read ". . . total number of <u>user-specific</u> messages stored in the user-specific message storage area"; and claims 42 and 49 ***do not*** read "total number of new <u>user-specific</u> messages stored in the user-specific message storage area, and . . . total number of saved <u>user-specific</u> messages stored in the user-specific message storage area."

interpretation j2 now advocates.  As noted, both this Court and j2's counsel have relied on specification language that supports EasyLink's construction.  *See* Ex. B at 15; Ex. E at 52.  The specification states:

> In the preferred embodiment, the files for each user are stored in a separate directory assigned to just that one user because an entire directory for a given user generally can be protected easier than the individual files. The memory, however, may be organized in other ways with the files for a single user being stored in different directories.

Ex. A at 12:32-38.  In its previous Order, to support its conclusion that the disputed term was not limited to the preferred embodiment, this Court cited the sentence "[t]he memory . . . may be organized in other ways with files for a single user being stored in different directories."  Ex. B at 15.  Notably, however, this language provides only that the files "***for a single user*** [may be] stored in different directories" -- not that such "different directories" may contain files of multiple users.  The following illustrates what this language provides and does not provide:

| | |
|---|---|
| <u>The preferred embodiment:</u><br>"files for each user are stored in a separate directory"<br>Ex. A at 32-33. | <u>User:</u>      Adam Smith<br><u>Directory:</u>      \...\users\ASmith<br><br><u>User:</u>      Ben Jones<br><u>Directory:</u>\...\users\BJones |
| <u>Alternative embodiment described in specification:</u><br><br>"[t]he memory may be organized in other ways with files ***for a single user*** being stored in different directories"<br><br>Ex. A at 36-38. | <u>User:</u>      Adam Smith<br><u>Directories:</u> \...\users\ASmith1<br>                \...\users\ASmith2<br><br><u>User:</u>      Ben Jones<br><u>Directories:</u> \...\users\BJones1<br>                \...\users\BJones2 |
| <u>Construction **NOT** supported by the specification:</u><br>*all* messages for *all* users comingled together | <u>User:</u>      Adam Smith<br><u>User:</u>      Ben Jones<br><u>User:</u>      Cathy Roe<br><u>Directory:</u>      \...\users |

There is no support in the specification for the argument that messages for different users may be comingled in one directory (or other area of storage).  Indeed,

18

the entire specification teaches away from this suggestion.        For example, the specification states, in describing the path of a message signal through the central processor of the message storage system: "The microprocessor 27 will read the address signal from the pulse/tone decoder 23 and store the message from the DSP [digital signal processor] 25 in *an appropriate directory in storage 11*."  Ex. A at 17:13-15 (emphasis added).  This language shows that, even if the system stores messages "for a single user . . . in different directories," the system still must store the messages "in *an appropriate directory*" -- that is, exclusive to that user -- not in an undifferentiated storage location containing all users' messages.

Further, the specification makes plain that "a user-specific message storage area" means an area of a storage medium that is specific to only "the intended recipient."  The specification states:  "The intended recipient of the message uses the services provided by the MSDS 10 and will hereinafter be referred to as the user."  Ex. A at 8:8-10.  Thus, EasyLink's construction "an area of a storage medium, which area may be logical or physical, that is associated with *a specific user of the message storage system, namely, the intended recipient*" is proper.

E. The Prosecution History Supports
   EasyLink's Proposed Construction.

The '066 Bobo patent claims currently before the Court were new claims submitted during the *ex parte* Reexamination after cancellation of all of the original patent claims.  *Ex parte* reexamination proceedings are governed by Section 305 of the Patent Act, which provides:

> In any reexamination proceeding under this chapter, the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, *in order to distinguish the invention as claimed from the prior art cited* under the provisions of section 301 of this title, *or in response to a decision adverse to the patentability of a claim of a patent*.  No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter.

DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

35 U.S.C. § 305 (emphasis added).  Because the only statutory bases for permitting a patentee to submit new or amended claims are to distinguish prior art or in response to a decision adverse to patentability, any language in a new claim submitted during reexamination that was not present in an original claim necessarily is a "narrowing amendment made for a reason related to patentability."  *Festo*, 535 U.S. at 728.

Here, the language "user-specific message storage area of the storage medium associated with the intended recipient" is entirely new and therefore narrowed the claims.  An "express disavowal" of claim scope by the patentee is not required in this circumstance because the submission of the amended claim language itself necessarily narrowed the scope of the original claims.  *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) (holding that addition of new claim limitations necessarily limits the claim's original scope).  In this instance, the claims containing the newly-added language in the "user-specific message storage area" terms were thus limited to what was described as "the preferred embodiment" in the original patent: "the files for each user are stored in a separate directory assigned to just that one user[.]"  Ex. A at 12:32-34.  *See, e.g., ZapMedia Svcs., Inc. v. Apple Inc.*, No. 2011–1546, 2012 WL 1416265, at *4 (Fed. Cir. Apr. 25, 2012) (unpublished) (statements made during reexamination of parent patent, along with claim language, specification, and prosecution history, limited the claims to the preferred embodiment (citing *TIP Sys., LLC v. Phillips & Brooks/Gladwyn, Inc.*, 529 F.3d 1364, 1371 (Fed. Cir. 2008)).

