Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Brian R. England (SBN 211335)
englandb@sullcrom.com
Edward E. Johnson (SBN 241065)
johnsonee@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Tel.:  (310) 712-6600
Fax:  (310) 712-8800

Frank L. Bernstein (SBN 189504)
fbernstein@kenyon.com
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
Tel.:  (650) 384-4700
Fax:  (650) 384-4701

*Attorneys for Plaintiffs j2 Global, Inc. and Advanced Messaging Technologies, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED MESSAGING TECHNOLOGIES, INC. and j2 GLOBAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EASYLINK SERVICES INTERNATIONAL CORPORATION, <br><br> Defendant. | Case No. CV 11-4239 DDP (AJWx) <br><br> **PLAINTIFFS j2 GLOBAL, INC. AND ADVANCED MESSAGING TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY PERKINS COIE LLP AND TO COMPEL DISCOVERY** <br><br> Judge: Hon. Dean D. Pregerson <br> Courtroom: 3 <br> Date: November 19, 2012 <br> Time: 10:00 a.m. <br><br> Fact Discovery Cutoff: Dec. 21, 2012 <br> Pretrial Conference: Aug. 26, 2013 <br> Trial Date: Sept. 17, 2013 |

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 3

    I. Mr. Findley's Representation of j2. ............................................................ 3

    II. Mr. Findley's Representation of Open Text Against j2. .............................. 5

ARGUMENT ............................................................................................................. 8

    I. Disqualification Is Governed by California Law. ........................................ 8

    II. Perkins Coie Must Be Disqualified. ............................................................. 8

        A. Open Text's Retention of Mr. Findley in Connection with this Litigation Violated the California Rules of Professional Conduct. ............................................................................................... 9

        B. Mr. Findley's Conflict Is Imputed to Crowell and Perkins Coie as a Matter of Law. ................................................................................. 12

    III. j2 Should Be Granted Leave To Take Discovery into Mr. Findley's Contacts with Open Text to Determine what Further Relief is Necessary ..................................................................................................... 15

CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*In re County of Los Angeles*
  223 F.3d 990 (9th Cir. 2000) ............................................................................. 8

*Hitachi, Ltd.* v. *Tatung Co.*
  419 F. Supp. 2d 1158 (N.D. Cal. 2006) ............................................................ 8

**CALIFORNIA CASES**

*Flatt* v. *Super. Ct.*
  9 Cal. 4th 275 (1994) .......................................................................... 2, 10, 12

*H.F. Ahmanson & Co.* v. *Salomon Bros., Inc.*
  229 Cal. App. 3d 1445 (1999) ........................................................................... 9

*Henriksen* v. *Great Am. Sav. & Loan*
  11 Cal. App. 4th 109 (1992) ......................................................................... 9, 12

*Jessen* v. *Hartford Casualty Ins. Co.*
  111 Cal. App. 4th 698 (1999) ......................................................................... 10

*Kirk* v. *First Am. Title Ins. Co.*
  183 Cal. App. 4th 776 (2010) ......................................................................... 12

*Pound* v. *DeMera DeMera Cameron*
  135 Cal. App. 4th 70 (2005) ........................................................... 2, 12, 13, 14

**STATUTES AND RULES**

California Rule of Professional Conduct 3-310(E) ............................................. 9

Cent. Dist. L.R. 83-3.1.2 ......................................................................................... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs j2 Global, Inc. and Advanced Messaging Technologies, Inc. (collectively, "j2") respectfully submit this Memorandum in support of their motions to disqualify Perkins Coie LLP as counsel to Open Text Corp. ("Open Text") and EasyLink International Services Corp. ("EasyLink") in three cases pending before this Court, and to compel discovery.[1]

# INTRODUCTION

In 2004 and 2005, Clyde Findley was a lawyer at Kenyon & Kenyon LLP ("Kenyon"). Then, as now, Kenyon represented j2 in patent litigation before this Court involving the same patents that are at issue in these cases. Mr. Findley was assigned to work on j2's litigation. He billed 234.7 hours to j2 matters. He was involved in a wide range of issues, including claim charts, complaints, dispositive motions, prior art analysis, and discovery strategy.

