# Exhibit B

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

1

```
 1              UNITED STATES DISTRICT COURT
 2             CENTRAL DISTRICT OF CALIFORNIA
 3
 4    J2 GLOBAL COMMUNICATIONS, INC.,)
                                     )
 5              Plaintiff,           )  Case No.
                                     )  09-4189 DDP(AJWx)
 6         vs.                       )
                                     )
 7    EASYLINK SERVICES INTERNATIONAL)
      CORPORATION,                   )
 8                                   )
                Defendant.           )
 9    _____)
      J2 GLOBAL COMMUNICATIONS, INC. )
10    and ADVANCED MESSAGING         )  Case No.
      TECHNOLOGIES, INC.,            )  C 09-4150 DDP(AJWx)
11                                   )  RESTRICTED
                Plaintiffs,          )  CONFIDENTIAL
12                                   )
           vs.                       )  Volume I
13                                   )
      CAPTARIS, INC. and OPEN TEXT   )  Pages 1-118
14    CORPORATION,                   )
                                     )
15                Defendants.        )
      _____)
16    AND RELATED CROSS-ACTION.      )
      _____)
17
18     DEPOSITION OF J2 GLOBAL COMMUNICATIONS, INC. RULE
19          30(b)(6) WITNESS VINCENT NIEDZIELSKI
20               WEDNESDAY, JUNE 13, 2012
21                    9:13 A.M.
22
23    REPORTED BY:
24            JARDENE L. PLATT,
25            RPR, CSR No. 3724
```

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

2

```
 1          Deposition of VINCENT NIEDZIELSKI, taken on

 2     behalf of the defendants at 1888 Century Park East,

 3     Los Angeles, California, on WEDNESDAY, JUNE 13, 2012,

 4     at 9:13 a.m., before JARDENE L. PLATT, RPR, CSR No.

 5     3724.

 6

 7     APPEARANCES OF COUNSEL:

 8

 9     FOR THE PLAINTIFFS:

10

11              KENYON & KENYON LLP

12              BY:  FRANK L. BERNSTEIN, ESQ.

13              1801 Page Mill Road

14              Suite 210

15              Palo Alto, California  94304-1216

16              (650) 384-4700

17                   -and-

18              SULLIVAN & CROMWELL LLP

19              BY:  BRIAN R. ENGLAND, ESQ.

20              1888 Century Park East

21              Suite 2100

22              Los Angeles, California  90067-1725

23              (310) 712-6600

24

25
```

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

3

1    APPEARANCES CONTINUED:

2

3    FOR DEFENDANT EASYLINK SERVICES INTERNATIONAL

4    CORPORATION:

5

6            KING & SPALDING LLP

7            BY:   THOMAS C. LUNDIN, JR., ESQ.

8            1180 Peachtree Street, N.E.

