Grant E. Kinsel, Bar No. 172407
gkinsel@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Timothy J. Carroll (To Be Admitted Pro Hac Vice)
tcarroll@perkinscoie.com
Matthew F. Carmody (To Be Admitted Pro Hac Vice)
mcarmody@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312.324.8400
Facsimile: 312.324.9400

Attorneys for Defendant/ Counterclaimant
EASYLINK SERVICES INTERNATIONAL
CORPORATION

[See signature block for full list of counsel]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED MESSAGING TECHNOLOGIES, INC. AND J2 GLOBAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> EASYLINK SERVICES INTERNATIONAL CORPORATION, <br><br> Defendant. | Case No. 11-cv-4239 DDP (AJWx) <br><br> **EASYLINK SERVICES INTERNATIONAL CORPORATION'S, OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY PERKINS COIE LLP AND TO COMPEL DISCOVERY** <br><br> Date:           November 6, 2012 <br> Time:           10:00 a.m. <br> Courtroom:  3 <br> Judge:         Hon. Dean D. Pregerson |
| And Related Counterclaims | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................... 1

RELEVANT FACTS .................................................................................. 2

ARGUMENT ............................................................................................ 12

    A.    j2's Burden to Establish Vicarious Disqualification .......................... 12

    B.    There is no Rule of Automatic Vicarious Disqualification – Instead, j2 Must Prove Its Confidential Information Has Been Shared.......................................................................................... 13

    C.    The Facts of This Case Do Not Warrant Perkins Coie's Disqualification.............................................................................. 17

    D.    j2 Has Not Established A Substantial Relationship Between Findley's Representation Of j2 In 2004-05 And His 2011-12 Work For Open Text.................................................................... 21

    E.    Open Text Would Be Greatly Prejudiced by the Disqualification of Perkins, Whereas There is No Threat of Harm to j2 if Perkins is not Disqualified .................................................................... 22

    F.    j2's Motion To Disqualify Should Be Denied Because It Is Tactically Motivated ............................................................... 24

    G.    Additional Discovery Would Be Unjustified.................................... 25

CONCLUSION......................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Akerly v. Red Barn Sys.*
   551 F.2d 539 (3d Cir. 1977) .................................................................. 13, 19

*Baker v. Bridgestone / Firestone, Inc.,*
   893 F. Supp. 1349, 1369, 1367-69 (N.D. Ohio 1995) ...................................... 17

*Canatella v. Krieg, Keller, Sloan, Reilley & Roman*
   No. C 11-05535, 2012 WL 847493 (N.D. Cal. March 13, 2012) .... 13, 15, 16, 17

*Concat LP v. Unilever, PLC*
   350 F.Supp.2d 796 (N.D. Cal. 2004) ................................................................ 12

*Demeter Technology, LLC v. Open Text Corp.*
   (Case No. 2:10-cv-00209-JRG, E.D. Tex.) ........................................................ 5

*Dodson v. Floyd*
   529 F. Supp. 1056 (N.D. Ga. 1981) ................................................................. 13

*Dynamic Depth, Inc.* v. *Captaris, Inc.*
   (Case No. 1:07-cv-01488-CAP, N.D. Ga.) ........................................................ 5

*Gov't of India v. Cook Indus., Inc.*
   569 F.2d 737 (2d Cir. 1978) ............................................................................ 23

*Halladay & Mim Mack Inc. v. Trabuco Capital Partners Inc.*
   No. SACV 08-1138 AG, 2009 WL 3244746 (C.D. Cal. Oct. 5, 2009) ............. 16

*Hartford Cas. Ins. Co. v. Am. Dairy and Food Consulting Lab., Inc.*
   No. 1:09–cv–0914, 2010 WL 2510999 (E.D. Cal. June 17, 2010) ............. 12, 22

*In re Airport Car Rental Antitrust Litigation*
   470 F. Supp. 495 (N.D. Cal. 1970) ........................................................... passim

*Ipex, LLC v. Open Text, Inc.*
   (Case No. 2:08-cv-00325-DF, E.D. Tex.) .......................................................... 5

*Oguejiofo v. Open Text Corp.*
   (Case No. 1:09-cv-01278-RWS, S.D.N.Y.) ........................................................ 5

*Openwave Sys., Inc. v. 724 Solutions, Inc.*
   No. C 09-3511, 2010 WL 1687825 (N.D. Cal. April 22, 2010) ....................... 13

*Oracle Am. Inc. v. Innovative Tech. Distrib. LLC*,
   No. 11-CV-01043, 2011 WL 2940313 (N.D. Cal. July 20, 2011)..............passim

*Shurance v. Planning Control Intern.*
   839 F.2d 1347 (9th Cir. 1988)...........................................................................12

*Smith v. Whatcott*
   774 F.2d 1032 (10th Cir. 1985)........................................................................13

*So v. Land Base, LLC*
   CV 08-03336 DDP, 2010 WL 3075641 (C.D. Cal.) (Pregerson, J.).................21

*Visa U.S.A., Inc. v. First Data Corp.*
   241 F. Supp. 2d 1100 (N.D. Cal. 2003)............................................................24

**CALIFORNIA CASES**

*Farris v. Fireman's Fund Ins. Co.*
   119 Cal. App. 4th 671 (2004)...........................................................................21

*H.F. Ahmanson & Co. v. Salomon Bros., Inc.*
   229 Cal. App. 3d 1445 (1991)..........................................................................12

*Jessen v. Hartford Cas. Ins. Co.*
   111 Cal.App.4th 698 (2003).............................................................................21

*Kirk v. First American Title Insurance Company*
   183 Cal. App. 4th 776 (2010).....................................................14, 15, 21, 24

*Pound v. DeMera DeMera Cameron*
   135 Cal. App. 4th 70 (2005)....................................................................14, 15

**OTHER CASES**

*Gardere Wynne Sewell LLP v. Open Text Corp.* (Case No. 09-13270-I,
   Dallas Cty. Dist. Ct., Texas).....................................................................5, 15

*j2 Global Communications, Inc. v. Callwave Inc.*
   Case No. 04-cv-07068-DDP (Docket Sheet, indicating that the case was
   filed in August 2004 and continued until March 2007) ....................................10

*j2 Global Communications, Inc. v. Venali, Inc.*
   Case No. 04-01172 DDP (Docket Sheet, indicating that case was filed in
   February 2004 and continued until September 2010) ......................................10

1
2

*j2 Global Communications, Inc. v. Zilker Ventures*
No. 2:09-cv-6300-DDP-AJW, C. ................................................................... 4

3
4

*Open Text, Inc. v. Robert W. Boender* (Circuit Courts of Cook County, IL
and Maricopa County, AZ 2008) ............................................................... 5

5

*Reitz v. Aviles, et al.* (Case No. D-1-GN-09-001502, Travis Cty. Ct., Texas) ......... 5

6

*Rob Foore v. Open Text, Inc.* (Penn. Dep't of Labor, 2008-09) ............................ 5

7

OTHER AUTHORITIES

8
9

http://www.interesting-people.org/archives/interesting-
people/199604/msg00050.html ............................................................... 8

10

U.S. Patent No. 6,020,980 .............................................................................. 3

11

U.S. Patent No. 6,208,638 ........................................................................ 2, 10

12
13

U.S. Patent No. 6,350,066 ........................................................................ 2, 10

14

U.S. Patent No. 6,597,688 ................................................................... 2, 10, 11

15

U.S. Patent No. 7,020,132 .............................................................................. 2

16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

1  The motion filed by j2 Global Communications, Inc. ("j2") attempts to create
the false impression that Perkins Coie LLP ("Perkins") should be disqualified from
this litigation. The linchpin of j2's motion is its incorrect legal assertion that this
Court must *presume* that confidential information was passed from Clyde Findley
to Perkins. No such information was passed, and the law does not require an
assumption that it was.

