Grant E. Kinsel (Bar No. 172407)
gkinsel@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Timothy J. Carroll (To Be Admitted Pro Hac Vice)
tcarroll@perkinscoie.com
Matthew F. Carmody (To Be Admitted Pro Hac Vice)
mcarmody@perkinscoie.com
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: 312.324.8400
Facsimile: 312.324.9400

Attorneys for Defendant/ Counterclaimant
EASYLINK SERVICES INTERNATIONAL
CORPORATION

[See signature block for full list of counsel]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED MESSAGING TECHNOLOGIES, INC. AND J2 GLOBAL, INC<br><br>Plaintiffs,<br><br>v.<br><br>EASYLINK SERVICES INTERNATIONAL CORPORATION,<br><br>Defendant.<br><br>And Related Counterclaims | Case No. 11-cv-4239 DDP (AJWx)<br><br>**DECLARATION OF TIMOTHY J. CARROLL, ESQ. IN SUPPORT OF DEFENDANTS' OPPOSITION TO J2'S MOTION TO DISQUALIFY PERKINS COIE AND COMPEL DISCOVERY**<br><br>Date: November 6, 2012<br>Time: 10:00 a.m.<br>Courtroom: 3<br><br>Judge: Hon. Dean D. Pregerson |

I, Timothy J. Carroll, declare as follows:

1. I am a partner with the law firm of Perkins Coie LLP ("Perkins Coie"), counsel for EasyLink Services International Corporation ("EasyLink") and Open Text Corporation ("Open Text") in the above-referenced litigation. I have personal knowledge of all of the matters to which I attest herein and, if called as a witness, could and would testify competently to such facts under oath.

2. My professional relationship with Open Text dates back to approximately 2005. Since that time, I have gained intimate and unique knowledge regarding Open Text, its products and services, policies, business, acquisitions, personnel, document management systems, intellectual property program, culture and processes.

3. In addition to the multiple actions between j2 and Open Text that are before this Court, I have served as counsel of record for Open Text in multiple other patent infringement, licensing, shareholder, commercial and employment disputes, including, among others:

- *Dynamic Depth, Inc.* [a j2 subsidiary] v. *Captaris, Inc.* (Case No. 1:07-cv-01488-CAP, N.D. Ga.);
- *Ipex, LLC v. Open Text, Inc.* (Case No. 2:08-cv-00325-DF, E.D. Tex.);
- *Database Records Management v. Open Text, Inc.*, (Case No. 3:09-CV-00184, W.D. Wis.);
- *Demeter Technology, LLC v. Open Text Corp.* (Case No. 2:10-cv-00209-JRG, E.D. Tex.);
- *Gardere Wynne Sewell LLP v. Open Text Corp.* (Case No. 09-13270-I, Dallas County District Court, Texas);
- *Oguejiofo v. Open Text Corp.* (Case No. 1:09-cv-01278-RWS, S.D.N.Y.),
- *Reitz v. Aviles, et al.* (Case No. D-1-GN-09-001502, Travis County, Texas);
- *Open Text, Inc. v. Robert W. Boender* (Case No. CV2008-011275, Maricopa County, Arizona, and Case No. 08 L 3203, Cook County, Illinois); and

- *Rob Foore v. Open Text, Inc.* (grievance filed with the Penn. Dep't of Labor).

4.    I have also represented and advised Open Text on a wide variety of intellectual property, pre-dispute and other non-public matters, including compliance initiatives, internal investigations, eDiscovery assignments, licensing disputes, licensing consolidation projects and corporate development.

5.    Shortly after Open Text acquired Captaris, Inc. in 2008, Open Text retained me to represent it in this action.  At that time, I was a partner at Vedder Price P.C. in Chicago.  Shortly thereafter, in January 2009, I moved my practice to Loeb & Loeb LLP.

6.    On January 14, 2009, I submitted my application for pro hac vice admission to represent Open Text in this case.

7.    In 2009, I also represented Open Text's predecessor-in-interest, Captaris, in an action brought by a j2 subsidiary called Dynamic Depth, Inc.  *See* Case No. 07-01488-CAP (N.D. Ga).  That case also involved allegations that Open Text's RightFax product (the same product accused here) infringed a fax-related patent owned by j2.  That case was filed in 2007, and it was resolved in November 2009.

8.    In the 2009-2010 period, I was also involved in multiple patent litigations between j2 and other defendants.  For instance, j2 brought suits in the Eastern District of Texas against Protus IP Solutions, Inc. ("Protus") (Case No. 2:09-cv-04146-DDP-AJW) and Comodo Communications, Inc. ("Comodo") (Case No. 2:09-ccv-04197-DDP-AJW).  I formed and led a joint-defense group that consisted of Open Text, EasyLink, Protus, Comodo and multiple other defendants who had been sued by j2.  I was later asked to, and did, represent Protus and Comodo against j2.  Due in part to my efforts, the Open Text, EasyLink, Protus and Comodo cases were all transferred from the Eastern District of Texas to the Central

District of California in or around June 2009. (These cases will be referred to hereinafter as the "j2 cases".)

