Exhibit 3

Matthew P. Lewis (CA Bar No. 155516)
WHITE & CASE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071-2007
Telephone: (1-213) 620-7700
Facsimile: (1-213) 687-0758

Dimitrios T. Drivas
Steven M. Betensky
Scott T. Weingaertner
Catherine C. Lacavera
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200

Attorneys for Defendant Venali, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **J2 GLOBAL COMMUNICATIONS, INC.,**<br><br>                            Plaintiff,<br><br>        v.<br><br>**VENALI, INC.**<br><br>                            Defendant. | Case No.  CV04-1172 DDP (AJWx)<br><br>**DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    January 24, 2005<br>Time:    10:00 a.m.<br>Place:    Courtroom of the Hon. Dean D. Pregerson<br><br>[Statement Of Uncontroverted Facts And Conclusions Of Law And Declarations Of Amin El-Gazzar, Scott Weingaertner And Catherine Lacavera Filed Concurrently] |

DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

Exhibit 3, Page 70

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on January 24, 2005, at 10:00 a.m., or as soon

3    thereafter as the motion may be heard in the above-entitled Court, located at 312

4    North Spring Street, Los Angeles, California 90012, defendant Venali, Inc. ("Venali")

5    will move the Court for partial summary judgment pursuant to Federal Rule of Civil

6    Procedure 56 as to plaintiff j2 Global Communications, Inc.'s ("j2") claim of

7    infringement of U.S. Patent No. 6,208,638 B1 (the "'638 Patent").

8    This motion is made on the grounds that there are no genuine issues of material

9    fact regarding plaintiff's claim of infringement of the '638 Patent.  The '638 Patent

10   relates to the processing of "audio messages" into a form that can be delivered via

11   email.  All of the claims of the '638 Patent require "audio messages" and the Court

12   need construe only this term to rule on the present motion.  Because the construction

13   of the term "audio message" is straightforward, meaning voicemail message, and

14   because there can be no genuine dispute that Venali's system neither receives nor

15   processes voicemail messages and is not configured to do so, the determination that

16   Venali does not infringe the '638 Patent is ripe for decision on summary judgment.

17   Venali therefore moves this Court:

18       (a) for summary judgment of non-infringement of the '638 Patent; and

19       (b) for an award of attorneys' fees under 35 U.S.C. § 285.

20   This motion is made following the conference of counsel pursuant to Local

21   Rule 7-3, which took place on September 24 and October 12, 2004.

22

                                              WHITE & CASE LLP

23   Dated: December 17, 2004           By: _____

24                                           Matthew P. Lewis
                                             Attorneys for Defendant Venali,
25                                           Inc.

26

27

28                                        -2-

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ................................................................................. 1

II. INTRODUCTION ............................................................................................... 1

III. STATEMENT OF UNDISPUTED FACTS ...................................................... 2

A. Nature And Stage Of Proceedings ................................................................. 2

B. The '638 Patent ................................................................................................ 2

C. Venali's System ............................................................................................... 3

D. J2's Knowledge That Venali Does Not Support Voicemail ........................... 3

IV. STATEMENT AND APPLICATION OF THE LAW ...................................... 4

A. The Law Of Summary Judgment ................................................................... 4

B. Claim Construction .......................................................................................... 5

   1.   The Law Of Claim Construction .............................................................. 5

   2.   Construing The Term "Audio Message" To Mean Voicemail And To Exclude Facsimile ..... 7

     a.   Plain And Ordinary Meaning Of "Audio Message" ........................... 7

     b.   Intrinsic Evidence Limits "Audio Message" To Voicemail ............... 8

       i.   The '638 Patent Specification ...................................................... 8

       ii.   The '638 Patent Prosecution History ........................................... 9

     c.   Claim Differentiation Cannot Change The Meaning Of "Audio Message." ..................... 10

     d.   Extrinsic Evidence Indicates "Audio Message" Means Voicemail ..................... 11

C. Literal Infringement And Infringement Under The Doctrine Of Equivalents ............................. 14

   1.   Literal Infringement ................................................................................. 14

     a.   The Law Of Literal Infringement ..................................................... 14

     b.   Venali's System Does Not Literally Infringe Any Of The Claims Of The '638 Patent Because It Is Not Configured To Process An Audio Message And Does Not Process Audio Messages ................................................. 14

   2.   Infringement Under The Doctrine Of Equivalents ................................... 15

     a.   The Law Of The Doctrine Of Equivalents .......................................... 15

     b.   Venali's System Does Not Infringe The Claims Of The '638 Patent Under The Doctrine Of Equivalents ........................................... 16

Exhibit 3, Page 72

V. AN EXCEPTIONAL CASE UNDER 35 U.S.C. § 285 SHOULD BE FOUND AND

REASONABLE ATTORNEYS' FEES AWARDED ...................................................................... 18

VI. CONCLUSION.................................................................................................................. 19

LOS ANGELES 375600 (2K)

Exhibit 3, Page 73

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986).................................................................4

AstraZeneca AB v. Mutual Pharm. Co., Inc.,
  384 F.3d 1333 (Fed. Cir. 2004) ..................................................8, 12

Autogiro Co. of America v. United States,
  384 F.2d 391 (Ct. Cl. 1967)......................................................5, 6

Barmag Barmer Maschinenfabrik AG v. Murata Machine, Ltd.,
  731 F.2d 831 (Fed. Cir. 1984) ....................................................5