Further, claim terms as issued must find their support in the originally filed specification.  *See* 35 U.S.C. § 132 ("No amendment shall introduce new matter into the disclosure of the invention."); *see also In re Lew*, 257 Fed. Appx. 281, 284 (Fed. Cir. 2007) ("It is well established that '[w]hen the applicant adds a claim or otherwise amends his specification after the original filing date . . . the new claims or other added material must find support in the original specification.'") (quoting *TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001)).  This rule applies in reexamination proceedings.  *See* 35 U.S.C. § 305 ("[*ex*

*parte*] reexamination will be conducted according to the procedures established for initial examination under the provisions of sections 132 and 133 of this title.").

As such, the Reexamination claims were required to have support in the originally-filed specification.  35 U.S.C. §§ 132, 305; *see also* M.P.E.P. § 2250(I)(B) ([Manner of Making Amendments In Reexamination Proceedings:] "in accordance with 37 CFR 1.530(e), each claim amendment must be accompanied by an explanation of the support in the disclosure of the patent for the amendment").  New claims 85-86 (which became issued claims 41-42) and new claims 136-137 (which became issued claims 48-49), each requires a "user interface" that provides a listing of the "total number of messages," "total number of new messages," or "total number of saved messages" "stored in the user-specific message storage area."  Ex. A; *see also* Ex. I.  Yet the only support from the original specification cited in Reexamination for these new claims was the following:

> Prior to gaining access to the mailbox at step 72, the user is preferably sent a greeting page or other such type of information which permits the user to learn about the services provided by the MSDS 10, open an account with the MSDS 10, or gain access to an account. Once access is provided at step 72, the user is provided with information indicating ***the total number of messages stored in his or her mailbox within the MSDS 10***. Preferably, the information sent by the MSDS 10 indicates the total number of messages for each type of message and also the total number of saved messages versus the total number of new messages.

Ex. A at 8:55-65 (emphasis added); *see also* Exhibit N at 58-60 (citing Col. 8:55-65).  Because the <u>only</u> support cited by the patentee in the specification for claims requiring an indication of the "total number of messages stored in the user-specific message storage area" was "indicating the total number of messages stored *in his or her mailbox within the MSDS*," the "user-specific message storage area" is "the user's mailbox."  As noted above, each individual user's mailbox cannot contain every single message stored in the MSDS.  This conclusion is reinforced by a key piece of extrinsic evidence.  Newton's Telecom Dictionary, a technical dictionary "covering telecommunications, networking, information technology, computing and the Internet" defines "mailbox" as:

DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

"A directory or file on a computer somewhere *that stores messages for a single user*."
Exhibit O at EL 013045.

CONCLUSION

For the foregoing reasons, EasyLink respectfully requests that the Court clarify
or modify its previous constructions and adopt the constructions proposed by EasyLink.

Dated: August 15, 2012

/s/Thomas C. Lundin Jr.
Holmes J. Hawkins III (Ga. Bar No. 338681)
(Pro Hac Vice) hhawkins@kslaw.com
Thomas C. Lundin Jr. (Ga. Bar No. 461141)
(Pro Hac Vice) tlundin@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5134

Adrian M. Pruetz (Bar No. 118215)
apruetz@glaserweil.com
Erica Van Loon (Bar No. 227712)
evanloon@glaserweil.com
Glaser Weil Fink Jacobs Howard Avchen
& Shapiro LLP
10250 Constellation Blvd. 19th Floor
Los Angeles, CA 90067
Telephone: (310) 282-6250
Facsimile: (310) 785-3550

Attorneys for Defendant
EASYLINK SERVICES INTERNATIONAL
CORPORATION

DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF

## APPENDIX

36. A system for receiving and storing a message signal directed to an intended recipient and for relaying the message signal to a computer, comprising:

    [a] a telephone interface for receiving an incoming call from a public switched telephone network, the incoming call including the message signal;

    [b] a central processor for receiving the message signal from the telephone interface and for storing the message signal in a storage medium;

    [c] a hyper-text transfer protocol deamon for receiving a request for the message signal from the computer and for forwarding the request to a network server, the request from the computer being formatted in a hypertext transfer protocol; and

    [d] the network server, in response to receiving the request from the hyper-text transfer protocol deamon, forwarding at least a part of the message signal to the hypertext transfer protocol deamon;

    [e] wherein the hyper-text transfer protocol deamon transmit at least part of the message signal to the computer;

    [f] wherein the message signal is addressed to the intended recipient and the computer is associated with the intended recipient;

    [g] wherein the hyper-text transfer protocol deamon further receives an access request from a hyper-text browser executing on the computer, via a packet switched data network, in accordance with the hyper-text transfer protocol;

    [h] wherein the access request contains an application layer address associated with the network server;

    [i] wherein the access request is <u>indicative of a request by the intended recipient to gain access to</u> **<u>a user-specific message storage area of the storage medium associated with the intended recipient</u>**;

    [j] wherein <u>the message signal is stored in the user-specific message storage area</u>;

    [k] wherein the computer is an end-user client computer;

    [l] wherein, in response to the access request, the network server transmits to the computer, via the hyper-text transfer protocol deamon and the packet switched data network, a user interface expressed as a sequence of markup language instructions; and

    [m] wherein the user interface provides one or more <u>links to respective messages stored in the user-specific message storage area</u>.

See Exhibit A to Lundin Decl., claim 36 (emphasis added).