Mr. Findley later went to work for Crowell & Moring LLP ("Crowell"). In 2011, Open Text asked Crowell to assign a lawyer to assist it in IP matters, including in overseeing its litigation against j2. Crowell ran a conflicts check and saw that, while at Kenyon, Mr. Findley had represented j2 in cases involving the same patents at issue here. Inexplicably, Crowell and Open Text decided to disregard the obvious conflict. Mr. Findley was assigned to advise Open Text in its litigation against j2. Neither Crowell nor Open Text notified j2 that Open Text was going to be advised by one of j2's former lawyers or sought a conflict waiver from j2.

---

[1] j2 is filing this Memorandum concurrently in three cases: *j2 Global Communications, Inc., et al.* v. *Captaris, Inc., et al.*, No. 09-4150 DDP; *j2 Global Communications, Inc.* v. *EasyLink Services Int'l Corp.*, No. 09-4189 DDP; and *Advanced Messaging Technologies, Inc., et al.* v. *EasyLink Services Int'l Corp.*, No. 11-4239 DDP. Perkins Coie represents the Defendants in each of the three cases, having substituted in for King & Spalding in the two EasyLink cases just last week.

-1-

j2 did not learn that its former lawyer was advising Open Text until July 2012, at least seven months later, when Mr. Findley appeared at a deposition in these three cases on behalf of Open Text along with its counsel of record, Perkins Coie LLP ("Perkins Coie"). j2 immediately confronted Open Text and Crowell about Mr. Findley's egregious conflict, and Crowell and Mr. Findley supposedly withdrew from their representation of Open Text in this matter. But further remedial measures are necessary to protect j2 and are required as a matter of applicable California law. Although Open Text has refused to reveal the scope of Mr. Findley's activities and the full extents of his contacts with its other lawyers, it has admitted that Mr. Findley interacted extensively with its litigation counsel of record, Perkins Coie, including participating in meetings and conference calls regarding litigation strategy. Open Text even had Mr. Findley meet with King & Spalding, its then-counsel in the *EasyLink* matters, *after* being notified of the conflict, to discuss j2's litigation against EasyLink, which Open Text had just recently acquired. Indeed, Open Text filed a motion last week seeking to add allegations to its counterclaims relating to invalidity contentions that Mr. Findley addressed when he was j2's lawyer, and a motion seeking sanctions based on events that Open Text claims (incorrectly and without any substantiating evidence) occurred when Mr. Findley was representing j2.

Under California's bright-line rule, which is applicable in this Court, Perkins Coie's association with Mr. Findley has irreparably tainted Perkins Coie, and requires Perkins Coie's disqualification. *See Flatt* v. *Super. Ct.*, 9 Cal. 4th 275, 283 (1994); *Pound* v. *DeMera DeMera Cameron*, 135 Cal. App. 4th 70, 73 (2005). In addition, Mr. Findley's consultations with Open Text's internal lawyers may have irreparably tainted them as well. Therefore the Court should order limited discovery of Open Text so that it can be determined whether (i) any of Open Text's internal lawyers need to be walled off from Open Text's defense of this case, and (ii) any other remedial measures, including issue or claim

determinations, are warranted to protect j2 from prejudice due to Open Text's improper conduct.