9            Atlanta, Georgia  30309-3521

10           (404) 572-2808

11

12   FOR DEFENDANTS CAPTARIS, INC., AND OPEN TEXT

13   CORPORATION:

14

15           PERKINS COIE LLP

16           BY:   MATTHEW F. CARMODY, ESQ.

17           131 South Dearborn Street

18           Suite 1700

19           Chicago, Illinois  60603-5559

20           (312) 324-8447

21

22   ALSO PRESENT:

23

24           JEMAL JUDKINS, VIDEOGRAPHER

25

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI – 6/13/2012

4

1                              I N D E X

2   EXAMINATION                                        PAGE

3   By Mr. Carmody                                        6

4   (Afternoon session)                                  69

5   By Mr. Lundin                                        93

6                          E X H I B I T S

7   NO.                    DESCRIPTION                 PAGE

8   Exhibit 1    Notice of Videotaped Fed.R.Civ.P.       9

9         30(b)(6) Deposition of Plaintiff j2

10        Global Communincations, Inc.

11  Exhibit 2    November 1996 Confidential             60

12        Information Memorandum, JFAX

13        Communications, Inc., J076120 to

14        J076177.

15

16

17

18

19

20

21

22

23

24

25

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

5

|  |  |
|---|---|
|  | 1   LOS ANGELES, CALIFORNIA |
|  | 2   WEDNESDAY, JUNE 13, 2012; 9:13 A.M. |
| 09:11:24 | 3 |
| 09:13:02 | 4   VIDEOGRAPHER:  Here begins Volume No. I, |
| 09:13:11 | 5   Videotape No. 1 in the deposition of j2 30(b)(6) |
| 09:13:17 | 6   Vincent Niedzielski in the matter of j2 Global |
| 09:13:22 | 7   Communications, Incorporated versus EasyLink Services, |
| 09:13:27 | 8   Incorporate -- International.  Case number is |
| 09:13:38 | 9   01-4189-DDP (AJWx), in the United States District |
| 09:13:45 | 10   Court for the Central District of California.  Also, |
| 09:13:49 | 11   j2 Global Communications, Incorporated and Advance |
| 09:13:54 | 12   Messaging Technologies, Incorporated versus Captaris, |
| 09:14:01 | 13   Incorporated and Open Text Corporation.  Case No. |
| 09:14:08 | 14   06-4150 DDP (AJWX).  Also in the United States |
| 09:14:14 | 15   District Court for the Central District of California. |
| 09:14:18 | 16   This video deposition is taking place at |
| 09:14:23 | 17   1888 Century Park East in Los Angeles and was noticed |
| 09:14:29 | 18   by Matthew Carmody of Perkins Coie. |
| 09:14:30 | 19   Counsel, please voice-identify yourselves |
| 09:14:33 | 20   and state whom you represent. |
| 09:14:34 | 21   MR. BERNSTEIN:  Frank Bernstein from |
| 09:14:37 | 22   Kenyon & Kenyon representing j2 Global, Advance |
| 09:14:40 | 23   Messaging Technologies and Mr. Niedzielski.  With me |
| 09:14:43 | 24   is Brian England of Sullivan & Cromwell, also |
|  | 25   representing the same parties and entities. |

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI – 6/13/2012

6

| | | |
|---|---|---|
| 09:14:47 | 1 | MR. CARMODY:  Matt Carmody from Perkins Coie |
| 09:14:51 | 2 | on behalf of the defendants Open Text Corporation and |
| 09:14:55 | 3 | Captaris, Inc., in the 094150 matter. |
| 09:14:57 | 4 | MR. LUNDIN:  Tom Lundin with King & Spalding |
| 09:15:00 | 5 | on behalf of defendant EasyLink Services International |
| 09:15:02 | 6 | Corporation. |
| 09:15:03 | 7 | VIDEOGRAPHER:  The court reporter today is |
| 09:15:06 | 8 | Jardene Platt of Merrill Legal Solutions. |
| 09:15:06 | 9 | Would the reporter please swear in the |
| | 10 | witness. |
| | 11 | |
| | 12 | VINCENT NIEDZIELSKI, |
| | 13 | having been first duly sworn, was |
| | 14 | examined and testified as follows: |
| | 15 | |
| | 16 | VIDEOGRAPHER:  Please begin. |
| | 17 | |
| | 18 | EXAMINATION |
| | 19 | |
| 09:15:18 | 20 | BY MR. CARMODY: |
| 09:15:20 | 21 | Q.  Good morning, Mr. Niedzielski.  My name is |
| 09:15:23 | 22 | Matt Carmody.  As I stated on the record a moment ago, |
| 09:15:26 | 23 | I represent Open Text Corporation and Captaris, Inc. |
| 09:15:29 | 24 | in this litigation. |
| | 25 | Before we get into the actual deposition |

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

83

14:43:25  1   documents were collected from any other individuals or

14:43:29  2   sources in connection with this lawsuit?

14:43:32  3        A.  Just the other two times, the financial and

14:43:33  4   legal time that I also mentioned.

14:43:37  5        Q.  And there's no time subsequent to 2009 that

14:43:43  6   any documents were collected to your knowledge.

14:43:49  7        A.  No.

14:43:54  8        Q.  Do you know what, if anything, happened to

14:43:57  9   the documents --

14:43:58  10           VIDEOGRAPHER:  If you twist the microphone

          11   cord -- yeah.  If you twist -- thank you.

14:44:02  12   BY MR. CARMODY:

14:44:03  13        Q.  Do you know what, if anything, happened to

14:44:09  14   the information once it was collected in each of these

14:44:16  15   various instances?

14:44:23  16        A.  No.

14:44:32  17        Q.  Why don't we turn quickly to the topic of

14:44:39  18   source code.

14:44:41  19           I think earlier you had testified that you

14:44:45  20   spoke with someone named -- his last name was Coe,

14:44:50  21   c-O-E, in connection with source code.  Is that right?