Perkins had no role in the decision of Open Text Corporation ("Open
Text") to retain Mr. Findley on an interim basis to service some of its intellectual
property needs. The record is clear that Mr. Findley was not litigation counsel, or
even co-counsel, in the cases between j2 and Open Text. Once Perkins learned of
Mr. Findley's interim role with Open Text, it reasonably believed that Mr. Findley
and his law firm, Crowell Moring LLP ("Crowell"), had determined there were no
conflicts that would preclude Mr. Findley's engagement with Open Text. Neither
Crowell nor Mr. Findley disclosed to Perkins that Mr. Findley had, almost seven
years ago, performed legal services for j2 possibly relating to some of the patents-
in-suit. Most importantly, neither Open Text nor Perkins ever received any
confidential information from Mr. Findley concerning j2.

In all of the cases in which courts have imposed the drastic and disfavored
vicarious disqualification remedy, there has been a knowing retention of conflicted
counsel. Here Perkins was surprised to learn of a potential conflict of interest
arising from work Mr. Findley had, many years ago, performed on behalf of j2.
When Perkins was first advised of this potential conflict by j2, in an abundance of
caution, Perkins and Open Text promptly terminated the relationship and all
communications with Mr. Findley.

There is no legal or factual basis for disqualifying Open Text's long-time
counsel in these cases, counsel that j2 well knows is singularly prepared and
qualified to defeat its claims. Perkins did not learn of any j2 confidential

1   information. Perkins did not know of Mr. Findley's past work for j2 at Kenyon &

2   Kenyon ("Kenyon"). Mr. Findley never had a substantive role in these cases.

3   Further, Open Text would be greatly prejudiced to lose its long-time counsel more

4   than four years into the litigation. Conversely, j2 would suffer no prejudice from

5   Perkins remaining in the case. The parties, cases, products, facts and claims that

6   Mr. Findley apparently worked on in 2004 and 2005 for j2 are very different from

7   today's cases. j2's motion must therefore be denied. *See* Exhibit 1 (Declaration of

8   Justice Carlos Moreno (Ret.) ("Moreno Decl.")), ¶¶ 20-21, 29.

9                                    **RELEVANT FACTS**

10       **1.       The j2 and Open Text Litigations.**

11           j2 has accused Open Text and EasyLink Services International Corporation

12   ("EasyLink") of infringing four patents: U.S. Patent No. 6,208,638; U.S. Patent No.

13   6,597,688; U.S. Patent No. 7,020,132; and U.S. Patent No. 6,350,066. This dispute

14   began in 2008, when j2 filed a lawsuit in the Eastern District of Texas against

15   Captaris, Inc. ("Captaris"), which sold the RightFax products that j2 accuses of

16   infringement. [Case No. 09-CV-04150, (Dkt. No. 1)] On October 31, 2008, Open

17   Text acquired Captaris [Declaration of Gordon A. Davies in Support of Defendant's

18   Opposition to j2's Motion to Disqualify Perkins Coie and Compel Discovery

19   ("Davies Decl."), ¶ 2][1], thereby becoming involved in the action. Open Text

20   retained Timothy Carroll (then of the law firm of Vedder Price, P.C.), who

21   appeared in early 2009 as Open Text's counsel of record. [Declaration of Timothy

22   J. Carroll ("Carroll Decl."), ¶¶ 5-6]

23           In 2008, j2 also sued EasyLink in the same forum, and in 2011, initiated a

24   second suit against EasyLink. [Case Nos. 09-CV-04189; 11-CV-04239] j2 has

25   accused various EasyLink systems of infringing the same patents it is asserting in

26   the Open Text litigation. In 2012, Open Text acquired EasyLink, thereby taking

27

28           [1] All declarations referenced in this Opposition shall refer to Declarations that
     are in Support of Defendant's Opposition to j2's Motion to Disqualify Perkins Coie
     and Compel Discovery, filed herewith.

1  over the EasyLink actions.[2] [Davies Decl., ¶ 2] Upon Open Text's request, Perkins
2  appeared as counsel of record for EasyLink in these actions on October 11, 2012.

3      The j2 cases against Open Text, EasyLink and other defendants filed in the
4  Eastern District of Texas were transferred to this Court in mid-2009. Fact discovery
5  has been proceeding since 2008, and is scheduled to close soon.[3] [Case No. 09-CV-
6  4150, (Dkt. No. 334)] The parties have produced and reviewed millions of pages of
7  documents and taken (and defended) dozens of depositions – including the
8  depositions arising out of nearly 70 third-party subpoenas. [Carroll Decl., ¶ 16] In
9  October 2012, Mr. Carroll and his team represented Open Text and EasyLink in a
10 global mediation with j2. [*Id.*, ¶ 17] Expert work in these cases is well under way,
11 with initial expert reports due on January 25, 2013. Summary judgment motions are
12 due on May 3, 2013, with a hearing scheduled for June 24, 2013. A final pre-trial
13 conference is set for August 26, 2013, and trial is scheduled to begin on September
14 17, 2013. [*Id.*, ¶ 19][4]

15
16      **2.    Mr. Carroll and His Team's Extensive Experience Litigating
           Against j2.**

17      At the time Mr. Carroll first appeared in this dispute against j2 in 2009, he
18 also represented Open Text's predecessor-in-interest, Captaris, in an action brought
19 in 2007 by a j2 subsidiary, Dynamic Depth, Inc. [Carroll Decl., ¶ 7] There, as here,
20 j2's subsidiary alleged that Open Text's RightFax product infringed a fax-related
21 patent; that case was resolved in November 2009.

22
23 _____

24      [2] Mr. Carroll provided legal advice to Open Text in connection with the
    EasyLink transaction. Clyde Findley did not. [Carroll Decl., ¶ 20; Declaration of
    Douglas M. Parker ("Parker Decl."), ¶ 2].
25      [3] The 2011 case between j2 and EasyLink (No. 11-CV-4239) has a different
    schedule.
26      [4] On September 14, 2012, j2 filed another lawsuit in this Court against Open
    Text and EasyLink – case No. 2:04-cv-01172-DDP-AJW–alleging infringement of
27 a different patent (U.S. Patent No. 6,020,980) from those at issue here. EasyLink
    acquired the '980 patent only recently; the patent has no relationship to the matters
28 that j2's attorneys worked on in 2004 or 2005. Perkins Coie has appeared on Open
    Text and EasyLink's behalf in that newly-filed case; j2 has not objected or brought
    a motion to disqualify Perkins representation in that action. [Carroll Decl. ¶ 18]

By 2009 and 2010, Mr. Carroll and his team were involved in multiple patent litigations concerning the very same patents between j2 and other defendants. j2 brought suits in the Eastern District of Texas against Protus IP Solutions, Inc. (2:09-cv-04146-DDP-AJW) and Comodo Communications, Inc. (2:09-ccv-04197-DDP-AJW). [*Id.*, ¶ 8] Mr. Carroll formed and led a joint defense group that consisted of Open Text, EasyLink, Protus, Comodo and multiple other defendants who had been sued by j2. [*Id.*] Mr. Carroll was later asked to, and did, represent Protus and Comodo against j2. The cases were all transferred to the Central District of California in or around June 2009. [*Id.*]

Later, in 2009, Mr. Carroll and his team began defending Packetel, Inc. in a patent infringement case brought by j2 in this Court (No. 04-cv-01172-DDP-AJW). Protus later acquired Packetel, and j2 ultimately acquired Protus (and thus Packetel) and Comodo, ending those disputes. In addition to all these cases, Mr. Carroll represented Zilker Ventures in patent litigation against j2, which was resolved in December 2009. [*j2 Global Communications, Inc. v. Zilker Ventures*, No. 2:09-cv-6300-DDP-AJW, C.D. Cal.]