9. In July 2009, I, and the attorneys under my supervision, also began defending Packetel, Inc. in a patent infringement case brought by j2 in this Court. (Case No. 09-cv-01172-DDP-AJW). Protus later acquired Packetel, and j2 ultimately acquired Protus (and thus Packetel) and Comodo, thereby ending those disputes.

10. The cases referenced in paragraphs 8, 9 (supra) and 11 (infra) all involved the same patents and many of the same defenses that are at issue in the j2 cases. Our defense of those cases also took place several years before we ever met or spoke with Clyde Findley.

11. I also represented Zilker Ventures in a patent litigation action brought by j2, which was resolved in December 2009. *See j2 Global Communications, Inc. v. Zilker Ventures* (Case No. 2:09-cv-6300-DDP-AJW, C.D. Cal.).

12. By litigating against and negotiating with j2 in the aforementioned actions, I obtained invaluable insight regarding j2's technologies, patents, methods of operating and litigation (including its use of patent infringement lawsuits to coerce settlements) tactics. I also have acquired significant knowledge of j2's business model, patent prosecution history, licensing programs, settlement history and personnel.

13. From 2009 to February 2012, I, along with the attorneys that I supervised, defended this case against Open Text and developed the record that exists before the Court today. Among other things, my team and I: (i) argued claim construction issues, (ii) developed Open Text's non-infringement, invalidity, inequitable conduct, patent misuse defense and counterclaims, (iii) obtained evidence to support Open Text's theories of noninfringement, invalidity, et cetera, (iv) participated in an extensive document discovery processes, which has involved producing, reviewing, and/or locating millions of pages of documents and files, (v)

made and responded to multiple written discovery requests, (vi) identified persons with relevant information about j2 and its patents, (vii) interviewed dozens of third-party witnesses, (viii) took or defended scores of depositions, (ix) developed the strategies for the expert portion of this case, and began working with expert witnesses, (x) briefed and argued myriad motions before this Court and (xi) participated in proceedings before the Multi-District Litigation Panel concerning the potential consolidation of this action into a multi-district litigation.

14. In early February 2012, I moved my practice to Perkins Coie LLP ("Perkins"). I was joined in the move from Loeb & Loeb to Perkins Coie by multiple attorneys (Matthew Carmody, Steven Lubezny and Manny Caixeiro) who actively worked on the j2 cases and other matters for Open Text and/or against j2 for several years. Indeed, Mr. Carmody also assisted in the defense of Open Text in several of its other patent litigation matters dating back to 2008, and Messrs. Carmody and Lubezny also litigated against j2 in the Protus, Comodo and Zilker matters.

15. At Open Text's request, Perkins Coie was substituted as its counsel of record. This was the second time since 2008 that I had moved to a new law firm, and the second time that Open Text moved its business with me.

16. After moving to Perkins Coie in 2012, my team and I continued to defend the j2 case against Open Text and develop Open Text's theories in this case, but most of the facts now in the record were established before then. Since February 2012, among other things, we have participated in extensive supplemental discovery productions and dozens of party and non-party depositions, including depositions arising out of the nearly 70 third-party subpoenas that j2 has issued to Open Text's customers and re-sellers. We have also served additional written discovery requests to j2. At this advanced stage of the litigation, much of the additional discovery Open Text has sought or taken is intended to clarify and/or

confirm facts that appear in the documents, or that have been attested to by other witnesses.

17.    In October 2012, I also represented Open Text and EasyLink in connection with a global mediation with j2, which failed to result in a settlement. Pursuant to terms agreed upon by me and counsel for j2, the parties shared their confidential mediation submissions with one another as well as with our respective clients.   That mediation was not fruitful, and the motions and issues that were developed months ago are in many respects now before the Court.

18.    On September 14, 2012, j2 initiated another lawsuit against OpenText and EasyLink – case No. 2:12-cv-07968-DDP-AJWx -- alleging infringement of U.S. Patent No. 6,020,980.  That case involves a different patent from those at issue in the other litigations between j2 (and its affiliates) and Open Text (and its predecessors in interest) and, as I understand it, that patent was acquired by j2 only a few months ago.  As such, that case and the patent at issues therein have no relationship to the patent matters Kenyon & Kenyon worked on for j2 in 2004 and 2005.  Thus, j2 does not seek to disqualify either me or my firm in connection with that case.   Further, on October 25, 2012, OpenText and EasyLink filed their answers, affirmative defenses and counterclaims to j2's first amended complaint.