C.R. Bard, Inc. v. United States Surgical Corp.,
  388 F.3d 858 (Fed. Cir. 2004), citing Bell Atlantic Network Services, Inc. v. Covad
  Communications Group, Inc., 262 F.3d 1258 (Fed. Cir. 2001)..........................5, 6, 8

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)................................................................4

Eltech Systems Corp. v. PPG Industries, Inc.,
  710 F. Supp. 622 (W.D. La. 1988) ................................................18

Encomp, Inc. v. L-com, Inc.,
  999 F. Supp. 264 (D. Conn. 1998)................................................18

Fantasy Sports Properties, Inc. v. Sportsline.com,
  278 F.3d 1108 (Fed. Cir. 2002) ...............................................10, 11

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,
  344 F.3d 1359 (Fed. Cir. 2003) .............................................11, 16, 17

Graver Tank & Manufacturing Co. v. Linde Air Products Co.,
  339 U.S. 605 (1950)............................................................15, 16

Intellectual Property Development, Inc. v. UA-Columbia Cablevision of Westchester, Inc.,
  336 F.3d 1308 (Fed. Cir. 2003), citing Texas Digital, 308 F.3d at 1202 .............7, 9

Lockheed Martin Corp. v. Space Systems/Loral, Inc.,
  324 F.3d 1308 (Fed. Cir. 2003) ..................................................16

London v. Carson Pirie Scott & Co.,
  946 F.2d 1534 (Fed. Cir. 1991)...................................................14

Markman v. Westview Instruments, Inc.,
  52 F.3d 967 (Fed. Cir. 1995) ...................................................5, 14

Mas-Hamilton Group v. Lagard, Inc.,
  156 F.3d 1206 (Fed. Cir. 1998) ...............................................14, 15

Matsushita Electric Industrial, Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1989)................................................................4

Exhibit 3, Page 74

Microsoft Corp. v. Multi-Tech Systems, Inc.,
    357 F.3d 1340 (Fed. Cir. 2004) ..........................................5, 6, 8, 9, 10, 14, 17

North American Vaccine, Inc. v. American Cyanamid Co.,
    7 F.3d 1571 (Fed. Cir. 1993) ...................................................................11

Novartis Pharms. Corp. v. Eon Laboratoriess Manufacturing, Inc.,
    363 F.3d 1306 (Fed. Cir. 2004) ................................................................5

Texas Digital System, Inc. v. Telegenix, Inc.,
    308 F.3d 1193 (Fed. Cir. 2002) ................................................................6

Vanderlande Industrial Nederland BV v. International Trade Commission,
    366 F.3d  1311 (Fed. Cir. 2004) ..............................................................11

Vitronics Corp. v. Conceptronic, Inc.,
    90 F.3d 1576 (Fed. Cir. 1996) ..........................................................5, 9, 12

Wahpeton Canvas Co., Inc. v. Frontier, Inc.,
    870 F.2d 1546 (Fed. Cir. 1989) ......................................................14, 15, 17

Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,
    520 U.S. 17 (1997)..................................................................15, 16

**STATUTES**

35 U.S.C. § 102(b) ...............................................................3, 10, 17

35 U.S.C. § 285..................................................................1, 2, 18

Fed. R. Civ. P. 56(c) ................................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES**

Venali, Inc. ("Venali") submits this memorandum in support of its motion for partial summary judgment of non-infringement of U.S. Patent No. 6,208,638 B1 (the "'638 Patent").

j2's assertion of the '638 Patent is so clearly without merit, as a matter of law and beyond any genuine factual dispute, and the claim construction required to dispose of it so narrowly limited, that Venali is compelled to move the Court at this early date to reduce the burden on the Court and parties that j2's claim will otherwise needlessly impose.

**I.**

**SUMMARY OF ARGUMENT**

The '638 Patent utilizes the term "audio message" to refer to voicemail messages and to distinguish such messages from facsimile messages. There can be no genuine dispute that Venali's system does not process audio messages and is not configured to do so. Once this Court properly construes the claim limitation "audio message," required by all claims of the '638 Patent, as *voicemail*, Venali will be entitled to summary judgment of non-infringement of the '638 Patent. For the convenience of the Court, the claims of the '638 Patent are set forth in Appendix A, with the term "audio message" bolded and underlined. Venali's Statement of Uncontroverted Facts and Conclusions of Law ("UF") 49.

**II.**

**INTRODUCTION**

Venali entered the Internet facsimile market in 1996 and began selling facsimile services in the first quarter of 1997, prior to the filing date of the '638 Patent. UF 31. Though small, Venali is a highly competitive provider of Internet facsimile services that are fast, reliable, and cost-effective. UF 32. Unlike the plaintiff, Venali has never offered audio messaging services, but instead has focused on providing corporate

-1-

NEWYORK 4472073 (2K)

clients with Internet facsimile services.  UF 34.

Venali's system and services plainly lack a required limitation of all claims of the '638 Patent and therefore cannot infringe the '638 Patent.  Grant of summary judgment of non-infringement of the '638 Patent is therefore proper and will save Venali and this Court the burden of a baseless patent claim, and will narrow the remaining issues and scope of discovery in the case.