## BACKGROUND

### I. Mr. Findley's Representation of j2.

Mr. Findley was a lawyer at Kenyon & Kenyon LLP ("Kenyon") from 2002 through 2005. (Declaration of Frank L. Bernstein ("Bernstein Decl.") ¶ 4.) During that time, j2 was the plaintiff in two cases pending before this Court: *j2 Global Communications, Inc.* v. *Venali, Inc.*, No. 04-1172 DDP (C.D. Cal.) (the "*Venali* Action") and *j2 Global Communications, Inc.* v. *Callwave, Inc.*, No. 04-7068 DDP (C.D. Cal.) (the "*CallWave* Action"). (*Id.* ¶ 2.) In the *Venali* Action, j2 alleged infringement of U.S. Patent Nos. 6,208,638 ("'638 Patent"), 6,350,066 ("'066 Patent") and 6,597,688 ("'688 Patent") by Venali's Internet fax service. The '638, '688 and '066 Patents comprise three of the four patents at issue in these actions against Open Text and its subsidiary EasyLink.[2] In the *CallWave* Action, j2 alleged infringement by Callwave of two of the same patents that are now at issue in these actions against Open Text and EasyLink, the '638 and '688 Patents.

j2 was represented in the *Venali* and *CallWave* actions by the same counsel representing it in patent litigation now, Kenyon and Sullivan & Cromwell LLP ("Sullivan & Cromwell"). (*Id.* ¶ 2.) In 2004 and 2005, Clyde Findley was part of the team of lawyers at Kenyon representing j2. (*Id.* ¶ 5.) His involvement in the cases was substantial, in terms of the time he spent, the breadth of issues he worked on, and his exposure to j2's confidential information, including its litigation strategy. Mr. Findley billed a total of 234.7 hours to j2 matters. (*Id.* ¶ 6.) Of that time, he billed 69.8 hours to the *Venali* Action and 84.6 hours to the

---

[2] The fourth patent at issue, U.S. Patent No. 7,020,132 (the "'132 Patent"), is a continuation of the '688 Patent, with which it shares a common specification. The '638, '688, '066 and '132 Patents are referred to herein as the "Patents-in-Suit." All four Patents-in-Suit are asserted in Case Nos. 09-4150 and 11-4239; all except the '066 Patent are asserted in Case No. 09-4189.

*Callwave* Action. (*Id.* ¶ 7.) Mr. Findley also billed 56 hours to j2's analysis of a portfolio of patents invented by Charles Bobo prior to j2's purchase of those patents. (*Id.*) One of the Bobo Patents, the '066 patent, is now being asserted against Open Text in these cases.

According to Mr. Findley's time records maintained by Kenyon, Mr. Findley was involved in, among other activities:[3]

- reviewing claim charts;
- performing infringement analyses;
- searching for and analyzing prior art;
- drafting a validity opinion;
- analyzing documents for a settlement conference;
- reviewing and commenting on draft pleadings;
- discussing discovery strategies;
- drafting discovery requests and responses; and
- drafting j2's opposition to a summary judgment motion in the *Venali* Action that raised one of the principal claim construction arguments that Open Text raised in this case. (*See* Dkt. No. 64 in the *Venali* Action.)

(*Id.* ¶ 8.)

As part of the j2 litigation team, Mr. Findley communicated regularly with j2's inside counsel and the other Kenyon and Sullivan & Cromwell attorneys advising j2. (*Id.* ¶ 9.) He sent, received or was copied on over 120 emails to or from j2's General Counsel and over 300 emails to or from Sullivan & Cromwell attorneys. (*Id.*; Declaration of Robert A. Sacks ("Sacks Decl.") ¶ 15.) These communications covered a broad spectrum of subject areas, including claim

---

[3] The relief that j2 seeks is mandatory regardless of the precise nature and extent of Mr. Findley's representation of j2, as explains below. Nevertheless, j2 is willing to provide Mr. Findley's billing records for the Court to review *in camera* if the Court determines that the records would assist it in deciding this Motion.

-4-

construction issues, infringement issues, prior art, and analyses of various legal questions. (Bernstein Decl. ¶ 10.) Most troubling, Mr. Findley was privy to j2's analysis of, and strategy with respect to, the very same invalidity arguments that Open Text and EasyLink are asserting now.