14:44:52  22        A.  Yes.  William Coe.

14:44:58  23        Q.  And -- and what can you tell me about j2's

14:45:05  24   maintenance of its source code?

          25        A.  As I said earlier, for the last six years,

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

84

14:45:15  1   we've kept copies of source code in a product called

14:45:19  2   Subversion and it contains all of the source code

14:45:25  3   related to the fax products for the last six years.

14:45:31  4   Prior to that Mr. Coe discovered we used a different

14:45:36  5   product, a product called CVS, which is another very

14:45:41  6   common commercially available product, and it's my

14:45:46  7   understanding that's the product that was implemented

14:45:51  8   that's referred to years before in Dr. Anand's

14:45:53  9   deposition.

14:45:57  10        Q.  Okay.  That's -- that's helpful that you

14:46:01  11  tied it back to Dr. Narasimhan's deposition, because

14:46:05  12  what I -- what I would like to do, if we can, is sort

14:46:10  13  of go over the timeline beginning -- starting in the

14:46:14  14  present in terms of j2's maintenance of its source

14:46:21  15  code.  So the system that j2 currently uses, I think

14:46:24  16  you said it was in place -- it's been in place for

14:46:26  17  about six years?

14:46:27  18        A.  Yes.

14:46:31  19        Q.  And would that -- does that system preserve

14:46:36  20  and maintain source code that's legacy code prior to

14:46:44  21  the period in which that system was implemented six

14:46:46  22  years ago or does the code that is maintained in that

14:46:51  23  system begin on the date that it was implemented?

14:46:53  24        A.  It begins six years ago on the day it was

          25  implemented.

Merrill Corporation - Atlanta

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

85

| | | |
|---|---|---|
| 14:46:59 | 1 | Q.  So in other words, that -- that source code |
| 14:47:02 | 2 | system is going to be maintaining code from roughly |
| 14:47:10 | 3 | the period of 2008 through the present. |
| 14:47:14 | 4 | A.  2006. |
| 14:47:15 | 5 | Q.  Okay.  So -- |
| 14:47:17 | 6 | A.  Six years. |
| 14:47:22 | 7 | Q.  Or 2006.  I apologize.  That's why I became |
| 14:47:25 | 8 | a lawyer and not a mathematician. |
| 14:47:30 | 9 | So, you know, that -- there's code from 2006 |
| 14:47:35 | 10 | forward and that source control system.  This -- I |
| 14:47:38 | 11 | think you referred to it, a CDS system that was in |
| 14:47:40 | 12 | place prior to 2006? |
| 14:47:42 | 13 | A.  CVS. |
| 14:47:50 | 14 | Q.  CVS.  Okay.  And what, if anything, happened |
| 14:47:54 | 15 | to the code that was being maintained in the CVS |
| 14:47:59 | 16 | system when the system that was implemented in 2006 |
| 14:48:06 | 17 | was put in place? |
| 14:48:09 | 18 | A.  To the best of what Mr. Coe was able to find |
| 14:48:12 | 19 | out for me, it was not carried forward and it was not |
| 14:48:16 | 20 | maintained. |
| 14:48:19 | 21 | Q.  And when you say it was not carried forward, |
| 14:48:22 | 22 | can you be more specific?  Does that mean it was |
| 14:48:26 | 23 | destroyed or does that mean that, you know -- that it |
| 14:48:28 | 24 | wasn't put into the new system?  I don't know what |
| | 25 | that refers to. |

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

86

14:48:34  1       A.  It was not put into the new system.  They

14:48:38  2   began that year with the release of fax that came out

14:48:43  3   in 2006 and made that the initial version loaded into

14:48:49  4   the library and then kept everything from that day

14:48:55  5   until today.  According to what Mr. Coe was able to

14:49:02  6   discover, CVS was -- was uninstalled from the system

14:49:05  7   because we no longer were paying maintenance to it and

14:49:08  8   we had gotten a new product.  We were entitled to use

14:49:16  9   it and that's all he was able to discover.

14:49:23  10      Q.  Okay.  So j2 at that point discontinued

14:49:26  11  use of the CVS system.

14:49:27  12      A.  Yes.

14:49:31  13      Q.  And taking aside that discontinuation of the

14:49:35  14  use of the CVS system, what, if anything, did j2 do

14:49:43  15  to preserve the code that was housed or maintained

14:49:44  16  within that system?