By litigating against and negotiating with j2 in these myriad actions, Mr. Carroll obtained invaluable insight regarding j2's patents, methods of operating, litigation tactics and settlement strategies and histories. [Carroll Decl., ¶ 12]. This insight and experience is invaluable to Open Text. [Davies Decl., ¶¶ 3-4]

**3.    Open Text's Longstanding Relationship with Timothy J. Carroll.**

Not only does Mr. Carroll have extensive experience litigating against j2, but he also has a history of representing Open Text. Since 2006, Open Text has had an ongoing attorney-client relationship with Mr. Carroll. During this time, Mr. Carroll and others on his team have gained intimate and unique knowledge regarding Open Text, its products, services, business, people, documents, policies, culture, processes and defenses. [Davies Decl., ¶ 3; Carroll Decl., ¶ 2, 12; Declaration of Matthew Carmody ("Carmody Decl."), ¶ 2] Mr. Carroll has served as counsel for

1   Open Text (and its predecessors-in-interest) in patent infringement, licensing,

2   shareholder, commercial and employment disputes.[5] Mr. Carroll has also advised

3   Open Text on many intellectual property and other matters, including compliance

4   initiatives, internal investigations, eDiscovery assignments, product launches and

5   licensing consolidation projects. [Davies Decl., ¶ 3; Carroll Decl., ¶¶ 3-4]

6          Since 2008, Mr. Carroll and the attorneys he supervised have defended Open

7   Text against j2's patent infringement claims. [Carroll Decl., ¶¶ 5, 14] Among other

8   things, Mr. Carroll and his team have argued claim construction issues, developed

9   Open Text's legal positions, obtained evidence to support Open Text's defenses and

10  counterclaims (such as non-infringement and invalidity), made and responded to

11  dozens of written discovery requests, participated in extensive document discovery

12  involving many millions of pages of documents, identified relevant party and non-

13  party witnesses, developed strategies for the expert portion of the case, made and

14  assisted Open Text in responding to many discovery requests, taken and defended

15  dozens of party and non-party depositions, briefed and argued many motions before

16  this Court, and participated in Multi-District Litigation Panel proceedings regarding

17  potential consolidation. [*Id.*, ¶ 13] Indeed, given the extent of the work that Mr.

18  Carroll's team has already done and the advanced stage of this litigation, much of

19  the discovery that remains involves clarifying or confirming facts that appear in the

20  documents and/or have been attested to by other witnesses. [*Id.*, ¶ 16]

21         Through discovery, Open Text concluded that j2 procured the patents at issue

22  through inequitable conduct, and spoliated key evidence relating to its own prior art

23

24

25         [5] Some of these matters include *Dynamic Depth, Inc.* v. *Captaris, Inc.* (Case
    No. 1:07-cv-01488-CAP, N.D. Ga.); *Ipex, LLC v. Open Text, Inc.* (Case No. 2:08-
26  cv-00325-DF, E.D. Tex.); *Demeter Technology, LLC v. Open Text Corp.* (Case No.
    2:10-cv-00209-JRG, E.D. Tex.); *Gardere Wynne Sewell LLP v. Open Text Corp.*
27  (Case No. 09-13270-I, Dallas Cty. Dist. Ct., Texas); *Oguejiofo v. Open Text Corp.*
    (Case No. 1:09-cv-01278-RWS, S.D.N.Y.), *Reitz v. Aviles, et al.* (Case No. D-1-
28  GN-09-001502, Travis Cty. Ct., Texas); *Open Text, Inc. v. Robert W. Boender*
    (Circuit Courts of Cook County, IL and Maricopa County, AZ 2008), and *Rob
    Foore v. Open Text, Inc.* (Penn. Dep't of Labor, 2008-09). [Carroll Decl., ¶ 3]

1   systems that were never reviewed by the Patent Office. [*See, e.g.*, Case No. 09-

2   4150-DDP (AJWx), (Dkt. Nos. 336 and 337)].

### 4.   Open Text's Interim Use of Clyde Findley of Crowell.

4       In contrast to Open Text's long-standing relationship with Mr. Carroll and

5   the Perkins team's extensive work on j2-related matters, Open Text's relationship

6   with Clyde Findley began only recently, at the end of 2011, and was meant to only

7   be an interim relationship. [Davies Decl., ¶¶ 6-7]

8       In 2011, Open Text conducted a search for an in-house attorney who could

9   assist it on intellectual property and patent matters. [*Id.*, ¶ 6] The search was not

10   fruitful, so Open Text approached a partner firm, Crowell, to ascertain whether

11   Crowell had someone to assist with intellectual property and patent matters until

12   Open Text could find a long-term solution.[6] [*Id.*] Open Text did not retain Crowell

13   to serve as its litigation counsel, or even co-counsel, in the j2 litigation. [*Id.*, ¶ 10].

14   Crowell assigned Mr. Findley to Open Text. [*Id.*, ¶ 9] Perkins presumed that

15   Crowell had performed a conflicts check and had verified that Mr. Findley was able

16   to provide the services requested by Open Text, including exposure to the j2

17   litigation matters, and neither Crowell nor Findley advised Perkins or Open Text to

18   the contrary. [*Id.*, ¶ 9; Carroll Decl., ¶¶ 23-24; Declaration of Douglas M. Parker

19   ("Parker Decl."), ¶ 4].

20       Perkins was *not* consulted on the decision to retain Crowell or Mr. Findley.

21   [Carroll Decl., ¶ 22; Davies Decl., ¶ 10] Perkins learned of Open Text's decision to

22   retain Mr. Findley only *after* Open Text had made that decision. [Carroll Decl., ¶

23   22; Davies Decl., ¶ 10] Neither Mr. Carroll nor anyone on his team had ever met or

24   communicated with Mr. Findley before Open Text engaged him. [Carroll Decl., ¶¶

25   23, 34; Declaration of Manny J. Caixeiro ("Caixeiro Decl."), ¶ 3; Carmody Decl., ¶

26   3; Declaration of Steven M. Lubezny ("Lubezny Decl."), ¶ 3; Declaration of David

27   J. Palmer ("Palmer Decl."), ¶ 3] Neither Mr. Carroll nor any member of his team

28

---

[6] Open Text filled this position with a full-time employee in the summer of 2012. [Davies Decl. ¶ 6].

was aware of Mr. Findley's prior work for j2 until July 27, 2012 (at the earliest),

when j2's counsel brought the issue to Perkins' attention at the deposition of Dr.

David Farber. [Carroll Decl., ¶ 33] Perkins' response was to confront Mr. Findley

about this assertion and, after doing so, Perkins ceased communicating with Mr.

Findley. [*Id.*, ¶ 32]

### 5.   Findley Did Not Communicate any j2 Confidential Information to Perkins.

As an interim lawyer retained by Open Text for IP-related matters, Findley

played a limited role in connection with this litigation. [Carroll Decl., ¶ 25] ***Findley***

***never communicated any confidential information concerning j2 to Mr. Carroll***

***or any other member of Perkins***.[7] This fact is undisputed, and j2 has not proffered,

and cannot proffer, any evidence to the contrary. Similarly, Open Text's in-house

counsel never received confidential information concerning j2 from Mr. Findley,

and never observed or heard Mr. Findley disclose information concerning j2 to

Perkins. [Davies Decl., ¶¶ 13-14; Parker Decl., ¶ 4] Simply put, Mr. Findley was

not a source of facts, knowledge, or confidential information regarding j2. [Carroll

Decl., ¶ 26] Indeed, the scope and strategy for the defense of Open Text was

formed years before Mr. Findley was retained by Open Text. [*Id.*, ¶ 27] Open

Text's invalidity and inequitable conduct positions were developed long before Mr.

Findley's interim work for Open Text. [*Id.*]  Moreover, Crowell never appeared in

these cases. Crowell did not argue motions, interview witnesses, draft pleadings and

briefs, or decide on strategy. [*Id.*, ¶¶ 13, 27-28]  Indeed, any decisions about the

scope, direction and strategy for the defense of the cases were made by Messrs.

Davies and Carroll, and not Mr. Findley (who lacked the authority to do so).