19.    The fact discovery cutoff in these cases is December 21, 2012.  Expert work is substantially under way, with initial expert reports due on January 25, 2013. Summary judgment motions are to be filed on May 3, 2013, with a summary judgment hearing scheduled for June 24, 2013. A final pre-trial conference is set for August 26, 2013. After years of litigation between these parties, trial is scheduled to begin on September 17, 2013.

20.    I also provided legal advice to Open Text in connection with its acquisition of EasyLink.  My work on this matter began in mid-February 2012.  I was told at that time not to discuss the possible deal with anyone at Perkins Coie except for Mr. Carmody.

21. After Open Text acquired EasyLink, Open Text requested that I appear as counsel of record for EasyLink in the j2 cases. Perkins Coie appeared on behalf of EasyLink on October 11, 2012, and I and the attorneys on my team have filed applications for *pro hac vice* admission in the EasyLink litigations.

22. Open Text did not consult with me or anyone on my team prior to hiring Crowell Moring LLP ("Crowell"), or Clyde Findley to serve on an interim basis to assist with intellectual property and patent matters. I only learned of Open Text's retention of Crowell and Findley after the decision had been made.

23. I had never met, communicated, or worked with Mr. Findley prior to his part time and interim assignment with Open Text. I was never asked to investigate any potential conflicts Mr. Findley may have had relative to j2.

24. I had no knowledge of Mr. Findley's possible involvement with j2 until j2's counsel raised the issue in late July and early August of 2012.

25. Mr. Findley played a limited role in connection with this litigation.

26. Mr. Findley did not relay any j2 information, let alone confidential information, to me at any point in time. Mr. Findley was never a source of facts, knowledge regarding j2, or confidential information regarding j2 for me or those lawyers at Perkins Coie or Loeb & Loeb regarding j2.

27. Most of the significant events in this case, including the development of invalidity defenses, disclosure of invalidity positions, review of documents and source code, the development of non-infringement positions, the *Markman* proceedings, the drafting and reviewing of voluminous written discovery, the development of counterclaims, the assessment of materials disclosed (and not disclosed) by j2 to the United States Patent and Trademark Office, scores of depositions, including Rule 30(b)(6) witnesses, etc., occurred well before Open Text's association with Mr. Findley. Thus, the scope and manner of Open Text's defenses, including the invalidity and inequitable conduct positions asserted by

Open Text, were formed long before Findley's part time and interim work for Open Text.

28.     Dr. Farber's deposition occurred on July 27, 2012.  Mr. Findley chose to attend and observe the deposition.  He was not directed to attend by anyone working at Perkins Coie.

29.     Mr. Findley did not participate in Perkins Coie's preparation for that deposition.  Indeed, most of the preparation for that deposition was performed by an attorney at another law firm (Tom Lundin of King & Spaulding).

30.     At Dr. Farber's deposition, j2's counsel, Frank Bernstein, made a comment about Mr. Findley's presence, stating that Mr. Findley was previously an associate at Kenyon, and that he wanted to check on whether Mr. Findley worked on j2 patent matters.  Mr. Bernstein did not stop the deposition, and Dr. Farber testified on that day.  In fact, it was not until the next week that j2 made me and Open Text aware that Mr. Findley worked for j2 in 2004 and 2005, as Mr. Findley never disclosed this fact to me, nor anyone else at Perkins Coie.

31.     After the Farber deposition, by telephone, I confronted Mr. Findley about his work at Kenyon and his failure to disclose it to me before.  Mr. Findley told me that his role at Kenyon on j2 matters was limited to internet searches of public information, and that it occurred a long time ago.

32.     Nevertheless, as a precautionary measure, I cut off all ties and contact with Mr. Findley, and I instructed all member of the Perkins Coie team to do the same.

33.     I also confirmed with the Perkins Coie attorneys working on this matter that they had never received j2 information from Mr. Findley, which they all confirmed.  The lawyers at Perkins Coie with whom I consulted about whether they knew that Mr. Findley provided legal services to j2 while a junior associate at Kenyon in 2004 and 2005, all confirmed that they had no such knowledge, and that

Mr. Findley never made any of them aware of his prior work for j2 or concerning j2 patents.

34.  The vast majority of attorneys and professional at Perkins Coie who work on the j2 cases for Open Text have never met or spoken with Mr. Findley. In any event, Mr. Findley was never in a position where he could have directed anyone under my supervision as to how (s)he should or could proceed relative to the j2 cases.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of October, 2012 in Chicago, Illinois.

_____
Timothy J. Carroll