**III.**

**STATEMENT OF UNDISPUTED FACTS**

**A.    Nature And Stage Of Proceedings**

On February 20, 2004, j2 Communications, Inc. (hereinafter, with its predecessors in interest, "j2") filed an action alleging infringement of two patents:  the '638 Patent, entitled "Method and Apparatus For Transmission And Retrieval Of Facsimile And Audio Messages Over A Circuit Or Packet Switched Network," which issued on March 27, 2001, and U.S. Patent No. 6,597,688 B2 (the "'688 Patent"), entitled "Scalable Architecture For Transmission Of Messages Over A Network," issued on July 22, 2003.   On April 21, 2004, Venali filed its Answer and Counterclaims.  j2 filed its Reply to Counterclaim on May 11, 2004.  On October 4, 2004, Plaintiff moved for leave to amend to add two additional patents to this case. Venali agreed not to oppose j2's motion, which the Court granted.

During the Scheduling Conference on July 26, 2004, Matthew Lewis, counsel for Venali, confirmed that the deadline for filing summary judgment motions did not prevent a party from filing a motion earlier than the deadline.

**B.    The '638 Patent**

The '638 Patent has twenty-two claims, of which two are independent claims directed, respectively, to a system and a method for processing audio messages to deliver them to customer email accounts.  UF 1.  Independent claims 1 and 13 recite

-2-

NEWYORK 4472073 (2K)

1  "audio message."  UF 2-3.  Claims 2-12 depend from and incorporate all of the

2  limitations of independent claim 1, including the "audio message" limitation.  UF 4.

3  Claims 14-22 depend from and incorporate all of the limitations of independent claim

4  13, including the "audio message" limitation.  UF 5.

5       The term "audio message" is used repeatedly throughout the specification and

6  prosecution history to refer to *voicemail* as separate and distinct from facsimile.  UF

7  11-16.  During prosecution of the application, the applicants limited the scope of

8  claim 1 with an amendment to insert "audio" before "message" to overcome a

9  rejection under 35 U.S.C. § 102(b) over U.S. Patent No. 5,113,430 to Charles T.

10  Richardson, et al. ("Richardson").  UF 17.

11  **C.   Venali's System**

12       Venali provides Internet facsimile services.  It does not provide voicemail

13  services.  UF 33.  Venali has never offered audio messaging services but instead has

14  focused on providing corporate clients with Internet facsimile services.  UF 34.  All of

15  Venali's marketing and promotional materials show that its system supports only

16  facsimile services and not audio/voicemail services.  UF 36.

17       The fact that Venali's system cannot receive voicemail is readily confirmed by

18  subscribing to Venali's service, available for free on a thirty-day trial basis.  UF 40.  If

19  a voice call is placed to a Venali customer account, the call is answered by a fax

20  server and rejected.  UF 41.  To the caller, the Venali system sounds and behaves the

21  same as if the caller had dialed a traditional, stand-alone fax machine – it makes a

22  series of unintelligible screeches.  UF 42.

23  **D.   J2's Knowledge That Venali Does Not Support Voicemail**

24       j2 was well aware of the nature of Venali's business and must have known that

25  Venali's architecture and provision of Internet facsimile services did not infringe j2's

26  patents.  UF 45.  Venali's website and promotional materials make clear that it

27

28                                        -3-

provides Internet facsimile services, not voicemail products or services.  UF 43.  Also, in 2000, Venali's CEO, Amin El-Gazzar, met with j2 and, pursuant to a non-disclosure agreement, Venali explained its business and architecture to j2.  UF 44.  On February 4, 2003, when j2 first notified Venali of its claim that Venali infringed the '638 Patent, Venali promptly responded seven days later explaining that Venali's system does not accept voice messages.  UF 47.  Finally, Venali also set forth in detail in its interrogatory responses Venali's legal positions on non-infringement and invalidity of the patents-in-suit.  UF 48.

IV.

## STATEMENT AND APPLICATION OF THE LAW

**A.    The Law Of Summary Judgment**

Summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate where there are no genuine issues of material fact.  <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A "genuine" issue exists where the evidence is such that a reasonable jury could find in favor of the nonmoving party and a fact is "material" when the dispute may affect the outcome of the case.  <u>Id.</u>

"Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to secure the just, speedy and inexpensive determination of every action."  <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 327 (1986).

In response to a motion for summary judgment, the nonmoving party must come forward with specific facts showing that a genuine issue of material fact exists for trial.  Fed. R. Civ. P. 56(e); <u>Matsushita Elec. Indus. Co.</u> v. <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1989).  The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the trier of fact could reasonably find for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 252.

-4-

DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

Exhibit 3, Page 79

1   Summary judgment is also a favored judicial procedure in patent cases.

2   Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 835 (Fed.

3   Cir. 1984) ("Summary judgment is as appropriate in a patent case as in any other ... to

4   avoid unnecessary expense to the parties and wasteful utilization of the jury process

5   and judicial resources.")

6   In order to evaluate Venali's entitlement to summary judgment of non-

7   infringement of the '638 patent, this Court must conduct a two-step analysis: (1) the

8   scope of the claims must be construed; and (2) the allegedly infringing devices must

9   be compared to the construed claims. Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.,

10  363 F.3d 1306, 1308 (Fed. Cir. 2004).

11  **B.    Claim Construction**

12  **1.    The Law Of Claim Construction**

13  Claim construction is a question of law for the Court. Markman v. Westview

14  Instruments, Inc., 52 F.3d 967, 983-84 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370,

15  372 (1996). In construing the claims, the Court first considers the language of the

16  claims, the patent specification and the prosecution history. See Microsoft Corp. v.