For example, Mr. Findley was among the recipients of a July 1, 2005 email that attached a detailed, three-page memorandum analyzing possible defenses that infringement targets like Open Text, Venali and CallWave might assert. (*Id.* ¶ 12.) One of those defenses is the on-sale bar defense, which invalidates a patent if the patentee sold the invention commercially more than a year before applying for the patent. Open Text and EasyLink currently are asserting the on-sale bar defense, relying in part on an early user of j2's service, David Farber. The July 1, 2005 email that Mr. Findley received as j2's lawyer specifically discussed Mr. Farber. Incredibly, seven years later, Mr. Findley appeared on behalf of Open Text against j2 at Mr. Farber's deposition in these cases. (*Id.* ¶ 13.)

**II.   Mr. Findley's Representation of Open Text Against j2.**

Mr. Findley left Kenyon in 2005. He is now Counsel at Crowell. He appeared at Mr. Farber's deposition on July 27, 2012, along with an attorney from Perkins Coie, Open Text's counsel of record in the *j2* v. *Open Text* action, and, as of last week, in both *j2* v. *EasyLink* actions as well, and an attorney from King & Spalding, who was EasyLink's counsel until being replaced by Perkins Coie following Open Text's acquisition of EasyLink. (*Id.* ¶ 13.) Until he appeared at Mr. Farber's deposition, j2 was unaware that Mr. Findley or Crowell was representing Open Text—at no time did Open Text notify j2 that it was employing j2's former lawyer or ask for a conflict waiver. (*Id.*)

j2 immediately raised Mr. Findley's conflict with Open Text and EasyLink, including at the deposition of Mr. Farber, making clear that Mr. Findley had previously worked at Kenyon and while there had worked for j2. (*Id.*) Yet,

even after j2's counsel raised this glaring conflict, Open Text continued to consult with Mr. Findley, even going so far as to have him meet with King & Spalding *following* the deposition to further discuss j2's litigation against EasyLink, which Open Text had just recently acquired. (Sacks Decl. Exs. J, L.)

Promptly upon learning that Mr. Findley was working for Open Text in connection with these cases, j2 began trying to ascertain the scope of Mr. Findley's work and whether his conflicted representation of Open Text had tainted others beyond Crowell. j2 wrote letters to Crowell on August 7, 10, and 22, and to Perkins Coie on August 10, requesting basic information about the nature and scope of Mr. Findley's work on behalf of Open Text and his contacts with Perkins Coie and Open Text's in-house attorneys.[4] (Sacks Decl. Exs. A, D-E, H.)

Crowell and Perkins Coie refused to provide much of the information that j2 requested, but their responses confirmed that Mr. Findley has had substantial involvement in this litigation on behalf of Open Text and extensive contacts with Perkins Coie. According to Crowell, Mr. Findley began advising Open Text on IP matters, including the j2 litigation, during the fourth quarter of 2011. (*Id.* Ex. F at 2.) In the following eight-plus months, Mr. Findley's role with respect to these litigations included:

- Participating in meetings and conference calls with the Perkins Coie litigation team regarding litigation strategy (*id.*);
- Monitoring the litigation and providing progress reports to Open Text's internal lawyers (*id.*);
- Providing Open Text's internal lawyers with his views and comments on Perkins Coie's litigation work (*id.*);

---

[4] Although EasyLink had, by that time, been acquired by Open Text, j2 also wrote to King & Spalding, which was still counsel of record for EasyLink, asking for similar information. Although King & Spalding refused to provide much of the requested information, j2 learned in response of the meeting between Mr. Findley and EasyLink's counsel even after Open Text and EasyLink were warned about the conflict by j2 on the record at the Farber deposition. (Sacks Decl. Exs. J, L.)

- Assisting in preparation for a mediation with j2 (*id.*);
- Serving as the interface between Open Text and Perkins Coie in areas such as document collection and deposition scheduling (*id.*); and
- Providing advice with respect to EasyLink's litigation strategy following Open Text's acquisition of EasyLink.  (*Id.* Ex. J.)