14:49:48  17      A.  I asked Mr. Coe to look into that and he

14:49:52  18  discovered by talking to people in network operations

14:49:57  19  that are here now, because he wasn't able to find

14:50:02  20  anyone that was here at j2 back then, that there had

14:50:12  21  been periodic backups of the CVS system, I believe on

14:50:19  22  to tape, and they were kept in cabinets.

14:50:24  23      He had the operations people look, but they

14:50:30  24  were never able to find any of the CVS backups, and I

          25  actually had him go back and make them look a second

Merrill Corporation - Atlanta

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

87

14:50:40  1  time and be very thorough and still they were not able

14:50:46  2  to locate any of the backup tapes.

14:50:54  3      Q.  I note that you had mentioned that the

14:50:59  4  persons with whom Mr. Coe spoke with did not go back

14:51:03  5  to when this transition occurred in 2006.  Is that

14:51:05  6  right?

14:51:07  7      A.  There were employees that joined j2 much

14:51:08  8  later.

14:51:15  9      Q.  Okay.  Is there anybody that works for j2

14:51:19  10  right now who may have familiarity or knowledge with

14:51:23  11  how j2 maintains its source code that -- that was

14:51:50  12  employed prior to 2006?

14:51:51  13      A.  Not that I talked to.

14:51:58  14      Q.  But there are -- there are people in the

14:52:11  15  company who exist that you didn't speak with?

14:52:14  16      A.  No.  I meant there were engineers who are

14:52:18  17  with the company today who were with the company prior

14:52:27  18  to 2006 who would have made use of the CVS system but

14:52:29  19  we didn't talk to them because they didn't manage,

14:52:33  20  maintain, back up or control it and they no knowledge

14:52:35  21  of how that was done.

14:52:40  22      Q.  Okay.  What about Ms. Fong who you testified

14:52:44  23  about earlier?  I note that you said that she's --

14:52:48  24  began her employment with j2 in 1999.  Would she

25  know anything about source code and how it was

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI – 6/13/2012

88

14:52:59    1    maintained?

14:53:01    2        A.  Not beyond what I have told you because her

14:53:06    3    initial job was working as a QA tester.  She wasn't a

14:53:08    4    developer.

14:53:12    5        Q.  Did you ask her when you spoke with her what

14:53:17    6    knowledge she had, if any, about how j2 kept source

14:53:18    7    code?

14:53:24    8        A.  No.

14:53:35    9        Q.  Do you know how far the source code that was

14:53:46    10   on the CVS system went?

14:53:51    11       A.  From reading Dr. Arnand's [sic] deposition,

14:53:56    12   I believe he stated they started using CVS while he

14:54:03    13   was there and I believe he gave a time frame, but I'm

14:54:06    14   sorry, without the document in front of me I don't

14:54:09    15   remember the exact date.

14:54:15    16       Q.  Okay.  So Mr. Narasimhan -- Dr. Narasimhan

14:54:20    17   testified that that -- I believe he testified that

14:54:24    18   that system was in place prior to his leaving

14:54:27    19   employment with j2 around 2000.

14:54:36    20           Does that match your recollection?

14:54:39    21       A.  I remember him saying it was in place before

14:54:43    22   he left.  Again, I don't remember the exact date that

14:54:45    23   it was put in place.

14:54:49    24       Q.  But it's your understanding that the same

            25   CVS system that was discontinued in 2006 would have

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

89

14:54:57  1   been that source control system that Mr. Narasimhan --
14:55:03  2   Dr. Narasimhan was referring to in his deposition.
14:55:06  3        A.  Yes.  Because a part of Mr. Coe's
14:55:11  4   investigation turned out that those are the two
14:55:13  5   systems, only two products we have ever used.
14:55:15  6        Q.  You basically almost answered my next
14:55:20  7   question which is, there's no other source control
14:55:22  8   system that j2 has used aside from CVS and the one
14:55:25  9   that was implemented in 2006.
14:55:31  10       A.  No.
14:55:37  11       Q.  Were you involved in efforts to identify and
14:55:42  12  collect source code from -- early source code from
14:55:45  13  locations other than the source control system?
14:55:47  14       A.  Yes.
14:55:50  15       Q.  And what was the nature of your involvement
14:55:52  16  in that effort?
14:55:54  17       A.  Our attorneys contacted me.
14:55:57  18       Q.  Before you go any further, don't tell me any
14:55:59  19  advice that your attorneys gave.  You can just tell me
14:56:06  20  what you did.
14:56:08  21          MR. BERNSTEIN:  That was going to be my next
14:56:10  22  statement.  Go ahead.  You can go.
14:56:12  23          THE WITNESS:  I was asked to do a search for
14:56:19  24  early source code.  "Early" being around the time
          25  Dr. Anand was with j2.  That led to a lot of the