[Davies Decl., ¶ 11; Carroll Decl., ¶ 27]

---

[7] Carroll Decl., ¶ 26; Carmody Decl., ¶ 7; Lubezny Decl., ¶ 4; Caixeiro Decl.,
¶ 4; Palmer Decl., ¶ 4.

**6.      The Farber Deposition.**

On July 27, 2012, King & Spalding, then counsel for EasyLink, took the deposition of Dr. David Farber, a third-party computer scientist. A Perkins attorney was present but did not ask any questions. [Palmer Decl., ¶ 3, Ex. A (Farber Deposition Transcript)]

Dr. Farber is an obvious witness in this case. Long before Mr. Findley began his interim role for Open Text, Dr. Farber had been identified (in j2's document productions to Open Text and EasyLink in 2010, and in references such as newspapers and magazines) as having knowledge about j2's JFax system – prior art that is relevant to the invalidity and inequitable conduct defenses. [Carmody Decl., ¶¶ 9-12; Declaration of Brent Bellows ("Bellows Decl.") ¶ 2] The purpose of the deposition was to confirm what Dr. Farber had publicly written in 1996, i.e., that he had used the JFAX fax-to-email service before April 1, 1996.[8] No confidential information or documents were used or discussed at the deposition, and Dr. Farber testified he never had any confidential relationship with j2. [Palmer Decl., ¶ 8, Ex. A (Farber Dep. at 53-55, 114-15)] Dr. Farber's 1996 statement that he used JFAX is archived on the Internet.[9] And a simple Google search reveals articles in the New York Times and other periodicals in which Dr. Farber discussed his use of JFax in the pre-patent period. [Carmody Decl., ¶¶ 10-11, Exs. C, D]

Because these documents were produced by j2 [*see* Carmody Decl., ¶ 11, Ex. D], in the summer of 2010, Brent Bellows, an attorney at King & Spalding, had identified certain j2-produced Farber documents, and King & Spalding discussed them with Matthew Carmody (now with Perkins) in 2010. [Bellows Decl., ¶ 2; Carmody Decl., ¶ 12] This led EasyLink to issue document requests and inter-rogatories to j2 in December 2010, which centered on Dr. Farber's used of JFAX.

---

[8] Perkins attorneys have long been aware of the fact that j2, while operating as a predecessor entity called JFax.com in the 1990s, publicly operated inbound and outbound facsimile systems more than one year before it applied for the patents-at-issue, without disclosing those systems to the Patent Office. [Carmody Decl., ¶ 8]

[9] *See* http://www.interesting-people.org/archives/interesting-people/199604/msg00050.html

1  [Bellows Decl., ¶ 4] In September 2011, Dr. Farber was listed as a witness on

2  EasyLink's amended Rule 26(a) disclosures. [Carmody Decl., ¶ 12, Ex. L] All of

3  these activities occurred before Mr. Findley was engaged by Open Text.

4  　　　　Findley played no role whatsoever in identifying Dr. Farber as a witness.

5  [Carmody Decl., ¶ 9; Bellows Decl., ¶ 6] While Findley chose to observe the

6  deposition, he was not directed to attend by anyone at Perkins or Open Text, and he

7  did not contribute to the preparation for the deposition (most of which was done by

8  an attorney at a different law firm, King & Spalding). [Carroll Decl., ¶ 29; Palmer

9  Decl., ¶ 5] j2 was represented at the Farber deposition by Frank Bernstein from

10  Kenyon. In a conversation between the attorneys attending the deposition, Mr.

11  Findley *openly volunteered* to Mr. Bernstein that he had previously worked for

12  Kenyon. [Palmer Decl., ¶ 3, Ex. A (Farber Dep. at 123-24)] Mr. Bernstein did not,

13  however, stop the deposition. At the conclusion of the deposition, Mr. Bernstein

14  stated on the record that although Mr. Bernstein met Mr. Findley for the first time

15  at the deposition, Kenyon's records showed that Mr. Findley's employment for

16  Kenyon had "overlapped for a little while" with Mr. Bernstein's, that Mr. Findley

17  had billed time to j2 matters in 2004-2005, and that Kenyon would investigate the

18  matter further. [*Id.*] This was the first time that anyone at Perkins was made aware

19  of Mr. Findley's previous work for j2. [Carroll Decl., ¶ 24]

20  　　　**7.**　　**Findley's Apparent Dealings with j2.**

21  　　　　Findley left Kenyon in July 2005–more than six years before his retention by

22  Open Text. [Declaration of Robert A. Sacks in Support of Plaintiff's Motion to

23  Disqualify Perkins Coie ("Sacks Decl."), Ex. B (Dkt. No. 77-4)] According to j2's

24  attorneys, Findley billed 234 hours on behalf of j2. [*Id.*] The only evidentiary

25  support for these assertions is the Frank Bernstein declaration filed along with j2's

26  motion to disqualify Perkins ("Bernstein Decl.") (Dkt. No. 77-2). Because it is not

27

28

1  based on Mr. Bernstein's actual knowledge or supervision of Mr. Findley, Mr.

2  Bernstein's testimony is inadmissible as lacking foundation and hearsay.[10]

3       Moreover, any work that Mr. Findley performed while at Kenyon could not

4  be substantially related to the pending litigations. According to j2, Mr. Findley did

5  some work for j2 relating to j2's litigations against Venali Inc. and Callwave Inc.

6  Those cases were still in the early stages when Mr. Findley left Kenyon in July

7  2005.[11] The Venali and Callwave cases involved *different parties*, *different*

8  *products*, which were tailored to a completely *different market, different lawyers,*

9  *different facts, different arguments and different asserted claims*. [Carmody Decl.,

10  ¶¶ 15-20] Beginning toward the end of or after Mr. Findley's departure from

11  Kenyon, and continuing well after his departure, the relevant patents went through

12  lengthy reexaminations that materially altered the scope of the patent claims. [*Id.,*

13  ¶¶ 16-18] Reexamination of the '066 patent was initiated in May 2005. The

14  reexamination certificate did not issue until 2009, four years after Mr. Findley left

15  Kenyon. As the reexamination record shows, j2 was forced to make extensive

16  changes to the '066 patent during reexamination. [*Id.*, ¶ 16] A request to reexamine

17  the '638 patent was made in November 2005, and the reexamination certificate

18  issued in 2008. j2 was also required to make significant changes to the '638 patent

19  as a result of the reexamination proceedings. [*Id.*, ¶ 17] A request to reexamine the

20  '688 patent was also made in March 2005. Once again, the reexamination

21  certificate did not issue until 2008. [*Id.*, ¶ 18] Thus, if Mr. Findley did any work in

22  relation to the patent claims and prosecution histories of the patents-in-suit as they

23

24

---

25  [10] While j2 relies on Mr. Bernstein's affidavit to support its assertions
regarding the work performed by Mr. Findley at Kenyon, Mr. Findley was not
26  supervised by nor did he work with Mr. Bernstein; indeed, they overlapped at
Kenyon for just a few months, and Mr. Bernstein never claims that he supervised
Mr. Findley. [*See* Bernstein Decl. (Dkt. No. 77-2)]
27  [11] *See j2 Global Communications, Inc. v. Venali, Inc.*, Case No. 04-01172
DDP (AJWx) (Docket Sheet, indicating that case was filed in February 2004 and
28  continued until September 2010); *j2 Global Communications, Inc. v. Callwave Inc.*,
Case No. 04-cv-07068-DDP (AJWx) (Docket Sheet, indicating that the case was
filed in August 2004 and continued until March 2007).

1  existed pre-July 2005, that work would have little if any bearing on the patents as

2  they stand today.