17  Multi-Tech Systems, Inc., 357 F.3d 1340, 1346 (Fed. Cir. 2004); Vitronics Corp. v.

18  Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

19  "A long line of cases indicates that the intrinsic record[, namely the

20  specification and prosecution history,] is the **primary** source for determining claim

21  meaning." C.R. Bard, Inc. v. United States Surgical Corp., 388 F.3d 858, 861 (Fed.

22  Cir. 2004), citing Bell Atl. Network Servs., Inc. v. Covad Communications Group,

23  Inc., 262 F.3d 1258, 1268 (Fed. Cir. 2001); Vitronics Corp. v. Conceptronic, Inc., 90

24  F.3d 1576, 1582 (Fed. Cir. 1996); Autogiro Co. of Am. v. United States, 384 F.2d

25  391, 397-98 (Ct. Cl. 1967) (emphasis added).

26  Notwithstanding this authority, language in some recent cases "suggests that the

27

28  -5-

intrinsic record, except for the claims, should be consulted only after the ordinary and customary meaning of claim terms to persons skilled in the pertinent art is determined." Id., citing Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1204 (Fed. Cir. 2002), cert. denied, 538 U.S. 1058 (2003).  Rather, "[t]he language in these [recent] cases emphasizes technical and general-usage dictionaries in determining the ordinary meaning." Bard, 388 F.3d at 862.

Yet, even as noted in these cases, "[w]here the ordinary meaning of a claim term is thus evident, the inventor's written description of the invention, for example, is relevant and controlling insofar as it provides clear lexicography or disavowal of the ordinary meaning." Id., citing Texas Digital, 308 F.3d at 1204.  Specifically, "the presumption in favor of a dictionary definition [of a claim term] will be overcome where the patentee, acting as his or her own lexicographer, has clearly set forth an explicit definition of the term different from its ordinary meaning. Id.  Further, the presumption also will be rebutted if the inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." Id.

Importantly, cases such as Texas Digital do not require, or even allow, the Court to disregard the intrinsic record.  Even these cases recognize that "[t]he objective and contemporaneous record provided by the intrinsic evidence is the most reliable guide to help the court determine which of the possible meanings of the terms in question was intended by the inventor." Texas Digital, 308 F.3d at 1203, quoted in Bard, 388 F.3d at 862.

Thus, under either approach, this Court must consider the intrinsic record of the '638 Patent when construing the claim term "audio message" as the intrinsic record provides a clear lexicography for the term "audio message" to mean voicemail and to exclude facsimile.  See Microsoft, 357 F.3d at 1348 (specification must be examined to determine if the patentee has limited the scope of the claims).

-6-

DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

Exhibit 3, Page 81

2. **Construing The Term "Audio Message" To Mean Voicemail And To Exclude Facsimile**

Only one claim term, "audio message," must be construed in order for the Court to reach a conclusion of non-infringement on the undisputed facts before this Court. In this case, "audio message" is required by all claims of the '638 Patent. A proper construction of the term "audio message" as *voicemail* and excluding facsimile, entitles Venali to summary judgment of non-infringement of the '638 Patent, because Venali does not process voicemail and its system is not configured to do so.

a. **Plain And Ordinary Meaning Of "Audio Message"**

Dictionaries, encyclopedias, and treatises that were publicly available at the time the patent issued, in this case on March 27, 2001, are useful resources to assist courts in determining ordinary and customary meaning. See Intellectual Property Development, Inc. v. UA-Columbia Cablevision of Westchester, Inc., 336 F.3d 1308, 1315-16 (Fed. Cir. 2003), citing Texas Digital, 308 F.3d at 1202. Relevant dictionary definitions of "audio" and "*message*," taken together, require an *audible communication*, which means that an audio message is not merely a signal that makes noise, but one that needs to be heard in order to convey the message.[1] In other words, the fact that a facsimile being transmitted over a telephone line, if amplified, is capable of being heard does not make it an "audio message" because the noise, even if heard, does not communicate the message. Thus, the plain and ordinary meaning, as supported by the dictionary definitions, supplies clear evidence that "audio message" means *voicemail* and excludes facsimile.

---

[1] "Message" has been defined as "a communication in writing, in speech, or by signals." UF 8.

"Audio" has been defined as "of or relating to acoustic, mechanical, or electrical frequencies corresponding to normally audible sound waves which are of frequencies approximately from 15 to 20,000 hertz." (UF 9), and as "pertaining to frequencies corresponding to a normally audible sound wave. Note: These frequencies range roughly from 15 Hz to 20 000 Hz." UF 10.

-7-

NEWYORK 4472073 (2K)

Exhibit 3, Page 82

b.     **Intrinsic Evidence Limits "Audio Message" To Voicemail**

The intrinsic evidence – namely the '638 Patent specification and the prosecution history – provides reliable evidence that "audio message" means voicemail.  See Bard, 388 F.3d at 862, quoting Texas Digital, 308 F.3d at 1203 ("The objective and contemporaneous record provided by the intrinsic evidence is the most reliable guide to help the court" construe a claim.); see also AstraZeneca AB v. Mutual Pharm. Co., Inc., 384 F.3d 1333, 1336 (Fed. Cir. 2004) (stating that intrinsic evidence should form the primary source for determining claim meaning).

i.     **The '638 Patent Specification**

The specification of the '638 Patent leads to the inescapable conclusion that "audio message" means voicemail and excludes facsimile.  See Microsoft, 357 F.3d at 1348.  The term "audio message" is used repeatedly throughout the specification to refer to *voicemail*, as separate and distinct from facsimile.  The very title of the '638 Patent, "Method and Apparatus for Transmission and Retrieval of Facsimile and Audio Messages Over a Circuit or Packet Switched Network," distinguishes between "facsimile" and "audio."  UF 11.  The specification never deviates from using "audio message" to refer to voice and voicemails separate from facsimile.  For example:

> "Depending on the length of the fax or audio message …" (UF 12)

> "To provide for the receipt and transmission of audio and fax information …" (UF 13)

> "[I]n order for user A to view a received fax message, user A must be physically located in the same area as the fax machine.  Similarly, audio messages are stored on fixed destination devices such as answering machines and 'voice-mail' systems." (UF 14)

-8-

DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

Exhibit 3, Page 83

1   The '638 Patent specification also distinguishes the handling of audio messages

2   and fax transmissions as follows:  "[W]here it is determined that the incoming

3   message is an audio message, the fax/voice processing resource of set of fax/voice

4   processing resources 154 allocated to process the call will initiate an audio recording

5   of the incoming voice message."  UF 15.  In another instance, the specification draws

6   a crucial distinction between the treatment of fax transmissions and audio messages:

7

8   **If the incoming call was a fax transmission**, then the
    temporary file, which has been stored as a group 3 facsimile

9   file, will be converted into a file which follows the tagged
    image file format (TIFF), or a format that is suitable for

10  transmission over WAN 180. Optionally, the temporary fax
    file can also be compressed at this stage. **If the incoming**

11  **call was an audio message**, then the temporary file would

12  be compressed using a compression scheme such as the
    scheme defined in the global system for mobile-

13  communications (GSM) standard.

14

15  UF 16.  Thus, the specification makes absolutely clear that "audio message" does not

16  include facsimile messages.  Microsoft, 357 F.3d at 1347 ("When the specification

17  makes clear that the invention does not include a particular feature, that feature is

18  deemed to be outside the reach of the claims of the patent, even though the language

19  of the claims, read without reference to the specification, might be considered broad

20  enough to encompass the feature in question.") (internal citations and quotations

21  omitted).

22      ii.      **The '638 Patent Prosecution History**

23      The prosecution history of the '638 Patent also compels an interpretation of

24  "audio message" as limited to *voicemail*, and excluding facsimile.  The prosecution

25  history, if in evidence, is also a guide to claim interpretation.  See Intellectual Property

26  Development, 336 F.3d at 1316-17; Vitronics, 90 F.3d at 1582.  A patentee may limit

27

28                                           -9-

NEWYORK 4472073 (2K)

1    the scope of the claims by disclaiming a particular interpretation during prosecution.

2    Microsoft, 357 F.3d at 1347.

3         During prosecution of the application, the applicants limited the scope of claim

4    1 with an amendment to insert "audio" before "message" to overcome a rejection

5    under 35 U.S.C. § 102(b) over U.S. Patent No. 5,113,430 to Charles T. Richardson, et

6    al. ("Richardson").  UF 17.  In the Remarks explaining this amendment, the applicants

7    stated:

8

9              Richardson does not anticipate the features present in the
               currently amended claims to allow **distribution of**
10             **voicemail messages via the use of electronic mail**
               **messages, which involves the "conversion of [an]**
11             **incoming audio message into a digital representation of**
               **said audio message**; and sending said digital representation
12             of said audio message to [an] electronic mail address in an
               electronic mail message."
13

14

15   UF 18.  Having added the limitation "audio" to distinguish the prior art during

16   prosecution, and having explained that the amended claims distinguish the prior art

17   because they allow distribution of *voicemail* messages via the use of electronic mail

18   messages, the applicants further confirmed that the scope of the term "audio message"

19   is limited to voicemail.  Microsoft, 357 F.3d at 1347.

20              **c.    Claim Differentiation Cannot Change The Meaning Of "Audio**
                       **Message."**
21

22        The doctrine of claim differentiation cannot be used to broaden j2's claims

23   beyond their correct scope, as defined by the plain and ordinary meaning of the claim

24   terms and intrinsic record.  Fantasy Sports Properties, Inc. v. Sportsline.com, 278 F.3d

25   1108, 1115-16 (Fed. Cir. 2002).  In this regard, j2 may attempt to persuade the Court

26   that, under the doctrine of claim differentiation, "audio message" should be construed

27   in light of claims 11 and 12 to include "facsimile message."  The Federal Circuit has

28                                          -10-

NEWYORK 4472073 (2K)

1 recognized, "[w]hile it is true that dependent claims can aid in interpreting the scope

2 of claims from which they depend, they are only an aid to interpretation and are not

3 conclusive. The dependent claim tail cannot wag the independent claim dog." North

4 American Vaccine, Inc. v. American Cyanamid Co., 7 F.3d 1571, 1577 (Fed. Cir.

5 1993).

6  In the instant case, the plain and ordinary meaning and the intrinsic record

7 establish that the meaning of "audio message" does not encompass facsimile message,

8 and rebut any suggestion that dependent claims 11 and 12 further define independent

9 claim 1. See Fantasy Sports, 278 F.3d at 1115-16 (citations and quotations omitted)

10 (presumption that dependent claims further define "bonus points" limitation in

11 independent claim is overcome by plain meaning, specification and disclaimer of

12 subject matter during prosecution).