Moreover, Crowell admitted that it knew about Mr. Findley's prior representation of j2 on related matters before Mr. Findley began advising Open Text, but chose to assign him to the matter anyway. (*Id.* Ex. B.)  Crowell refused to answer j2's repeated inquiries into when Open Text learned of Mr. Findley's prior representation of j2, suggesting that Open Text also knew about the conflict when it chose to retain Mr. Findley.  In an effort to avoid disqualification, Perkins Coie denies having any knowledge of Mr. Findley's prior representation of j2, but it was certainly on notice—j2 served a privilege log on August 10, 2011 (shortly before Mr. Findley apparently was retained by Open Text) with at least twenty-five entries identifying Mr. Findley as a sender or recipient of privileged communications. (Bernstein Decl. ¶ 14.)  In any event, as explained below, Perkins Coie's subjective knowledge or bad behavior is not material to its mandatory disqualification under California's bright-line test applicable in this Court.

On August 9, 2012, implicitly (and belatedly) recognizing Mr. Findley's conflict, Crowell confirmed that Mr. Findley would immediately cease representing Open Text and that Crowell would cease representing Open Text in any matter adverse to j2. (Sacks. Decl. Ex. B.)  Perkins Coie refused to withdraw; on the contrary, it recently substituted in as counsel to EasyLink—which Open Text recently acquired—in the two related cases against EasyLink which Perkins Coie and King & Spalding have been defending under a joint defense arrangement. (*See* Dkt. Nos. 210-214, 221 for Case No. 09-4189; Dkt. Nos. 65-69, 76 for Case

-7-

No. 11-4239.) Both Perkins Coie and Crowell have indicated they will not voluntarily provide j2 with any further information about the extent of Mr. Findley's interactions with Perkins Coie or Open Text's internal counsel. (*Id*. Exs. C-D, F-G.)[5] Their self-serving assertions that Mr. Findley did not have access to j2's confidential information are contradicted by Mr. Findley's billing records and the emails (which j2 will make available for *in camera* review upon request) he sent and received when he represented j2. And their self-serving assertions that he did not consciously or unconsciously communicate j2's information to Open Text's other lawyers is implausible and in any case cannot be credited as a matter of law.

## ARGUMENT

### I. Disqualification Is Governed by California Law.

Attorneys appearing before this Court must submit to California law governing professional conduct. *See* Cent. Dist. L.R. 83-3.1.2 (all attorneys must "comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto"). Therefore motions to disqualify are governed by California law. *See, e.g., In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) ("[W]e apply state law in determining matters of disqualification."); *Hitachi, Ltd.* v. *Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) (same).

### II. Perkins Coie Must Be Disqualified.

Disqualification of Perkins Coie is mandatory under California law. Open Text's retention of Mr. Findley violated the California Rules of Professional Conduct, requiring the disqualification of Mr. Findley. And, because California

---

[5] j2 deferred bringing this motion for roughly six weeks at Open Text's request, to permit the parties to attend a mediation first. Open Text and EasyLink agreed that they would not refer to this delay in order to permit the mediation to occur, and would not argue that it constitutes a waiver of any kind.

law imputes Mr. Findley's conflict to his firm and co-counsel, without further subjective inquiry, Perkins Coie must be disqualified as well.

### A. Open Text's Retention of Mr. Findley in Connection with this Litigation Violated the California Rules of Professional Conduct.

California Rule of Professional Conduct 3-310(E) provides that, absent a waiver, an attorney may not "accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." The purpose of this rule is "to protect the confidential relationship which exists between attorney and client, a relationship which continues after the formal relationship ends." *Henriksen* v. *Great Am. Sav. & Loan*, 11 Cal. App. 4th 109, 113 (1992). The "fiduciary nature of that relationship requires the application of strict standards," and therefore a former client may seek to disqualify a former attorney with its confidential information from representing an adverse party. *Id.*