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

90

14:56:31  1   investigation I mentioned earlier.  As I tried to
14:56:34  2   track back in time how source code had been
14:56:39  3   controlled, I was not able to find any source code
14:56:49  4   prior to what's contained in Subversion since 2006.
14:56:55  5           We did find some eFax backup tapes.  They
14:57:01  6   were the only things we found.  We don't know whether
14:57:03  7   there's source code on them or not, and to the best of
14:57:10  8   my knowledge, we -- j2 is having outside consultants
          9   try to see if the tapes are readable or usable.
14:57:20  10  BY MR. CARMODY:
14:57:25  11      Q.  Okay.  Where were those eFax backup tapes
14:57:32  12  located?
14:57:36  13      A.  I don't know.
14:57:38  14      Q.  Do you know how it came to be that they were
14:57:42  15  found?
14:57:44  16      A.  What I was told is as part of a search, we
14:57:50  17  looked on premises and offsite at our disaster
14:57:53  18  recovery site, at our disaster recovery vendor where
14:57:59  19  we keep copies of backups.  No one told me which of
14:58:10  20  the two they were found in, but they were found.
14:58:14  21      Q.  Did that search also include a search for
14:58:26  22  j2 backups going back into the same time period?
14:58:29  23      A.  I don't know.
14:58:31  24      Q.  So you don't know whether j -- whether
          25  the -- there might be backup tapes that are -- that

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

91

| | | |
|---|---|---|
| 14:58:45 | 1 | relate to -- that back up j2 systems? |
| 14:58:47 | 2 | A.  I don't know.  I was only looking for source |
| 14:58:49 | 3 | code backup tapes. |
| 14:58:54 | 4 | Q.  I see.  So the -- the backup tapes that you |
| 14:58:56 | 5 | were referring to just a moment ago, those are |
| 14:58:59 | 6 | specifically source code backup tapes? |
| 14:59:02 | 7 | A.  We think they could be.  We are not sure. |
| 14:59:04 | 8 | That's why we want to read them. |
| 14:59:08 | 9 | Q.  Okay.  Do you know why there's a belief that |
| 14:59:15 | 10 | those backup tapes, you know, in particular contains |
| 14:59:20 | 11 | source code? |
| 14:59:22 | 12 | A.  We don't know they contain source code.  We |
| 14:59:27 | 13 | just know they were from the same time period. |
| 14:59:32 | 14 | Q.  Okay.  Are those the only backup tapes that |
| 14:59:35 | 15 | j2 is aware of from that time period that it has in |
| 14:59:39 | 16 | its possession? |
| 14:59:41 | 17 | A.  Yes. |
| 14:59:48 | 18 | Q.  Do you know what happened to the -- the |
| 14:59:50 | 19 | other backup tapes that may have existed from that |
| 14:59:54 | 20 | time period? |
| 15:00:09 | 21 | A.  No. |
| 15:00:11 | 22 | Q.  When you say, "eFax backup tapes," are you |
| 15:00:16 | 23 | referring to a time period when eFax was a company |
| 15:00:20 | 24 | that was separate from j2? |
| | 25 | A.  No. |

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

108

15:35:14    1         A.   Probably the vice president of network

15:35:15    2    operations.

15:35:18    3         Q.   Who is that?

15:35:25    4         A.   Alan Alters.   Last name is A-L-T-E-R-S.

15:35:27    5         Q.   Did you speak with Mr. Alters in preparation

15:35:35    6    for the deposition today?

15:35:40    7         A.   No.

15:35:45    8         Q.   And I did want to ask you about network

15:35:49    9    operations.   I think, correct me if any of this is

15:35:52    10   wrong, but I believe when you were asked a few minutes

15:35:54    11   ago, you mentioned that Mr. -- it's your understanding

15:36:00    12   that Mr. Coe spoke with persons in network operations

15:36:08    13   to -- to inquire about whether the source code in the

15:36:13    14   CVS system was backed up on to tape.   Is that correct?