3         The invalidity contentions now being advanced by Open Text and EasyLink

4  are based on information and evidence that was located by Mr. Carroll and

5  members of the Open Text litigation team long before Mr. Findley was retained by

6  Open Text. Mr. Findley did *not* contribute in any way to these discoveries and

7  strategies, nor could he have. Open Text's and EasyLink's invalidity arguments

8  center on the very products j2 now accuses of infringement, which were used and

9  sold years before j2's patents were filed. [*Id.*, ¶¶ 20-22] And one of the key

10 witnesses on this issue, Joe Cracchiolo, was deposed by Mr. Bernstein in March

11 2011, nearly a year before Mr. Findley undertook any work for Open Text.

12         **8.     Perkins and Open Text Sever Ties with Findley, and Crowell Ends its Limited Role.**

13         After the Farber deposition, Mr. Carroll confronted Mr. Findley by phone.

14 Mr. Findley represented that his role at Kenyon on j2 matters was very limited, and

15 that he did not recall or reveal confidential information of j2. [Carroll Decl., ¶ 31].

16 Despite Mr. Findley's representations, Perkins and Open Text (on the advice of Mr.

17 Carroll) promptly severed ties and contact with Mr. Findley. [Carroll Decl., ¶ 32;

18 Davies Decl., ¶ 15] Mr. Carroll also confirmed with each Perkins attorney working

19 on j2 matters that they had never received confidential information from Mr.

20 Findley, or ever knew that Mr. Findley performed legal services for j2 in 2004-05.[12]

21 [Carroll Decl., ¶ 33] On August 9, 2012, Crowell confirmed to counsel for j2 that it

22 would have no further involvement in these cases. [Sacks Decl., Exh. B].

23         Independent of j2's assertion of a conflict, Open Text filled the position with

24 a full-time in-house lawyer in the late summer of 2012. [Davies Decl., ¶ 6]

25

26

27

28
────────────
[12] Notably, many of the Perkins attorneys working on the j2 litigations have never met or had any communications with Mr. Findley. [Carroll Decl. ¶ 34]

# ARGUMENT

Perkins should not be automatically disqualified based on the mere fact that Mr. Findley represented j2 in 2004-05. There is no rule of automatic disqualification for co-counsel, as j2 asserts. Rather, courts overwhelmingly hold that for vicarious disqualification to be appropriate, confidential information must be proven to have passed to co-counsel. But the evidence in this case is to the contrary. Perkins never obtained any j2 confidential information from Findley, or from anyone else, for that matter. j2's attempt to automatically disqualify Perkins against the great weight of relevant case law, despite all of the evidence showing it has not been harmed, unmasks j2's motion as an attempt at gaining tactical advantage by removing Open Text's long-time counsel when j2 faces a motion for sanctions for destroying evidence, and showing that it deceived the Patent Office in obtaining the patents in suit. j2's motion must be denied.

## A.      j2's Burden to Establish Vicarious Disqualification.

Regarded as "a drastic measure," disqualifying counsel is highly disfavored and should be imposed only "when absolutely necessary." *Concat LP v. Unilever, PLC,* 350 F.Supp.2d 796, 814 (N.D. Cal. 2004). Courts recognize that motions to disqualify are brought for tactical or abusive reasons. *Oracle Am. Inc. v. Innovative Tech. Distrib.*, LLC, No. 11-CV-01043, 2011 WL 2940313 at *4 (N.D. Cal. July 20, 2011). Accordingly, disqualification "motions should be subjected to particularly strict judicial scrutiny." *Shurance v. Planning Control Intern.,* 839 F.2d 1347, 1349 (9th Cir. 1988). Unless the moving party can establish a disqualifying conflict by a preponderance of the evidence, disqualification must be denied. *Hartford Cas. Ins. Co. v. Am. Dairy and Food Consulting Lab., Inc.*, No. 1:09–cv–0914, 2010 WL 2510999, at *2 (E.D. Cal. June 17, 2010) (citing *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1452 (1991))

Further, this issue is ultimately a matter of federal law – state law does not control the outcome. "Although federal courts in this state look to the California rules and decisions in deciding disqualification motions, it is not the same as when

1 a federal court is asked to apply state law in a diversity case. As the California

2 courts recognize, '[t]he federal courts are governed entirely by federal enactment

3 and their own rules as to admission and professional conduct.'" *Openwave Sys.,*

4 *Inc. v. 724 Solutions, Inc.*, No. C 09-3511, 2010 WL 1687825, at *5, n.6 (N.D. Cal.

5 April 22, 2010) (citation omitted). Thus, "it is ultimately up to this Court (and the

6 courts above it), not the California Supreme Court, to determine what warrants

7 disqualification from representation in this forum." *Id.* Even so, California law does

8 not authorize disqualifying Perkins in this situation. [Ex. 1 (Moreno Decl.), ¶ 21]

9 **B.    There is no Rule of Automatic Vicarious Disqualification – Instead, j2 Must Prove Its Confidential Information Has Been Shared.**

10 Assuming, *arguendo*, that Crowell could be considered co-counsel with

11 Perkins in this matter, disqualifying one firm "does not automatically compel

12 disqualification of the firm's co-counsel." *In re Airport Car Rental Antitrust*

13 *Litigation,* 470 F. Supp. 495, 501-02 (N.D. Cal. 1970). Thus, "where two

14 independent lawyers or law firms perform work for a common client on the same

15 matter, one lawyer's or law firm's conflict of interest ordinarily will not be imputed

16 to the other lawyer or firm." *Canatella v. Krieg, Keller, Sloan, Reilley & Roman*,

17 No. C 11-05535, 2012 WL 847493, at *2 (N.D. Cal. March 13, 2012); *see also* Ex.

18 1 (Moreno Decl.), ¶ 35. Rather, the moving party must establish, by a

19 preponderance of the evidence, that the two lawyers or firms had an "intimate

20 relationship," that they "work[ed] together very closely," ***and*** "shar[ed] confidential

21 client information …." *Id.,* at *5 (emphasis added); *see also Akerly v. Red Barn*

22 *Sys.*, 551 F.2d 539, 543 (3d Cir. 1977) (declining to adopt per se rule of co-counsel

23 disqualification); *Smith v. Whatcott*, 774 F.2d 1032, 1034 (10th Cir. 1985) (actual

24 evidence of disclosure of confidential information must be presented to disqualify

25 co-counsel); *Dodson v. Floyd*, 529 F. Supp. 1056, 1066 (N.D. Ga. 1981) (same).[13]

---

[13] Perkins and Crowell (or Findley) were not even co-counsel. Findley never appeared on the record in this or any other case involving j2. Furthermore, as shown above, Perkins and Crowell served different functions; Perkins was litigation counsel and Crowell was providing separate services to Open Text.

**a.      j2's Reliance on *Pound* is Misplaced.**

In urging this Court to automatically disqualify Perkins without regard to whether any j2 confidential information actually passed between Findley and Perkins, j2 relies heavily on *Pound v. DeMera DeMera Cameron*, 135 Cal. App. 4th 70, 73 (2005). But five years after *Pound* was decided, another California Appellate District Court expressly criticized the *Pound* holding. The court in *Kirk v. First American Title Insurance Company,* 183 Cal. App. 4th 776, 800 (2010), declined to follow *Pound,* criticizing the *Pound* court's "absolute rule of vicarious disqualification in California" as "improper." *Id*. Instead, the *Kirk* court held the question of vicarious disqualification must, "as initially expressed by the appellate courts," be a "case-by-case analysis based on the circumstances present in, and policy interests implicated by, the case." *Id.*

Even so, *Pound* is readily distinguishable. First, the conflicted lawyer in *Pound* had represented his former client in connection with the *same suit* as the one being litigated. *Id*., at 76. Here, on the other hand, Findley's alleged conflict arises from services he provided to j2 in connection with different lawsuits many years ago. Thus, the *Pound* court's concern that the conflicted lawyer would divulge client secrets about the ongoing litigation does not apply here.

Second, in *Pound*, the non-conflicted attorney actually *knew* that the conflicted attorney had interacted with the opposing party in connection with the *same* litigation, but nevertheless chose to associate the conflicted attorney into the case and proceed to trial with him as *co-counsel*. *Id.,* at 74. Here, in stark contrast, Perkins had no idea that Findley had a potential conflict of interest, and Perkins ceased interacting with Findley immediately upon learning of the potential conflict.