13  Indeed, limitations resembling those in claims 11 and 12 initially were not part

14 of the application that led to the '638 Patent. To the contrary, claims 11 and 12 were

15 inserted by j2's patent counsel at the same time as the applicants added the limitation

16 "audio" to claim 1 to distinguish the prior art, Richardson, and explained the

17 amendment as referring to voicemail. UF 19. Hence, by adding claims 11 and 12, it

18 appears j2 attempted to reclaim scope surrendered by its narrowing amendment to

19 claim 1. This is precisely the type of reclaiming of disclaimed subject matter that is

20 presumptively prohibited by the doctrine of prosecution history estoppel. Festo Corp.

21 v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1366 (Fed. Cir. 2003) (en

22 banc).

23  **d. Extrinsic Evidence Indicates "Audio Message" Means Voicemail**

24  Although extrinsic evidence is less significant than the intrinsic record in

25 determining the meaning of disputed claim language, it "can shed useful light on the

26 relevant art." Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n, 366 F.3d

27

-11-

28     DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

1    1311, 1318 (Fed. Cir. 2004), quoted in Bard, 388 F.3d at 862.  j2's other patents and

2    j2's website further support the conclusion that "audio message" must be limited to

3    voicemail and exclude facsimile because they repeatedly and consistently use "audio"

4    as synonymous with voice.  Such references, whether or not they were cited in the

5    specification or file history, may be considered to interpret claims.  Vitronics, 90 F.3d

6    at 1583; see also AstraZeneca, 384 F.3d at 1337 (extrinsic evidence is useful insofar

7    as "it can shed useful light on the relevant art").

8         The '688 Patent, the other patent-in-suit, uses the term "audio" consistently

9    with this construction.  The '688 Patent is assigned to j2, was prosecuted by the same

10   attorney as the '638 Patent, incorporates a significant portion of the '638 Patent

11   specification into its specification, and includes a description of the '638 Patent as

12   prior art.  UF 22.  In describing the '638 Patent, the '688 Patent uses the term "audio"

13   as an alternative to facsimile, rather than encompassing facsimile.  UF 23.  For

14   instance, the '688 Patent states that "[t]he present invention provides a method and

15   apparatus for allowing the receipt and transmission of audio and fax information."  UF

16   23.  It further states:  "An e-mail message is passed to an outbound resource 11

17   (communications server 550 in U.S. Pat. No. 6,208,638) which converts the e-mail

18   message to a fax format or to audio for transmission to a fax machine or telephone

19   connected to the PSTN."  UF 24.

20        Another U.S. patent assigned to j2, and prosecuted by the same firm as the '638

21   Patent, also supports this interpretation of the meaning of "audio."  UF 25.  U.S.

22   Patent No. 6,073,165 (the "'165 Patent"), entitled "Filtering Computer Network

23   Messages Directed To A User's E-mail Box Based On User Defined Filters, And

24   Forwarding A Filtered Message To The User's Receiver," issued on June 6, 2000 to

25   Anand Narasimhan, et al.[2]  UF 25.  Figure 1 of the '165 Patent depicts "facsimile"

26   being received by a "Fax Server" (116) and "voice/audio" being received by a "Voice

27   ──────────

[2] Anand Narasimhan is an alleged co-inventor of the '688 Patent.

28                                              -12-

NEWYORK 4472073 (2K)

Message Server" (118).  UF 26.  The specification of the '165 Patent states:

> The system may also be configured with **voice message** server 118 and **fax server 116** which receive and understand **voice/audio and facsimile information, respectively**, and in response create and send a computer message.   The computer message may be, for example, an e-mail message sent to a given e-mail address.

UF 27 (emphasis added).  Thus, statements made in the '688 Patent and the '165 Patent make clear that the term "audio" cannot be construed to include facsimile and must be construed as limited to *voicemail.*

An Internet web page published by JFAX, Inc. (j2's predecessor) in 1996, prior to the filing date of the '638 Patent, emphasized the distinction between an audio message and a facsimile.  UF 28.  In describing how JFAX works, JFAX stated:

> Someone sends you a fax or leaves a voice-mail message on your JFAX Personal Telecom phone/fax number.  The **audio message or fax** is compressed and rushed via the Internet to your E-mail.  You **listen to the original audio message or view the original fax**, complete with graphics, on free software from JFAX.

UF 29 (emphasis added).  Thus, as early as 1996, j2 distinguished between audio message and facsimile, just as Venali argues here.

Even now, in response to Venali's request for an admission that "a facsimile is not an 'audio message,'" j2 did not deny the request.  UF 30.  Indeed, j2 refused to respond.  UF 30.

Thus, the plain and ordinary meaning of "audio message," based upon dictionary definitions, specifications, prosecution history and other interpretive tools, compels a proper construction of the term "audio message" as *voicemail* and to

-13-

DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

Exhibit 3, Page 88

1   exclude facsimile.  See Microsoft, 357 F.3d at 1347-49.

2   **C.     Literal Infringement And Infringement Under The Doctrine Of**
3   **Equivalents**

4       **1.     Literal Infringement**

5           **a.     The Law Of Literal Infringement**

6   Once each of the pertinent claims is construed to determine its meaning and
7   scope, the claims must be compared to the allegedly infringing product or method to
8   determine whether they include each and every element recited by the claim.
9   Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc),
10  aff'd, 517 S. Ct. 370 (1996).  j2 bears the burden of showing that every element of an
11  asserted patent claim, or its substantial equivalent, is found in Venali's accused
12  product; if even one claim limitation is missing, judgment must be entered for Venali
13  on that claim.  See Mas-Hamilton Group v. Lagard, Inc., 156 F.3d 1206, 1211-12
14  (Fed. Cir. 1998); London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538-39 (Fed.
15  Cir. 1991).  It is well-settled law that if one does not infringe an independent claim,
16  one cannot infringe any claim that depends from it.  See Wahpeton Canvas Co., Inc. v.
17  Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989).  Thus, if the Court finds that
18  Venali does not infringe independent claim 1 or 13 of the '638 Patent, Venali cannot
19  infringe any of the claims of the '638 Patent.