Neither Open Text nor Crowell notified j2 of Mr. Findley's retention or sought a conflict waiver. Therefore, the only question is whether Mr. Findley obtained confidential information from j2 material to his employment by Open Text. To avoid subjective inquiries into privileged matters in order to determine precisely what information was conveyed in cases like this, California has adopted a bright-line rule that conclusively presumes an attorney received confidential information where the present and former representations have a "substantial relationship." Under California law, it is well-established that a former client need not show that the attorney actually possesses any material confidential information; rather, mandatory disqualification depends on whether the former representation and the new representation are "substantially related." *Henriksen* v. *Great Am. Sav. & Loan*, 11 Cal. App. 4th 109, 114 (1992); *H.F. Ahmanson & Co.* v. *Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1452 (1999). Lawyers cannot avoid disqualification by asserting that they received no confidential information where

-9-

the conflicting engagements bear the necessary relationship; indeed, California's rule is designed specifically to avoid a troubling inquiry into and a dispute about the substance of communications or misuse of information in favor of an objective test that says if the matters are substantially related, the conflicted lawyer and those working with him are disqualified, period. As the California Supreme Court has made clear, "[w]here the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory . . . ." *Flatt* v. *Super. Ct.*, 9 Cal. 4th 275, 283 (1994) (emphasis added).

There is no doubt that Mr. Findley's former representation of j2 is substantially related to these three cases. Cases are substantially related if their subjects can be linked in a rational manner. *See Jessen* v. *Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 711 (1999). The subject of each representation is broader than the exact facts and claims at issue; it covers "information material to the evaluation, prosecution, settlement or accomplishment of" each representation. *Id.* at 712-13. Under this broad principle, which is designed to be prophylactic and protect the former client, courts have disqualified former attorneys even where the former attorney had not obtained information concerning the specific matters at issue in the successive representation, but had knowledge of, for example, the former client's litigation philosophy and business practices. *See id.* (collecting cases).

Here, there is no need for any such broad application of the substantial relationship standard. There can be no doubt that the patent infringement actions against Open Text and EasyLink are substantially related to Mr. Findley's prior representation of j2 in connection with two earlier litigations and the related evaluation of issues involving the very same patents. Mr. Findley represented j2 in

the *Venali* Action, which involved the '638, '688 and '066 Patents, and the *CallWave* Action, which involved the '638 and '688 Patents. Those same patents are asserted against Open Text and EasyLink now. He was also involved in an analysis on behalf of j2 of the Bobo patents, one of which is being asserted in these cases. Thus, the factual and legal issues in these cases are overlapping, and in many cases, identical to the factual and legal issues in the *Venali* and *CallWave* actions. The overlapping or identical issues include, among others:

- Whether the '638, '688 and '066 Patents are anticipated by prior art, including the prior art that Mr. Findley researched on behalf of j2;

- Whether the '638 and '688 Patents are invalid as a result of the on-sale bar, and in particular whether David Farber's testimony is evidence that j2 offered the invention for sale more than a year before applying for the patent, as Open Text and EasyLink contend and as discussed in an internal, privileged email that Mr. Findley received as j2's lawyer; and

- The proper scope of the claims of the '638, '688 and '066 Patents, including claim construction issues that were the subject of a brief that Mr. Findley helped write when he was j2's lawyer.

Indeed, although j2 need not prove that Mr. Findley actually had access to material confidential information to establish that disqualification is warranted, because California law conclusively presumes such access, here there is proof that Mr. Findley actually obtained confidential information relevant to his representation of Open Text. Mr. Findley was a party to hundreds of emails with j2's General Counsel and other outside counsel. j2 has many privileged emails that were sent or received by Mr. Findley related to j2's patent litigation, including emails discussing prior art to the Patents-in-Suit, invalidity defenses, and

infringement analyses, and including emails that are on j2's privilege log in this very action. This is not a close case, and it is inexplicable that Open Text retained Mr. Findley in the first place unless its purpose was to breach j2's privilege and obtain access to its confidential information.