15:36:16    15        A.   No.   He spoke to people in network

15:36:20    16   operations who work for Mr. Alters to find out what

15:36:26    17   was used before the current Subversion system.   He

15:36:30    18   learned they used CVS and learned, you know, that it

15:36:33    19   had been periodically backed up and that those backups

15:36:40    20   could not be found.   And he also learned, as I stated

15:36:43    21   earlier, that there was no other system ever used

15:36:45    22   other than those two.

15:36:52    23        Q.   Okay.   Did anyone ask -- did you or

15:36:55    24   Mr. Coe -- strike that.

            25             In preparation for your deposition today,

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

109

15:37:05  1    was anyone in network operations consulted about

15:37:09  2    whether the CVS system was backed up on to tape?

15:37:10  3         A.  Yes.

15:37:13  4         Q.  And the answer was that it -- the belief is

15:37:17  5    that it was but no one can locate the tapes.

15:37:20  6         A.  Yes.

15:37:23  7         Q.  The persons that Mr. Coe spoke with in

15:37:36  8    network operations, were they with j2 in 2006?

15:37:37  9         A.  Some were.

15:37:43  10        Q.  Okay.  But you don't know whether Mr. Alters

15:37:46  11   is one of those persons.

15:37:52  12        A.  I believe Mr. Alters joined j2 one year

15:37:55  13   before I did.

15:38:16  14        Q.  So 2007.  And I just want to -- this is a

15:38:19  15   very similar question, but I just -- I want to make

15:38:21  16   sure we are clear on it.

15:38:24  17            You were asked -- I think you were asked

15:38:27  18   earlier whether there was anyone who is familiar with

15:38:33  19   source code maintenance who was employed in 2006 who

15:38:37  20   is still there today and I believe your answer was not

15:38:41  21   that you spoke with.

15:38:42  22        A.  That's correct.

15:38:48  23        Q.  But as I understand it now -- well, scratch.

15:38:49  24   Let me ask this question.

          25            The persons in network operations, would

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

110

15:38:55  1    they be familiar with source code maintenance or

15:39:00  2    simply with the backup of the CVS system on to tape?

15:39:01  3         A.  Just the backup.

15:39:07  4         Q.  Okay.  So -- so now I want to circle back.

15:39:10  5    You are -- your testimony is you didn't speak with

15:39:14  6    anyone who was familiar with source code maintenance

15:39:18  7    in 2006 but the question -- so now the separate

15:39:23  8    question is, is there anyone that you are aware of who

15:39:28  9    is employed at j2 who was employed at j2 in 2006

15:39:35  10   who would be familiar with source code maintenance?

15:39:38  11        A.  Not that we were able to find.

15:39:40  12        Q.  Okay.  And did you make efforts to find

15:39:42  13   someone who fit that category by, for example,

15:39:46  14   speaking with someone in HR?

15:39:57  15        A.  No.

15:40:00  16        Q.  But that's something that you could do.

15:40:02  17   Correct?  Check with HR to see if there's someone that

15:40:06  18   fits that category?

15:40:09  19        A.  Sure.  Mr. Alters could.

15:40:11  20        Q.  Okay.  Someone at j2 could.

15:40:17  21        A.  Yes.

15:40:22  22        Q.  You testified a little bit about the eFax

15:40:25  23   backup tapes.  Correct?

15:40:25  24        A.  Yes.