Third, in *Pound*, the co-counsel directly retained the conflicted attorney knowing the attorney had been consulted by the opposing party in the same litigation, and was part of a trial team with the non-conflicted firm. *Id*. The non-conflicted attorney had a direct and close relationship with the conflicted attorney –

1   so close, in fact, that the court treated the conflicted attorney as part of the non-

2   conflicted firm. *See id.,* at 77. The opposite is true here: Crowell was retained

3   directly by *Open Text* to perform a variety of services for Open Text. Perkins did

4   not retain Crowell or associate Findley into these cases, and Findley did not

5   perform services for Perkins. Findley was at all times a member of Crowell, had a

6   limited role relative to Open Text's patent litigations, and did not develop,

7   implement, or direct litigation strategies.

8          Finally, to the extent *Pound* suggests a general rule that vicarious

9   disqualification of co-counsel should be automatic, it is an outlier, as the *Kirk*

10  court's more recent opinion explains. [*See also* Ex. 1 (Moreno Decl.), ¶ 36] The

11  vast majority of courts, including in California, have held that the movant must

12  show that confidential information was actually disclosed to the non-conflicted firm

13  before it can be disqualified. *See, e.g.*, *Airport Car Rental*, 470 F. Supp. at 501;

14  *Canatella*, 2012 WL 847493, at *2; *Oracle*, 2011 WL 2940313, at *5.

15                    **b.     Many Courts Have Refused to Apply Vicarious
                              Disqualification Under Similar Circumstances.**

16
        Because one lawyer's conflict cannot be imputed to an independent lawyer or
17
    firm performing work for a common client, courts must evaluate the facts of each
18
    case to determine if there is a disqualifying conflict. *Airport Car Rental,* 470 F.
19
    Supp. at 505; *Canatella,* 2012 WL 847493, at *2; *Oracle,* 2011 WL 2940313, at *5.
20
    There are several factors relevant to whether independent counsel should be
21
    disqualified: "(1) the extent of the initial contact between counsel and the client; (2)
22
    evidence that the attorney shared any of the client's confidential information with
23
    co-counsel; and (3) evidence that co-counsel associated with the disqualified
24
    counsel because of the disqualified counsel's prior relationship with the client."
25
    *Canatella,* 2012 WL 847493, at *5 (citing *Airport Car Rental,* 470 F. Supp. at 505);
26
    *see also* Ex. 1 (Moreno Decl.), ¶ 39.
27
           Applying these factors, the *Airport Car Rental* court declined to extend a
28
    disqualifying conflict to co-counsel, refusing to rely on the plaintiff's speculation

1  that the attorneys in their dual representation "may have consciously or

2  unconsciously disclosed certain confidential information obtained from [the

3  plaintiff]." 470 F. Supp. at 501. Instead of disqualifying co-counsel based on a mere

4  presumption that confidential information was disclosed, the court relied on a

5  declaration from the attorney responsible for the defense, explaining there was "no

6  evidence whatsoever that any member of the [disqualified] firm conveyed any

7  confidential information concerning [the plaintiff] to [co-counsel]." *Id.,* at 502; *see*

8  *also Halladay & Mim Mack Inc. v. Trabuco Capital Partners Inc.*, No. SACV 08-

9  1138 AG, 2009 WL 3244746, at *3 (C.D. Cal. Oct. 5, 2009) (absent credible

10  evidence to the contrary, there is no reason to disbelieve an attorney's affidavit). So

11  too here, the Court should rely on the multiple declarations of Perkins lawyers and

12  Open Text to confirm the fact that Mr. Findley never communicated any

13  confidential j2 information to any of them.

14       The court in *Canatella* also refused to disqualify co-counsel based on

15  imputing knowledge of confidential information, holding there is no rule requiring

16  automatic disqualification of co-counsel. 2012 WL 847493, at *2-3. The court

17  noted there was no evidence that the conflicted counsel actually shared any

18  confidential information with its co-counsel, and no evidence that conflicted

19  counsel was retained for that purpose. *Id.,* at *2. Here, as in *Canatella*, the work for

20  j2 was performed many years ago, and there is certainly no evidence that Mr.

21  Findley passed any confidential j2 information to Perkins or to Open Text during

22  the recent months in which he represented Open Text.

23       The court reached a similar conclusion in *Oracle*. There, the plaintiff Oracle

24  sought to disqualify both its opponent's general counsel and its outside litigation

25  counsel. *Oracle,* 2011 WL 2940313, at *1. Even though the general counsel was

26  disqualified because she had worked for Oracle's predecessor for ten years and had

27  reviewed and flagged issues relating to the contract in dispute, the court declined to

28  also disqualify the defendant's outside litigation counsel because, as in this case,

1    there was no evidence that confidential information had been passed to it. *Id.,* at \*3-

2    5. The court observed there are "few cases where courts have imputed confidential

3    knowledge to co-counsel as the basis for disqualification," noting that "the general

4    rule seems to be to the contrary: disqualification of one firm does not automatically

5    compel disqualification of the firm's co-counsel …." *Id.*, at \*5.

6    **C.    The Facts of This Case Do Not Warrant Perkins Coie's Disqualification.**

7         **1.    Mr. Findley Never Gave Perkins any Confidential j2 Information.**

8         As the courts held in *Airport Car Rental*, *Canatella* and *Oracle*, Perkins

9    should not be disqualified because no confidential information actually passed from

10   Findley to Perkins or Open Text.

11        Each of the Perkins attorneys who met Findley have, along with Open Text,

12   unanimously confirmed through sworn declarations that Findley never provided

13   any j2 confidential information to Perkins. Even if this testimony were set aside, the

14   likelihood of Findley having passed such information would be low, given his role

15   as an interim intellectual property counsel for Open Text, and the brief nature of the

16   work he purportedly did for j2, which appears to have been related to gathering

17   information from the public domain. Mr. Findley never appeared in these cases,

18   never directed litigation strategy nor provided information regarding j2. Nor did

19   Perkins ever ask for his advice. *See Baker v. Bridgestone / Firestone, Inc.*, 893 F.

20   Supp. 1349, 1369, 1367-69 (N.D. Ohio 1995) (co-counsel not disqualified where

21   tainted counsel was not solicited for advice).

22        j2 has not shown that Findley actually has any confidential j2 information.

23   The only so-called evidence of any confidential information passing from Findley

24   to Perkins is j2's speculation that Findley's confidential information led Open Text

25   to depose Dr. Farber. But nothing could be further from the truth. j2's suggestion

26   that Mr. Findley played any role in identifying and deposing Dr. Farber is belied by

27   the facts. First, all information known to Perkins about Dr. Farber has been publicly

28   available for many years. Second, that information was actually ***produced by j2*** to

EasyLink and Open Text, and Dr. Farber had been identified as a relevant witness as a result of the j2-produced documents long before Mr. Findley had any involvement with Open Text. This fact is demonstrated not only by the declarations of Brent Bellows and Mr. Carmody, but also by the fact that EasyLink issued discovery requests relating to Dr. Farber as early as 2010. Dr. Farber's relevance to this case is his long-ago stated use of the prior art JFAX software before j2 applied for its patents. The pure non-confidential nature of this information was demonstrated by the fact that none of his deposition testimony or any of the documents used in it are claimed to be confidential by any party.

Mr. Findley also did not identify any prior art for Perkins or Open Text to rely on against the j2 patents. The prior art Perkins has marshaled against j2's patents was developed long before anyone on the Perkins team ever met Mr. Findley, and Mr. Findley has no secret knowledge of the primary prior art Open Text is relying on in these cases – Open Text's and EasyLink's own products.