20          **b.     Venali's System Does Not Literally Infringe Any Of The**
21          **Claims Of The '638 Patent Because It Is Not Configured To**
            **Process An Audio Message And Does Not Process Audio**
22          **Messages**

23  Venali's fax services do not literally infringe claim 1 because Venali's fax
24  services do not meet the limitation of independent claim 1 that recites "configured to
25  process a received audio message into a digital representation."  See Mas-Hamilton,
26  156 F.3d at 1211 ("If even one limitation is missing or not met as claimed, there is no
27  literal infringement.").  Venali's system cannot receive or process an audio message

28                                          -14-

DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

Exhibit 3, Page 89

into a digital representation. UF 39. Instead, if a voice call is placed to a Venali customer account, the call is answered by a fax server and rejected. UF 41. To the caller, the Venali system sounds and behaves the same as if the caller had dialed a traditional, stand-alone fax machine – it makes a series of unintelligible screeches. UF 42. The caller's voice message would not be even received, much less processed into a digital representation.

These facts are beyond any reasonable dispute by j2, who could have, and should have, verified them prior to bringing suit against Venali under the '638 Patent. For the same reasons, Venali's system does not literally infringe independent claim 13 because it does not meet the limitation "processing of an audio message into a digital representation." See Mas-Hamilton, 156 F.3d at 1211. Venali's system does not do any processing of audio messages into digital representations because it cannot receive or process voicemail. As Venali does not literally infringe the independent claims of the '638 Patent, claims 1 and 13, it can not literally infringe any of the dependent claims, which import all of the limitations of the independent claims from which they depend. See Wahpeton, 870 F.2d at 1553. Thus, Venali does not literally infringe any of the claims of the '638 Patent.

### 2.   Infringement Under The Doctrine Of Equivalents
#### a.   The Law Of The Doctrine Of Equivalents

An accused product or process that does not literally infringe also will not be found to infringe under the doctrine of equivalents if the patentee fails to prove that the differences between the elements of the accused product or process and the patent claims are insubstantial. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997). Relevant to the insubstantial differences inquiry is whether the accused device "performs substantially the same function in substantially the same way to obtain the same result" as the missing claim limitation. Graver Tank & Mfg. Co. v.

-15-

DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

Exhibit 3, Page 90

1 Linde Air Prods. Co., 339 U.S. 605, 608 (1950); see also Warner-Jenkinson, 520 U.S.

2 at 39-40.  Under the all elements rule, there can be no infringement under the doctrine

3 of equivalents if even one limitation of a claim or its equivalent is not present in the

4 accused device or method.  Lockheed Martin Corp. v. Space Systems/Loral, Inc., 324

5 F.3d 1308, 1321 (Fed. Cir. 2003) (citations omitted).

6      Of particular importance, the doctrine of prosecution history estoppel precludes

7 a patentee from reclaiming by equivalents subject matter that was conceded during

8 prosecution, either by amendment or cancellation of claims, for reasons of

9 patentability.  Festo Corp. 344 F.3d at 1366-7.  The presumption of surrender may be

10 rebutted only if the patentee can establish:  (1) the alleged equivalent would have been

11 unforeseeable at the time the narrowing amendment was made;  (2) the rationale

12 underlying the narrowing amendment bore no more than a tangential relation to the

13 equivalent at issue; or (3) there was some other reason suggesting that the patentee

14 could not reasonably have been expected to have described the alleged equivalent.  Id.

15 at 1368 (citations and quotations omitted).

16      **b.    Venali's System Does Not Infringe The Claims Of The '638**

17             **Patent Under The Doctrine Of Equivalents**

18      j2 also cannot establish infringement of claims 1 or 13 under the doctrine of

19 equivalents.  Venali's system does not receive or handle voicemail, and accordingly

20 has no element that performs the same function in the same way or achieves the result

21 of processing an audio/voice message into a digital representation.  Graver Tank, 339

22 U.S. at 608.  A finding that Venali's system infringed under the doctrine of

23 equivalents would completely ignore the limitations "configured to process a received

24 audio message into a digital representation" and "processing of an audio message into

25 a digital representation" in independent claims 1 and 13, respectively, in violation of

26 the all elements rule.  Lockheed Martin Corp., 324 F.3d at 1321.

27      j2 is also barred by the doctrine of prosecution history estoppel from asserting

28                 -16-

DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

Exhibit 3, Page 91

1    that audio messages are equivalent to facsimile messages.  As discussed above, the

2    applicants amended original claim 1 to insert "audio" before "message" to overcome a

3    rejection under 35 U.S.C. § 102(b) over U.S. Patent No. 5,113,430 to Charles T.

4    Richardson, et al. ("Richardson").  UF 17.  The applicants also added new claims 2-

5    18, all of which recite "audio message" as a limitation.  Having added the limitation

6    "audio" to overcome the prior art of Richardson, and having explained that the

7    amended claims distinguish the prior art because they allow distribution of voicemail

8    messages, the applicants limited the scope of "audio message" to voicemail.