### B. Mr. Findley's Conflict Is Imputed to Crowell and Perkins Coie as a Matter of Law.

The California Supreme Court has also made clear that where an attorney is disqualified because he or she formerly represented an adverse party, "the disqualification extends vicariously to the entire firm." *Flatt* v. *Superior Court*, 9 Cal. 4th 275, 283 (1994); *see also Henriksen*, 11 Cal. App. 4th at 117 ("[W]here an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law.").[6]

The vicarious disqualification rule extends to co-counsel in other firms that have interacted with respect to the matter, because "there is no logical or substantive manner to distinguish" between attorneys who work together in a firm and independent attorneys who associate together to jointly represent the same client in a single matter. *Pound* v. *DeMera DeMera Cameron*, 135 Cal. App. 4th 70, 73 (2005). "The distinction between hiring [your adversary's former lawyer] as an associate or partner, on the one hand, and associating him as counsel, on the other hand, does not change the need to protect [your adversary's] confidences." Indeed, "[i]f disqualification of the firm is required, even if the firm erects an

---

[6] There is conflicting California authority regarding whether it is possible to avoid disqualification of the entire firm by employing an ethical screen. *See, e.g., Kirk* v. *First Am. Title Ins. Co.*, 183 Cal. App. 4th 776 (2010). There is no need to address that question here. Not only was Mr. Findley not screened from the lawyers handling the litigation, he was assigned to actively assist with and coordinate the litigation efforts against his former client even though Crowell knew of the conflict.

ethical wall around the attorney who possesses the opponent's confidences, it is impossible to conceive a justification for not disqualifying" an attorney at a different firm who actually consults with the conflicted attorney about the litigation. *Id*. at 78-79.

This case presents a far more compelling case for disqualification than even *Pound* did. There, defendants sought to disqualify two attorneys representing plaintiffs, the "Co-Counsel Attorney" and "Conflicted Attorney." *Id.* at 74. The Conflicted Attorney had met with defense counsel "for approximately one hour" three years earlier to discuss serving as co-counsel to the defendant. *Id.* The Conflicted Attorney then met with the Co-Counsel Attorney "a few times" about the litigation. *Id*. The Conflicted Attorney claimed that he could not recall any specific information about the case from the one-hour meeting and denied passing any confidential information obtained in the meeting to the Co-Counsel Attorney. *Id.* at 74-75. Nevertheless, the *Pound* Court held that "even in the absence of any evidence that confidential information was shared between the firm and the associated counsel," the Co-Counsel Attorney must be disqualified along with the Conflicted Attorney. *Id.* at 73, 78-79. This absolute rule is a sensible one that protects the party that has been victimized by the conflict of its former attorney and recognizes that inquiring into the actual substantive communications between lawyers for an adversary in an active litigation, which would be necessary if the rule were otherwise, is an impractical and troubling exercise.

Here, Mr. Findley did not participate in a one-hour meeting to discuss his possible retention by j2—he spent <u>234.7</u> hours on related matters, with much of that time being spent on issues that are directly relevant to this action. (Bernstein Decl. ¶¶ 6-12.) He did not meet with Perkins Coie "a few times"—he coordinated Open Text's litigation for at least eight months, during which time, by Crowell's own admission, he participated in many meetings and conference calls with the Perkins Coie litigation team to discuss litigation strategy. (Sacks. Decl. Ex. F at 2.)

And he appeared on behalf of Open Text at the deposition of a third party witness who was expressly discussed in correspondence that he received while he was j2's lawyer. (Bernstein Decl. ¶ 12.) Given the extent of Mr. Findley's contact with Perkins Coie over many months and the breadth of his prior work for j2, "[t]he only effective method to protect [j2's] confidences from the possibility of inadvertent disclosure is" to disqualify Perkins Coie. *Pound*, 135 Cal. App. 4th at 78.