          25        Q.  Okay.  And I think you testified, again,

Merrill Corporation - Atlanta

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

111

| | | |
|---|---|---|
| 15:40:30 | 1 | correct me if this is wrong, but I think you testified |
| 15:40:33 | 2 | that you are calling them eFax backup tapes because |
| 15:40:36 | 3 | they have a label on them that says eFax backup |
| 15:40:36 | 4 | tapes.  Is that correct? |
| 15:40:37 | 5 | A.  Yes. |
| 15:40:40 | 6 | Q.  Do they -- is there anything on the tapes |
| 15:40:49 | 7 | that indicate the time period that they covered? |
| 15:40:55 | 8 | A.  I believe these tapes are back from the time |
| 15:40:56 | 9 | period in question -- |
| 15:40:58 | 10 | Q.  And that's -- |
| 15:41:00 | 11 | A.  -- the late '90s, but I don't know whether |
| 15:41:02 | 12 | there's anything on tape that says that. |
| 15:41:04 | 13 | Q.  Okay.  Well, that's -- that's -- that's kind |
| 15:41:08 | 14 | of why I'm asking, because the way I understand your |
| 15:41:14 | 15 | testimony, you know that they say eFax backup tapes |
| 15:41:18 | 16 | but I believe you testified you really don't know -- |
| 15:41:22 | 17 | j2 doesn't know what's on them yet.  So my -- what I |
| 15:41:24 | 18 | am trying to find out is, why does j2 believe that |
| 15:41:28 | 19 | these backup tapes are from any specific time period, |
| 15:41:35 | 20 | much less the time period in question, as you put it? |
| 15:41:43 | 21 | A.  I don't know. |
| 15:41:45 | 22 | Q.  So do you know when the eFax backup tapes |
| 15:41:48 | 23 | were found? |
| 15:41:50 | 24 | A.  You mean "when" in the current sense? |
| | 25 | Q.  Yes.  I mean -- when did j2 first become |

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

112

| | | |
|---|---|---|
| 15:41:58 | 1 | aware that these tapes existed? |
| 15:42:04 | 2 | A. About 10 to 12 weeks ago.  Our attorneys had |
| 15:42:07 | 3 | me start looking for source code and I was in the |
| 15:42:12 | 4 | process of doing that, that these tapes were found, so |
| 15:42:15 | 5 | I would say sometime in the last three months. |
| 15:42:15 | 6 | Q. Okay. |
| 15:42:16 | 7 | A. I don't remember the date. |
| 15:42:18 | 8 | Q. And you -- and you weren't -- I believe you |
| 15:42:24 | 9 | said you weren't sure whether they were found at a |
| 15:42:28 | 10 | location that was internal to j2 or at your disaster |
| 15:42:30 | 11 | recovery site. |
| 15:42:34 | 12 | A. That's true. |
| 15:42:35 | 13 | Q. Okay.  So sitting here today, can you tell |
| 15:42:39 | 14 | me why you believe they were from the time period in |
| 15:42:42 | 15 | question, as you put it? |
| 15:42:47 | 16 | A. I was told they might be but I haven't seen |
| 15:42:48 | 17 | the tapes myself. |
| 15:42:53 | 18 | Q. I see.  Okay.  Do you know -- you indicated |
| 15:42:56 | 19 | that they -- the tapes were being reviewed or there |
| 15:42:59 | 20 | was going -- there was an attempt being made to find |
| 15:43:02 | 21 | out what was on the tapes? |
| 15:43:04 | 22 | A. The tapes are very old. |
| 15:43:06 | 23 | Q. Correct.  I mean, I'm sorry.  "Correct."  I |
| 15:43:07 | 24 | assumed that. |
| | 25 | A. We were not able to figure out internally |

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI – 6/13/2012

113

15:43:15  1  how to read what was on them.  I believe the attorneys

15:43:20  2  found an outside consultant with that expertise and

15:43:23  3  that person is endeavoring to find out what's on the

15:43:26  4  tapes.

15:43:27  5      Q.  Currently.

15:43:27  6      A.  Currently.

15:43:44  7      Q.  Okay.  I think you testified earlier that

15:43:49  8  you were -- well, I think you just testified again,

15:43:53  9  the discovery of the eFax backup tapes was in

15:43:59  10  conjunction with you being asked to look for early

15:44:01  11  source code.  Correct?

15:44:03  12      A.  Correct.

15:44:07  13      Q.  Did you look for or did anyone at j2 look

15:44:14  14  for backup tapes from 1996, 1997 time frame outside of

15:44:18  15  the context of looking for source code?

15:44:26  16      A.  I don't know.

15:44:29  17      Q.  Do you know why the decision was made --

15:44:31  18  well, scratch that.

15:44:41  19          Why was only the current code at 2006 loaded

15:44:49  20  on to the Subversion system?

15:44:54  21      A.  When I asked that question, I was told

15:44:58  22  there -- there was not a way to bring it from CVS to

15:45:03  23  Subversion and when they tried, elements were missing

15:45:05  24  and it would not work.

25      Q.  What does that mean, "elements were

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

114

15:45:07    1    missing"?