**2.    j2 has Provided no Evidence Mr. Findley Received Any Confidential j2 Information, and Even if he Did, it Would Not Have Benefited Open Text or Perkins Coie.**

j2's motion fails to identify any confidential information possessed by Mr. Findley. But even if Findley had received such information and still remembered it, that information would have been of no value to Perkins or Open Text.[14]

As explained above, the patents-in-suit were reexamined by the Patent Office and significantly altered in scope during the years after Findley left Kenyon, and before he did any work for Open Text. Moreover, the significant events in this case – including the disclosure of invalidity positions, production of roughly one million pages of documents, review and analysis of documents produced, the development of noninfringement positions, the *Markman* proceedings and scores of depositions—occurred well before Open Text's interim association with Findley. Long before Mr. Findley provided services to Open Text, Mr. Carroll and his team

---

[14] The patents at issue were the subject of lengthy reexamination proceedings, which mostly took place after Findley left Kenyon. [Carmody Decl., ¶¶ 16-18].

had defended four other parties in patent litigation against j2 concerning computerized fax technology, including the patents at issue here. Over years of in-depth experience defending j2 suits, Mr. Carroll and his team developed a deep and detailed understanding of the relevant facts and issues—they have no need for and could not possibly have benefited from any guidance about j2 from Findley, even if he had offered it (and he did not). *See Akerly,* 551 F.2d at 545 (no disqualification where attorney did not guide strategy for tainted firm.)

### 3.   j2 has not Shown that Findley had a Close Working Relationship With j2.

j2 has not provided any communications with, or work product of, Findley (even in a redacted format) evidencing that the nature of Findley's working relationship with j2 was close enough that he received confidential information. j2 has provided no reason to believe Findley was aware of any j2 business or financial strategies or confidential technical information (such as source code). And j2's motion makes clear that Mr. Findley did not work for Mr. Bernstein, who is j2's lead patent and technical lawyer in this case. [Bernstein Decl. (Dkt. No. 77-2)]

j2 nonetheless asserts that Mr. Findley "sent, received or was copied on over 120 emails to or from j2's counsel and over 300 emails to or from Sullivan & Cromwell attorneys." [(Dkt. No. 77-1) at 4:22-24] j2 also cites a privilege log furnished by j2 to contend Findley's previous relationship with j2 was known to Perkins. But if it is true that Sullivan & Cromwell has over 400 emails directed to Findley, most of them could not have been related to this litigation, because they were not identified on j2's privilege log. The most recent entry for Findley on the log was March 15, 2005. Notably, the July 1, 2005 "detailed three-page memorandum" that j2's motion claims (at 5) was a privileged memorandum referencing Dr. Farber received by Mr. Findley, *never appears on the log*.

The privilege log, which j2 served on August 10, 2011 (well before anyone on the Perkins team had ever heard of Clyde Findley), is prefaced by a cover letter purportedly listing all attorneys who will appear in the log. It states "[a]t least the

1   following individuals in the privilege log are attorneys." Mr. Findley is not on that

2   list.[15] [Carmody Decl., ¶ 5, Ex A] The privilege log itself contains 834 entries and

3   just 25 of them include the name "Findley, Clyde," the first one not appearing until

4   item 622. None of the 25 entries[16] identify Mr. Findley as an attorney, or that he

5   worked for Kenyon. Thus, even if someone on the team had reviewed all 834

6   entries on the log, that person would have been challenged to remember Mr.

7   Findley's name when it came up months later. And as a matter of fact, no one could

8   have recognized Findley's name when he was hired by Open Text, because no one

9   at Perkins reviewed the log until after j2 filed this motion. [*Id.*]

10      **4.    Perkins did not Choose to Work with Findley Based on his Work
        for j2, and it cut off all Ties Immediately Upon Learning of it.**

11      Mr. Carroll and his team at Perkins team did not elect to work with Mr.

12  Findley due to his prior representation of j2. First, Mr. Carroll's team did not

13  choose to work with Mr. Findley at all – Open Text separately retained Crowell,

14  who offered Mr. Findley to Open Text. Indeed, Perkins was not even consulted on

15  (much less informed of) Mr. Findley's role on Open Text's behalf until after the

16  relationship had been formed. More importantly, no one at Perkins was aware that

17  Mr. Findley had ever done any work for j2, and they had no reason to doubt the

18  effectiveness of Crowell's conflict identification process. It was not until Dr.

19  Farber's deposition that this information was first made known to Perkins and Open

20  Text. These facts are undisputed and confirm that Perkins did not associate with

21  Mr. Findley *because of* his past relationship with j2.

22      When Perkins discovered Mr. Findley's prior relationship, it immediately cut

23  off all ties with him. In addition to ending any communication with Mr. Findley,

24  Mr. Carroll reviewed his past correspondence with Findley to ensure no

25  confidential information had been disclosed. He also confirmed with all of the

27  _____

    [15] Nor did j2 ever identify Mr. Findley in response to Open Text's
28  interrogatory asking for the names of everyone, including patent attorneys, who had
    performed work relating to the patents-at-issue. [Carmody Decl., ¶ 6, Ex. B
    (Response to Interrogatory No. 7)]

1   attorneys who had contact with Mr. Findley that they also had not received

2   confidential information from him, which they unanimously confirmed. [Carroll

3   Decl., ¶¶ 26, 33]  *See So v. Land Base, LLC*, CV 08-03336 DDP, 2010 WL

4   3075641, at *3 (C.D. Cal.) (Pregerson, J.) (considering steps taken by counsel after

5   being notified of conflict and holding disqualification not warranted, in part,

6   because counsel acted diligently in reducing their exposure to potential conflict).

7   **D.     j2 Has Not Established A Substantial Relationship Between Findley's
        Representation Of j2 In 2004-05 And His 2011-12 Work For Open Text.**

8           j2's motion should also be denied because j2 has not established that there is

9   a substantial relationship between Findley's representation of j2 in 2004-2005 and

10  his recent interim role for Open Text. Absent proof of a substantial relationship, a

11  disqualification motion must be denied, irrespective of whether confidential

12  information was disclosed. *See Kirk,* 183 Cal.App.4th at 800-01; *see also* Ex. 1

13  (Moreno Decl.), ¶¶ 25, 28-29. "[T]he question whether an attorney should be

14  disqualified in a successive representation case turns on two variables: (1) the

15  relationship between the legal problem involved in the former representation and

16  [that] involved in the current representation; and (2) the relationship between the

17  attorney and the former client with respect to the legal problem involved in the

18  former representation." *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal.App.4th 698, 709

19  (2003); *see also Farris,* 119 Cal.App.4th at 679-80. Moreover, if "the attorney's

20  contact with the client in the first representation was not direct," the evaluation

21  includes not only the factual and legal similarities of the two representations, but

22  also "the nature of the attorney's past relationship with the former client." *Farris v.*

23  *Fireman's Fund Ins. Co*., 119 Cal. App. 4th 671, 680 (2004).

24          Further, for there to be a conflict requiring disqualification, "the information

25  acquired during the first representation must be 'material' to the second; that is, it

26  must be found to be directly at issue in, or have some critical importance to, the

27  second representation." *Id*. Thus, merely identifying similarities in the general

28  subject matter of the two representations is not sufficient to establish a substantial

1  relationship. *Hartford Cas. Ins. Co. v. Am. Dairy and Food Consulting Lab., Inc.*,

2  No. 1:09–cv–0914, 2010 WL 2510999, at *3-5 (E.D. Cal. June 17, 2010) (no

3  substantial relationship between insurance claim disputes despite attorney's "direct

4  and personal" relationship representing insurer in 16 coverage matters because

5  cases involved different insured parties and different claims).