9    Microsoft, 357 F.3d at 1347.

10         The doctrine of prosecution history estoppel presumptively precludes the

11   applicants from claiming equivalents to audio messages.  Festo Corp., 344 F.3d at

12   1368.  j2 also cannot overcome the presumption of prosecution history estoppel

13   because facsimile messages were not unforeseeable, tangential to the reason for

14   narrowing the claims, or incapable of being described by j2.  Id.  On the contrary,

15   facsimile messages are described and distinguished from audio messages in the

16   specification, as discussed in section V.B above.  Further, the applicants overcame the

17   prior art of Richardson by arguing that the amended claims which recite "audio

18   message" allow conversion and distribution of audio/voicemail messages via

19   electronic mail messages.  UF 18.  The alleged point of novelty of the claimed

20   invention is handling of voicemail, which is precisely what Venali's system does not

21   do.

22         As Venali does not infringe the independent claims of the '638 Patent, claims 1

23   and 13, it cannot infringe any of the dependent claims, which import all of the

24   limitations of the independent claims from which they depend.  See Wahpeton, 870

25   F.2d at 1553.  Therefore, the claims of the '638 Patent, all of which recite "audio

26   message," are not infringed by Venali's facsimile services, either literally or by

27   equivalents.  There can be no genuine issue of material fact that Venali's system does

-17-

28   DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND
     MOTION FOR PARTIAL SUMMARY JUDGMENT OF
     NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

1   not support voicemail.  Venali's website and free trial services are incontrovertible

2   evidence of this fact.  Accordingly, Venali is entitled to summary judgment of non-

3   infringement.

**V.**

5   **AN EXCEPTIONAL CASE UNDER 35 U.S.C. § 285 SHOULD BE FOUND**

6   **AND REASONABLE ATTORNEYS' FEES AWARDED**

7       Section 285 of Title 35 of the United States Code provides that the prevailing

8   party in a patent infringement suit may be awarded reasonable attorneys' fees in an

9   "exceptional" case.  An award of attorneys' fees is left to the sound discretion of the

10  Court.  Encomp, Inc. v. L-com, Inc., 999 F. Supp. 264, 266 (D. Conn. 1998).

11      In cases where the prevailing party is the accused infringer, the case may be

12  found to be "exceptional" where the patentee filed or maintained the suit in bad faith,

13  or where the patent was procured through inequitable conduct or fraud.  Id.  "Bad

14  faith" litigation includes an "infringement suit which the patentee knows, or on

15  reasonable investigation should know, is baseless."  Eltech Systems Corp. v. PPG

16  Industries, Inc., 710 F.Supp. 622, 636 (W.D. La. 1988), aff'd, 903 F.2d 805 (Fed. Cir.

17  1990); Encomp, 999 F. Supp. at 266.

18      Here, there is no question that j2 knew, or should have known upon a

19  reasonable investigation, that Venali's business did not include voicemail products or

20  services.  Venali's website and promotional materials make clear that it provides

21  Internet facsimile services, not voicemail products or services.  UF 43.

22      Furthermore, in 2000, Venali's CEO, Amin El-Gazzar, met with j2 and,

23  pursuant to a non-disclosure agreement, explained Venali's business and architecture

24  to j2.  UF 44.  j2 was well aware of the nature of Venali's business and must have

25  known that Venali's architecture and provision of Internet facsimile services did not

26  infringe j2's patents.  UF 45.  In fact, the day after Venali announced that its service

27  would be integrated with Microsoft Office 2003, j2 asked Mr. El-Gazzar whether

28

-18-

NEWYORK 4472073 (2K)

Exhibit 3, Page 93

1  Venali would consider being purchased by j2. UF 46. After Venali refused, j2

2  initiated its present suit hoping to gain access to Venali's proprietary software and

3  system architecture under the guise of protecting its patent rights.

4      On February 4, 2003, when j2 first notified Venali of its claim that Venali

5  infringed the '638 Patent, Venali promptly responded seven days later explaining that

6  Venali's system does not accept voice messages. UF 47. j2 claims it did not receive

7  Venali's response. Venali also set forth in detail in its interrogatory responses

8  Venali's legal positions on non-infringement and invalidity of the patents-in-suit. UF

9  48. Under the circumstances here, no patentee could have filed or maintained a

10 lawsuit in good faith, and Venali should not have been subjected to the costs of

11 defending this lawsuit.

12     Therefore, Venali respectfully requests that the Court grant it an award of

13 reasonable attorneys' fees.

### VI.

### CONCLUSION

16     Venali requests that the Court construe the claim term "audio message" to mean

17 *voicemail*, and determine that the claim term does not encompass facsimile or a

18 facsimile system. All of the intrinsic and extrinsic evidence supports Venali's

19 proposed construction. Based on this proper construction of the claim term "audio

20 message," which appears in each and every claim of the '638 Patent, and the clear

21 showing that Venali does not offer any products or services that can process a

22 received audio message into a digital representation, Venali asks that this Court grant

23 Venali's Motion For Partial Summary Judgment of Non-Infringement Of U.S. Patent

24 No. 6,208,638.

WHITE & CASE LLP,

26 Dated: December 17, 2004     By: _____
Matthew P. Lewis

-19-

DEFENDANT VENALI, INC.'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NON-INFRINGEMENT OF U.S. PATENT NO. 6,208,638

NEWYORK 4472073 (2K)

Exhibit 3, Page 94