While Perkins Coie will claim that it did not learn anything of substance from Mr. Findley and that he did not breach any j2 confidences, self-interested assertions of that sort could not be tested without inquiry into the substance of the communications between Mr. Findley, Perkins Coie and Open Text itself. It is precisely to avoid inquiries of that sort, which would require examination of otherwise privileged matters, that California applies the conclusive presumption embodied in the substantial relationship test. Moreover, objectively, there was extensive contact over many months between Mr. Findley and Perkins Coie, making any further inquiry unnecessary if the rule against conflicts is to have any teeth and j2's interests are to be given paramount protection as they should. Thus, while Perkins Coie's disqualification is compelled as a matter of law regardless of the precise content of its contacts with Mr. Findley, if the Court is going to consider Open Text's assertion that—notwithstanding Mr. Findley's extensive communications with Perkins Coie and his extensive work on behalf of j2 regarding the Patents-in-Suit—no confidential j2 information was ever transmitted to Perkins Coie, then j2 should be permitted discovery into the substantive communications between Perkins Coie, Mr. Findley and internal personnel at Open Text and EasyLink that would allow it to test and rebut that assertion. And the Court should then conduct an evidentiary hearing on the issue.

**III.   j2 Should Be Granted Leave To Take Discovery into Mr. Findley's Contacts with Open Text to Determine what Further Relief is Necessary.**

Open Text retained Mr. Findley—potentially with knowledge of his prior representation of j2—to oversee its litigation against j2 as "outside in-house counsel." (Bernstein Decl. ¶ 13.) Among his other duties, Mr. Findley "followed Perkins Coie's litigation work and provided his views and comments thereon to Open Text in-house counsel, together with reports on the progress of the mediation." (Sacks. Decl. Ex. F at 2.) These communications with Open Text's internal lawyers raise serious concerns that Mr. Findley may have provided, consciously or unconsciously, j2's confidential information to those lawyers, or advice informed by j2's confidential information. At this point, however, Open Text has refused to provide j2 with any information about the contacts between Mr. Findley and its internal lawyers, such as which internal lawyers consulted with Mr. Findley, the extent of such communications, and the extent of communications between those persons and Perkins Coie.

In order to assess whether any of Open Text's internal lawyers have been tainted by their association with Mr. Findley, j2 requests that the Court order Open Text to provide the following:

- A log of communications involving Mr. Findley and any of Open Text's internal lawyers, showing the type of communication (i.e., in-person, email, telephone, etc.), the persons involved in the communication, the date, and the subject matter, with the specificity that would be required on an ordinary privilege log.

- A limited Rule 30(b)(6) deposition of Open Text, to inquire into (i) the scope of Mr. Findley's engagement and the nature of the work he performed; (ii) Open Text's knowledge of Mr. Findley's prior representation of j2; (iii) the frequency and

-15-

subject matter of Mr. Findley's communications with Open Text employees, and the identities of those employees.

To be clear, presuming the Court will apply the objective "substantial relationship" test embodied in California law, which eschews inquiry into substance of otherwise privileged communications in favor of a bright-line disqualification rule, j2 does not seek to discover the substance of Open Text's communications with Mr. Findley.  But information about the frequency and subject matter of Mr. Findley's communications is not privileged and is necessary to determine whether it will be necessary to screen certain Open Text internal lawyers from the litigation, and whether additional remedial measures may be warranted.  For example, Open Text recently moved to add allegations to its counterclaims regarding several issues that Mr. Findley was exposed to or worked on when he was j2's lawyer; Open Text may claim Mr. Findley did not contribute to these allegations, but Open Text did not seek to make the allegations in the three years this litigation was pending before it retained Mr. Findley.  And Open Text filed a spoliation motion in which it claims that j2 destroyed evidence while Mr. Findley was representing j2.  Raising these issues now, after years of litigation, raises questions about whether additional remedial measures, including possibly striking new defenses or positions that Open Text and EasyLink want to try to raise *after* contact with Mr. Findley.

## **CONCLUSION**

For the foregoing reasons, j2 respectfully requests that the Court disqualify Perkins Coie and order discovery as set forth herein.

Dated: October 15, 2012                    Respectfully submitted,

/s/  Robert A. Sacks
Robert A. Sacks (SBN 150146)
Brian R. England (SBN 211335)
Edward E. Johnson (SBN 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
(650) 384-4700
(650) 384-4701 facsimile

*Attorneys for Plaintiffs j2 Global, Inc. and Advanced Messaging Technologies, Inc.*