15:45:09    2         A.  They said that some engineers were not good

15:45:15    3    about always checking things in and -- and if

15:45:18    4    everything doesn't match in the source code system,

15:45:21    5    when you go to compile, everything just breaks and

15:45:25    6    it's useless.  So they said it was better to start

15:45:28    7    fresh by taking the next release we were going to put

15:45:31    8    out that year, making sure everything got in there and

15:45:35    9    building on that and that's what I was told.

15:45:39   10         Q.  Why was the existing source code from CVS

15:45:46   11    not simply maintained, copied to a disc or copied to a

15:45:49   12    drive somewhere outside of the context of the CVS

15:45:50   13    source code system?

15:46:28   14         A.  I do not know.

15:46:34   15         Q.  You testified about -- I'm sorry.  I think I

15:46:37   16    already asked you that.

15:46:38   17              Why don't we -- why don't we go off the

15:46:41   18    record.  Let me just take a quick look through these

15:46:44   19    notes and I may be done.  I want to make sure that I

15:46:45   20    don't have anything left.

15:46:47   21              VIDEOGRAPHER:  Okay.  Off the record.  The

           22    time is 3:46.

15:48:56   23              (Recess taken.)

15:48:57   24              VIDEOGRAPHER:  Back on the record.  The time

           25    is 3:48.

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

115

| | | |
|---|---|---|
| 15:49:03 | 1 | MR. LUNDIN:  So, Mr. Niedzielski, I don't |
| 15:49:07 | 2 | have any more questions on those topics for you. |
| 15:49:08 | 3 | I believe that counsel have reached an |
| 15:49:13 | 4 | agreement that we are going to suspend the deposition |
| 15:49:17 | 5 | subject to -- we are going to suspend the deposition |
| 15:49:22 | 6 | and be able to continue our 30(b)(6) deposition and |
| 15:49:24 | 7 | prior to that time we may have a meet and confer to |
| 15:49:29 | 8 | discuss the -- the topics but there -- but as it |
| 15:49:32 | 9 | stands right now, the entirety of the notice is still |
| 15:49:35 | 10 | open for further discussion. |
| 15:49:36 | 11 | MR. BERNSTEIN:  I think that's right.  We |
| 15:49:38 | 12 | will have a further meet and confer, Counsel. |
| 15:49:41 | 13 | Certain -- certain topics I think we agree on, certain |
| 15:49:43 | 14 | we will have to talk about some more.  But the topics |
| 15:49:46 | 15 | for which Mr. Niedzielski was presented today will |
| 15:49:47 | 16 | remain open. |
| 15:49:49 | 17 | MR. LUNDIN:  Okay.  Did you have anything to |
| 15:49:50 | 18 | add? |
| 15:49:50 | 19 | MR. CARMODY:  No.  I think that reflects the |
| 15:49:52 | 20 | parties' agreement. |
| 15:49:53 | 21 | VIDEOGRAPHER:  Okay.  Well, this concludes |
| 15:49:57 | 22 | the deposition of Vincent Niedzielski, Volume No. I. |
| 15:50:00 | 23 | The number of tapes used was two.  The original |
| 15:50:03 | 24 | videotapes will be retained by Merrill Legal Solutions |
| | 25 | at 20750 Ventura Boulevard, Suite 205, Woodland Hills, |

RESTRICTED CONFIDENTIAL
VINCENT NIEDZIELSKI - 6/13/2012

118

1        I, JARDENE L. PLATT, RPR, CSR No. 3724 in and

2    for the State of California, do hereby certify:

3        That prior to being examined, the witness named

4    in the foregoing deposition was by me duly sworn to

5    testify as to the truth, the whole truth, and nothing

6    but the truth.

7        That said deposition was taken before me at the

8    time and place therein set forth and was taken down by

9    me stenographically and thereafter transcribed via

10   computer-aided transcription under my direction and is

11   a true record of the testimony.

12       Before completion of the deposition, review of

13   the transcript [XX] was [ ] was not requested.

14   Requested, any changes made by the deponent (and

15   provided to the reporter) during the period allowed

16   and are appended hereto.

17       I further certify that I am neither counsel

18   for, nor related to, any party to said action, nor

19   interested in the outcome thereof.

20       IN WITNESS WHEREOF, I have hereunto subscribed

21   my name this 25th day of June, 2012.

22

23

24   _____

25       JARDENE L. PLATT, RPR, CSR No. 3724