6  Here, no substantial relationship can exist between the work Findley

7  performed for j2 years ago and the current litigation. The litigations involve

8  different defendants, claims and evidence. In the intervening years between

9  representations, the patents have been reexamined by the PTO and their claims have

10  been substantially altered. And the defenses being asserted are different. Open Text

11  and EasyLink's non-infringement defenses are focused on the individual details of

12  their products, and their invalidity defenses center on their contentions that their

13  own products anticipate or render the patents obvious. Information about the Open

14  Text and EasyLink products was not provided to the PTO in the reexamination

15  requests filed by the previous defendants Venali and Callwave. As a result, any

16  confidential information that Mr. Findley had regarding j2's patents as they stood

17  before reexamination, and vis-à-vis the Venali and Callwave products, would not be

18  material and certainly would not have any critical importance to this litigation.

19  **E.     Open Text Would Be Greatly Prejudiced by the Disqualification of**
20  **Perkins, Whereas There is No Threat of Harm to j2 if Perkins is not**
   **Disqualified.**

21  The *Airport Car Rental* court identified the important policy served by

22  declining to impute the knowledge of one lawyer or firm to another lawyer or firm

23  serving as co-counsel for the same client. "Although courts must preserve the high

24  standards of the legal profession, courts should also consider the client's right to

25  choose his counsel and the harm to the client caused by an order of

26  disqualification," particularly given that disqualification motions are sometimes

27  used "for strategic purposes." *Airport Car Rental,* 470 F. Supp. at 502 (citation

28  omitted). If disqualifying co-counsel would lead to hardship for the client or

1   otherwise delay the litigation, disqualification is disfavored as a remedy. *Id.*, at 502-

2   03 (disqualification disfavored where primary counsel had developed specialized

3   knowledge of client's operations through years of representation and it would be

4   extremely costly to require another firm to get up-to-speed on complex case) (citing

5   *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)).

6   　　　In this case, Open Text has a long-standing relationship with Mr. Carroll and

7   his team, during which time Mr. Carroll has been Open Text's (and its

8   predecessors-in-interests') counsel of record in multiple patent infringement,

9   licensing, shareholder and other commercial disputes, and counseled Open Text on

10   numerous non-public matters. The defense team also has defended multiple patent

11   litigations against j2 and its affiliates. Mr. Carroll is, therefore, uniquely suited to

12   represent Open Text at this advanced stage of the litigation.

13   　　　Open Text would be severely burdened if it were forced to bring new counsel

14   up to speed on this nearly five year-old case. Open Text has invested substantial

15   attorneys' fees and costs to ensure that Mr. Carroll and his team are fully educated

16   on the facts and law of this case. Moreover, Mr. Carroll and his team have unique

17   knowledge regarding the numerous substantive developments and procedural

18   changes that have occurred over the course of the litigation. It would be

19   extraordinarily burdensome and costly to Open Text were it forced to spend

20   attorneys' fees to bring a new law firm up to speed. No new firm could possibly

21   obtain the depth and extent of knowledge of the history of this case that Mr. Carroll

22   and his team have accumulated over the years. These factors weigh strongly against

23   disqualification. *See* Ex. 1, (Moreno Decl.), ¶ 47 (granting the motion would result

24   in "[s]evere prejudice to Open Text, as an innocent party, through the loss of its

25   longtime counsel of choice and the knowledge of his team").

26   　　　On the other hand, j2 can identify no prejudice it would suffer if Perkins

27   remains in the case. There is no threat of ongoing harm because Mr. Findley and his

28   firm have withdrawn and thus no risk of transmitting j2 confidential information to

1    Perkins remains. "[O]nce the tainted attorney has left the firm, vicarious

2    disqualification is not necessary where the evidence establishes that no one other

3    than the departed attorney … obtained confidential information. Thus, the inquiry is

4    no longer a prospective one, but a retrospective one. The trial court should not

5    consider the *risk* of transmitting information from the tainted attorney to those

6    involved in the challenged representation, but, instead, whether the tainted attorney

7    *actually* conveyed confidential information." *Kirk*, 183 Cal.App.4th at 815–16. It is

8    undisputed that no one other than Mr. Findley had any alleged dealings with j2, or

9    purportedly obtained confidential information. Now that he and Crowell have

10   withdrawn, allowing Perkins to remain in the case could not prejudice j2.

11         Finally, the practical result of disqualifying Perkins would be to

12   unnecessarily delay the proceedings in this case. It would take several months at the

13   very least for new counsel to study the patents and technologies at issue, and learn

14   the facts and the law. Not only would that likely necessitate further delays in the

15   case's schedule, but it would create an unfair advantage for j2. Its counsel would, in

16   all likelihood, spend the intervening period preparing summary judgment briefs and

17   expert reports, while Open Text fell months behind.

18   **F.    j2's Motion To Disqualify Should Be Denied Because It Is Tactically
            Motivated.**

19
20         Courts should also assess the circumstances under which a motion to

21   disqualify is being brought – most notably, whether it is a strategic litigation tactic

22   by the moving party. *Oracle*, 2011 WL 2940313 at *4 (citing *Visa U.S.A., Inc. v.

23   First Data Corp.,* 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003)). Because j2

24   persists in advocating Perkins' disqualification despite the facts that Mr. Findley

25   has withdrawn and no confidential information has fallen into Perkins' hands, it is

26   evident that this motion is a tactical ploy designed to drive up Open Text's costs

27   and put it at a significant disadvantage at an advanced stage of the litigation.

           The tactical nature of this motion is also apparent in its timing. Open Text
28   recently brought motions seeking sanctions against j2 after j2 admitted destroying

1  key source code evidence showing it committed inequitable conduct by hiding its

2  own prior art product from the Patent Office while its patent applications were

3  pending, and again during reexamination. If j2 is found to have spoliated evidence

4  and committed inequitable conduct, then j2 will lose not just this case, but its entire

5  business of suing defendants for patent infringement will be severely impaired. j2's

6  persistence in attempting to vicariously disqualify Perkins despite the abundant

7  evidence that Perkins never received j2 confidential information in the face of these

8  motions shows j2's true purpose is to delay the Court's consideration of the

9  appropriate remedy for j2's evidence destruction.

10  **G.     Additional Discovery Would Be Unjustified.**

11      Finally, j2 should not be permitted to take additional discovery to assess

12  whether further, unspecified "remedies" are appropriate. There is no evidence that

13  Perkins received any confidential j2 information, and, lacking that, it would be

14  improper to allow j2 to wade into Open Text's privileged communications and

15  attorney work product on a fishing expedition to find some evidence to support its

16  effort to disqualify Perkins.

17                          **CONCLUSION**

18      For the foregoing reasons, the Court should deny Plaintiff's motion to

19  disqualify Perkins Coie.

20

21

22

23

24

25

26

27

28

1

2  Dated:  October 29, 2012          By: /s/ David J. Palmer
                                     _____

3                                    Grant Kinsel (Bar No. 172407)
4                                    gkinsel@perkinscoie.com
                                     Gigi C. Hoang (Bar No. 241182)
5                                    ghoang@perkinscoie.com
                                     PERKINS COIE LLP
6                                    1888 Century Park East, Suite 1700
                                     Los Angeles, CA 90067-1721
7                                    Telephone:  310.788.9900
                                     Facsimile:  310.788.3399
8

9                                    Timothy J. Carroll (pro hac vice pending)
                                     tcarroll@perkinscoie.com
10                                   Matthew F. Carmody (pro hac vice pending)
                                     mcarmody@perkinscoie.com
11                                   PERKINS COIE LLP
12                                   131 South Dearborn Street, Suite 1700
                                     Chicago, IL 60603
13                                   Telephone:  312.324.8400
                                     Facsimile:  312.324.9400
14

15                                   David J. Palmer (Bar No. 217901)
                                     dpalmer@perkinscoie.com
16                                   PERKINS COIE LLP
                                     2901 N. Central Avenue, Suite 2000
17                                   Phoenix, AZ  85012
                                     Telephone:  602.351.8000
18                                   Facsimile:  602.648.7036

19

20                                   Attorneys for Defendant/ Counterclaimant
                                     EASYLINK SERVICES INTERNATIONAL
21                                   CORPORATION

22

23

24

25

26

27

28